1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZALEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   KENNETH A. KUWAYTI (CA SBN 145384)
    KKuwayti@mofo.com
7   MORRISON & FOERSTER LLP
    755 Page Mill Road
8   Palo Alto, CA 94304-1018
    Telephone: 650.813.5600
9   Facsimile: 650.494.0792

10

    Attorneys for Plaintiff
11  NEVRO CORP.

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15  NEVRO CORP.,                          Case No.    16-cv-6830

16              Plaintiff,                **COMPLAINT FOR PATENT
                                          INFRINGEMENT AND
17         v.                             DECLARATORY JUDGMENT**

18  BOSTON SCIENTIFIC CORPORATION and     **DEMAND FOR JURY TRIAL**
    BOSTON SCIENTIFIC NEUROMODULATION
19  CORPORATION,

20              Defendants.

21

22

23

24

25

26

27

28

1       Plaintiff Nevro Corp. ("Nevro") complains and alleges as follows against Defendants

2   Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (collectively,

3   "Boston Scientific").

4                   **THE NATURE OF THE ACTION**

5       1.     Chronic pain is a significant health problem that affects more Americans than

6   diabetes, heart disease, and cancer combined.  Nevro's pioneering spinal cord stimulation

7   technology dramatically improves the quality of life of individuals suffering from chronic pain.

8   Nevro brings this action to prevent Boston Scientific from infringing the patents that protect

9   Nevro's technology.

10       2.     Spinal cord stimulation ("SCS") therapy attempts to relieve pain by delivering

11   short electrical pulses to the spinal cord through small electrodes that are implanted near the

12   spinal cord.  While SCS technology has been on the market for decades, Nevro's patented SCS

13   technology is significantly more effective than the traditional systems supplied by the rest of the

14   SCS industry.

15       3.     Traditional SCS therapy delivers "low frequency" electrical pulse waveforms, on

16   the order of 50 to 60 Hz, to generate a sensation known as paresthesia.  Paresthesia is commonly

17   experienced as a tingling, numbness, buzzing, or pins-and-needles sensation.  The paresthesia is

18   used to mask, or cover, the patient's area of pain.  In theory, the patient feels the paresthesia and

19   feels less pain.

20       4.     Traditional, paresthesia-based low frequency SCS therapy has significant failings

21   that reduce its efficacy and limit its applicability.  It is not effective in a large portion of the

22   population, and even when it works, the pain relief is limited.  Paresthesia also narrows the

23   applicability of SCS therapy because patients often experience uncomfortable stimulations or

24   even jolting sensations during movement, which can impair sleep or preclude driving a car while

25   receiving therapy.

26       5.     Nevro was founded to provide a solution to chronic pain without the drawbacks of

27   traditional low frequency SCS therapy.  After years of research and development work, Nevro has

28   brought to market an SCS therapy that differs dramatically from traditional SCS therapy.  Nevro's

1  SCS therapy uses a unique "high frequency" electrical waveform to provide pain relief *without*
2  generating paresthesia.

3        6.      With their long history of providing paresthesia-based low frequency SCS therapy,
4  Defendant Boston Scientific and the rest of the SCS industry were highly skeptical that Nevro's
5  paresthesia-free high frequency SCS therapy would provide clinically effective pain relief.  But to
6  the industry's surprise, Nevro's paresthesia-free high frequency SCS therapy has been
7  scientifically proven to provide significantly superior pain relief to a significantly larger
8  population of patients.  And it does so without the failings of paresthesia-based low frequency
9  SCS.

10       7.      To obtain FDA approval, Nevro tested its paresthesia-free high frequency SCS
11 therapy against Defendant Boston Scientific's commercial, paresthesia-based low frequency SCS
12 system in an FDA-monitored randomized, controlled, trial.  The trial showed that Nevro's
13 paresthesia-free high frequency SCS therapy is not only clinically effective without paresthesia,
14 but also is nearly *twice as effective* as Boston Scientific's paresthesia-based low frequency SCS
15 therapy.  As a result, when the FDA granted approval for Nevro's high frequency SCS therapy on
16 May 8, 2015, it awarded Nevro's SCS therapy a rare "superiority" label—allowing Nevro to
17 claim its high frequency SCS therapy is clinically superior to Boston Scientific's paresthesia-
18 based low frequency SCS therapy.

19       8.      What started out as skepticism has turned into copying.  Witnessing Nevro's
20 superior results and rapid success, Defendant Boston Scientific is now aggressively trying to
21 mimic Nevro's SCS therapy.  In 2014, eight years after Nevro's founding, Boston Scientific
22 initiated a clinical trial in the United States, utilizing SCS devices that operate at the same 10,000
23 Hz frequency as the commercial embodiment of Nevro's SCS system.  These devices infringe
24 Nevro's patents.  Nevro has reason to believe that FDA approval of Boston Scientific's infringing
25 device is imminent and that Boston Scientific is taking concrete actions to prepare for a full-scale
26 commercial launch.  But Boston Scientific has also begun manufacturing infringing SCS devices
27 in the United States that are capable of operating at frequencies up to 10,000 Hz, and exporting
28 these devices to Europe for commercial uses.  Nevro recently learned that Boston Scientific has

received CE Mark approval in Europe to market its SCS devices at high frequencies of up to 10,000 Hz.  And Nevro has reason to believe that Boston Scientific has also begun manufacturing and selling infringing SCS devices for use in the United States that are capable of operating at frequencies up to 10,000 Hz, even though Boston Scientific has not yet received FDA approval to market its SCS devices at such higher frequencies.

9.      Boston Scientific is acutely aware that Nevro's paresthesia-free high frequency technology is patent-protected.  Just six days after Nevro received its FDA approval, Boston Scientific filed two parallel petitions for *inter partes* review seeking to invalidate Nevro's U.S. Patent No. 8,359,102 ("the '102 patent").

10.     Boston Scientific's attempt to invalidate Nevro's '102 patent definitively failed. The Patent Trials and Appeal Board ("PTAB") found that Boston Scientific had not shown a reasonable likelihood of success for invalidating any of Nevro's claims and refused to institute either of the petitions for *inter partes* review.  Undaunted, Boston Scientific has continued to pursue commercialization of its paresthesia-free high frequency SCS system in blatant disregard of Nevro's intellectual property rights.

## PARTIES

11.     Plaintiff Nevro is a Delaware corporation with its principal place of business at 1800 Bridge Pkwy, Redwood City, CA 94065.

12.     Defendant Boston Scientific Corporation is a Delaware corporation with its principal place of business at 300 Boston Scientific Way, Marlborough, MA 01752, and Defendant Boston Scientific Neuromodulation Corporation is a Delaware corporation with its principal place of business at 25155 Rye Canyon Loop, Valencia, California 91355.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1338(a) (patents).

14.     This Court has personal jurisdiction over Boston Scientific, which has multiple sales representatives and other employees in California, has filed litigation in this Court, and has facilities in Fremont, San Jose, and Valencia, California.  According to its website and product

labeling, Boston Scientific's facility in Valencia, California develops, designs, and manufactures the implantable pulse generators used in its SCS systems, which are sold and distributed in the United States and worldwide.

15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) in that Boston Scientific is subject to personal jurisdiction in this District.  In addition, venue is proper because Nevro's principal place of business is in this District, and Nevro suffered harm in this District.  Moreover, the majority of the inventive activity that resulted in the patented technology occurred in this District.

<b>INTRADISTRICT ASSIGNMENT</b>

16.     Pursuant to Civil Local Rules 3-2(c) and 3-5(b), because this action is an intellectual property action, it is properly assigned to any of the divisions in this District.

<b>BACKGROUND FACTS</b>

<b><u>Nevro's Pioneering Technology</u></b>

17.     Chronic pain is often treated with opioid drugs.  But there is little evidence that opioids provide long term relief for patients, and they frequently cause more problems than they solve.  It is well known that the use of opioid drugs, particularly over a sustained period of time, is fraught with risk and has significant side effects.  SCS technology was born of the promise of providing a solution to chronic pain without the use of drugs.

18.     Nevro was founded in 2006 to develop a novel SCS technology for the treatment of chronic pain.  Nevro's SCS system, known as the Senza® system, utilizes Nevro's unique and patented HF10™ therapy.  Nevro's HF10™ therapy employs a much higher frequency than traditional "low frequency" SCS systems, along with a unique waveform and treatment algorithm.  In its commercial embodiment, Nevro's Senza® system provides electrical pulses to the spinal cord at a rate of 10,000 pulses per second (10,000 Hz or 10 kHz), as compared to traditional SCS systems like Boston Scientific's, which utilize low frequency stimulation, typically between 50 Hz and 60 Hz.  The Senza® system, with its related subcomponents, is Nevro's only product.

19.     Unlike traditional low frequency SCS therapy, Nevro's Senza® system and HF10™ therapy provides pain relief *without* generating paresthesia.  Nevro's advances represent

a paradigm shift in SCS therapy.  Before FDA approval of Nevro's Senza® system, every commercial SCS system sought to create paresthesia in the patient by using low frequency stimulation waveforms.  Every commercial SCS system sought to use that paresthesia to overlap and mask pain in the patient.  And virtually all of the development in the SCS industry for decades has been directed towards methods of improving paresthesia delivery and the mapping of paresthesia over a patient's area of pain.  As a recent peer-reviewed publication concerning Nevro's SCS therapy stated: "Over the last 40 [years], the primary focus of innovation for SCS for chronic pain has been to improve the reliability of overlapping paresthesias with distribution of pain."[1]

20.     Like the rest of the SCS industry, Defendant Boston Scientific emphasized the importance of creating paresthesia for SCS therapy.  For example, in a Boston Scientific sponsored study, one of its own co-author scientists asserted that "[p]atient-perceived concordant paresthesia overlapping the area of pain is *essential* for success of this therapy."[2]

21.     Because Nevro's approach was fundamentally different from that of others in the market, the FDA put Nevro to a rigorous test.  To obtain FDA approval, Nevro was required to prove that its therapy is paresthesia-free and that its therapy was clinically effective even though it is paresthesia-free.  To definitely establish its results, the FDA required Nevro to test its Senza® system in an FDA-monitored randomized controlled trial in a head-to-head comparison against a commercially available low frequency SCS system (the "Controlled Trial").  Boston Scientific's Precision® SCS system was chosen as the commercially available comparator for the Controlled Trial.  In the Controlled Trial, Boston's SCS devices were programmed by Boston Scientific clinical engineers and/or sales representatives and implanted by physicians who

---

[1] Leonardo Kapural et al., "Novel 10-kHz High-frequency Therapy (HF10 Therapy) Is Superior to Traditional Low-frequency Spinal Cord Stimulation for the Treatment of Chronic Back and Leg Pain: The SENZA-RCT Randomized Controlled Trial," *Anesthesiology*, Vol. 123 No. 4 (October 2015)  at 1364.

[2] Oakley et al., "A New Spinal Cord Stimulation System Effectively Relieves Chronic, Intractable Pain: A Multicenter Prospective Clinical Study," *Neuromodulation*, Vol. 10 No. 3 (2007) at 264.

regularly work with them.  In a landmark finding, the Controlled Trial found Nevro's Senza® system and HF10™ therapy to be nearly twice as effective as Boston Scientific's paresthesia-based low frequency SCS system in providing pain relief.

22.     The Senza® system was approved by the FDA on May 8, 2015, for sale in the United States.  The FDA recognized Nevro's pioneering technology by approving Nevro's Senza® system with a "superiority" labeling—a designation that is rare in the medical device field.  The superiority labeling indicates that Nevro's Senza® system and HF10™ therapy provides statistically superior efficacy when compared to Boston Scientific's paresthesia-based low frequency SCS therapy.

23.     Nevro defied the conventional wisdom and demonstrated that effective pain relief could be achieved without paresthesia.  Nevro's Senza® system provides more effective pain relief to a greater percentage of patients.  Traditional, low frequency SCS therapy has limited use.  For example, patients with predominant back pain are seldom seen as good candidates for traditional SCS therapy because it is anatomically difficult to cover the back with paresthesia.  In contrast, Nevro's Senza® system and HF10™ therapy provide significant and sustained pain relief for *both* back and leg pain.

24.     Nevro's Senza® system and HF10™ therapy has other significant advantages over paresthesia-based low frequency SCS systems as well.  Paresthesia-based low frequency SCS has a cumbersome operating procedure that requires waking a patient during the implantation procedure so that the physician can position the paresthesia to overlap with the area of pain.  In contrast, because Nevro's therapy does not require any intraoperative mapping of paresthesia, a patient does not need to be awakened for questioning during the surgical implantation procedure.  This results in a much more predictable implantation procedure, and a much better patient experience, which creates the potential for greater patient and physician adoption.

25.     Importantly, Nevro's Senza® system and HF10™ therapy also provides patients with greater freedom of movement and activity.  Paresthesia-based SCS therapies can cause unexpected jolts or shocks when a patient bends, twists, or changes posture, and must be turned off while driving or sleeping.  Nevro's HF10™ SCS therapy does not have any such restriction.

Traditional low frequency SCS patients who have switched to Nevro's device have found it life-changing, as they have become truly pain and paresthesia-free for the first time in years.  In the Controlled Trial, none of the patients receiving Nevro's HF10 therapy experienced induced paresthesia or reported stimulation-related discomfort.  In comparison, 46.5% of patients who received Boston Scientific's low frequency paresthesia-based therapy reported uncomfortable stimulation.[3]

26.     Because of the superiority of Nevro's Senza® system over traditional SCS systems, Medicare reimbursement in the United States is higher for the Senza® system than for any of Nevro's competitors.  The Centers for Medicare and Medicaid ("CMS") determined that hospitals and clinics would receive this higher reimbursement after reviewing the clinical data on HF10™ therapy.  The procedure that CMS followed to provide for this additional reimbursement has been employed only about a dozen times in the past ten years across the entire medical device field.

27.     Although Nevro has been in the U.S. market for less than eighteen months, it has seen early success in breaking into the U.S. SCS market.  The SCS market is dominated by three large competitors: Medtronic, St. Jude, and Boston Scientific.  Each of these companies has an established market position, reinforced by extensive marketing and promotional infrastructure, teams of sales representatives, and longstanding connections and relationships with hospitals and doctors in the SCS field and in many other areas.  Each of these companies leverages its multiple strengths to keep a tight grip on the SCS market.  The sole reason Nevro has been able to break into the SCS market has been because it has unique—and demonstrably superior—SCS technology.

28.     Nevro has protected its innovative SCS technology through an extensive patent portfolio of more than 100 issued U.S. and international patents, including the patents asserted in

---

[3] Leonardo Kapural et al., "Novel 10-kHz High-frequency Therapy (HF10 Therapy) Is Superior to Traditional Low-frequency Spinal Cord Stimulation for the Treatment of Chronic Back and Leg Pain: The SENZA-RCT Randomized Controlled Trial," *Anesthesiology*, Vol. 123 No. 4 (October 2015) at 1367.

1  this action.  Nevro's patents cover many aspects of its pioneering technology, including

2  implantable high frequency SCS systems and devices, methods of treating patients with

3  paresthesia-free systems and devices, and methods of programming such systems and devices.

4  <u>**Boston Scientific Begins To Pursue A High Frequency System**</u>

5  29.  Boston Scientific is a supplier of paresthesia-based low frequency SCS systems.

6  Boston Scientific is well aware of Nevro's role in pioneering paresthesia-free high frequency SCS

7  technology.  The FDA-monitored clinical study that demonstrated the superiority of Nevro's

8  Senza® system used Boston Scientific's low frequency SCS devices as the comparator.  Those

9  devices were implanted and monitored by physicians who regularly work with Boston Scientific

10 devices and programmed by Boston Scientific's clinical engineers and/or sales representatives.

11 30.  After seeing the success of Nevro's Senza® system in the Australian and

12 European markets, and faced with the growing evidence of the superior performance of Nevro's

13 Senza® system in the FDA clinical study against Boston Scientific's own products, Boston

14 Scientific aggressively began pursuing plans to copy Nevro's technology and launch a competing

15 paresthesia-free high frequency SCS system.

16 31.  Boston Scientific launched a clinical trial called "ACCELERATE" in March 2014

17 to evaluate the safety and effectiveness of paresthesia-free high frequency SCS therapy using

18 Boston Scientific's Precision SCS system as part of the process of seeking FDA approval.

19 Notably, the system that is the subject of the ACCELERATE study operates at the same 10,000

20 Hz frequency as Nevro's commercial paresthesia-free HF10™ therapy.  The system of the

21 ACCELERATE study is covered by many claims in Nevro's patent portfolio, including the

22 patents in this action.  The ACCELERATE study was scheduled for completion in October 2016.

23 <u>**Boston Scientific Unsuccessfully Challenges Nevro's Patent Protection**</u>

24 32.  Boston Scientific is well aware of Nevro's extensive patent portfolio protecting

25 Nevro's innovative technology.

26 33.  On May 14, 2015, just six days after the FDA approved Nevro's Senza® system

27 for paresthesia-free high frequency SCS therapy, Boston Scientific filed two petitions with the

28 U.S. Patent and Trademark Office ("PTO") seeking to challenge the validity of Nevro's U.S.

Patent No. 8,359,102 ("the '102 patent") through *inter partes* review ("IPR") proceedings.  The petitions alleged that sixteen claims of the '102 patent were invalid in light of the prior art.  For example, Boston challenged the validity of claim 1 of the '102 patent, which claims:

> 1.  A method for treating a patient, comprising:
>
> > delivering or instructing delivery of an electrical signal to the patient's spinal cord via at least one implantable signal delivery device; and
>
> > wherein the electrical signal has a frequency of from about 1.5 kHz to about 50 kHz and does not create paresthesia in the patient.

34.     Between its two petitions, Boston Scientific raised four allegedly anticipatory grounds for invalidity, and over 25 obviousness allegations using various combinations of references.  Yet both of Boston Scientific's petitions were decisively denied in their entirety.  The PTO declined to institute any proceedings, finding that Boston Scientific failed to establish a reasonable likelihood of showing that even one of the sixteen challenged claims of Nevro's patent was invalid.

### Boston Scientific Continues To Press Forward With Its High Frequency System

35.     Despite the denial of its IPR petitions, Boston Scientific has continued to pursue its plans to market a paresthesia-free high frequency SCS system.  Boston Scientific publicly announced that it would press forward with these plans regardless of its failed challenge against Nevro's patents.

36.     At the Piper Jaffray Health Care Conference in December 2015, Boston Scientific's Vice President of Investor Relations, Susan Lisa, stated the company's intentions as follows:

> Susan Lisa:  So it was announced yesterday by the patent office that we – there are requests for an inter-party review with respect to a competitors patents and high frequency space for spinal cord stimulation.  The request for that IPR review has been denied. . . . but I can say no change to our business strategy going forward in spinal cord stem . . . .
>
> Q:  Okay.  And you are moving forward with the 10,000 hertz trial, so, I mean, I think that's the statement maybe in and of itself.
>
> Susan Lisa:  That's right.  That's our ACCELERATE trial that is

looking at the 10,000 hertz trial that we'll continue to enroll, and we'd expect to see it complete by the end of 2016.

37.     At the Morgan Stanley Global Healthcare Conference in September 2016, Boston Scientific's CEO Mike Mahoney confirmed that Boston Scientific is continuing to pursue its plans for a paresthesia-free high frequency SCS system, and stated that Boston Scientific expected to release the data from the ACCELERATE study before the end of the year:

> Q:  . . . [A]re we going to get ACCELERATE data at NANS in January?  And if the data is good are you going to launch this product in the US?
>
> Mike Mahoney:  . . . In terms of the ACCELERATE data we will disclose more of our ACCELERATE data and next steps in that area by the end of – by fourth quarter end of this year. . . . Likely you will hear more from us before NANS.

38.     In its October 26, 2016 earnings call, Boston Scientific moved that date back slightly, stating that it would provide "an update on the ACCELERATE trial" and "additional insight" in its fourth quarter 2016 earnings call, which is scheduled to take place in February 2017.

39.     The completion of the ACCELERATE study is among the last steps that would normally be required for FDA approval.  Nevro anticipates that Boston Scientific is poised to receive FDA approval within the next twelve months, and possibly before the end of the first half of next year.

**Boston Scientific Is Already Making And Selling High Frequency Capable Systems**

40.     In the meantime, although Boston Scientific has not yet received FDA approval, Boston Scientific is already manufacturing and/or selling infringing SCS systems in the United States that are capable of operating at frequencies up to 10,000 Hz.

41.     Nevro learned less than two weeks prior to filing this complaint that Boston Scientific has received CE Mark approval for commercial sale of paresthesia-free high frequency SCS systems in Europe.

42.     Boston Scientific's SCS devices are manufactured in the United States, at its facility in Valencia, California.

43.     Boston Scientific has sold these devices in at least the United Kingdom and the Netherlands, marketing them as Precision SCS Systems with MultiWave™ Technology, and has described these products as being "commercially available" in Europe.

44.     Boston Scientific is participating in a multi-center National Health Services ("NHS") study in the United Kingdom called VELOCITY, employing Boston Scientific's Precision SCS system.  The research summary on the NHS site states that the study will be conducted "using the commercially available Boston Scientific (BSC) PRECISION Spinal Cord Stimulator System with MultiWave Technology" and that:

> Up to 60 patients in up to 10 sites in Europe will be enrolled and followed up to 12 months after device activation.  Eligible subjects, following written consent will receive the commercial stimulation device programmed at 10KHz [10,000 Hz] as part of their standard of care.

45.     The Dutch Central Committee on Research Involving Human Subjects (CCMO) recently approved the VELOCITY study in the Netherlands.  The research summary on the CCMO website similarly states that the study is using Boston Scientific's Precision SCS System with MultiWave Technology and that this system "is capable of providing stimulation at rates up to 10 kHz [10,000 Hz]."  The summary also states: "*This is a post CE mark study, within the indications for use*."  (emphasis added).

46.     Boston Scientific is also conducting a separate clinical trial in the United Kingdom called "PROCO" using its Precision SCS system to evaluate stimulation pulse rate on clinical outcomes in patients whose back pain is controlled by 10,000 Hz frequency.  The PROCO study began in June 2015 and is scheduled for completion in August 2017.

47.     It also appears that Boston Scientific is already manufacturing SCS systems that are capable of operating at high frequencies (up to 10,000 Hz) for sale within the United States. Boston Scientific submitted product specifications to the National Institutes of Health ("NIH") in September 2015 listing the Boston Scientific products available for the NIH BRAIN Initiative. The list of products included Boston Scientific's Precision MultiWave™ SCS system, which the specifications described as similar to the Precision SCS system "but capable of stimulation

frequencies up to 10kHz [10,000 Hz].”  Boston Scientific describes its MultiWave™ technology as enabling the delivery of “higher rates,” and provides a chart indicating that frequencies between 2,000-10,000 Hz are available.  The chart also indicates the available ranges for other parameters, including amplitudes between 0-9 mA, and pulse widths between 20-240 microseconds.

48.     Boston Scientific markets its Precision Spectra, Precision Montage, and Precision Novi SCS systems commercially as containing the stated MultiWave™ technology.  For example, in a May 4, 2015 Press Release, Boston Scientific proclaimed that “Precision Novi is a MultiWave™ Platform capable of delivering a variety of field shapes and waveforms with or without paresthesia, including burst and higher rate frequencies.”

49.     Boston Scientific has been conducting this manufacturing and selling of 10,000 Hz-capable SCS systems in knowing violation of Nevro’s patents that cover these systems.

50.     Nevro will be irreparably harmed if Boston Scientific is permitted to manufacture and sell a competing, infringing device.  Nevro will be forced to compete against the very technology that it spent years researching, developing and bringing to market.  Nevro does not license its technology to anyone else.  This differentiating technology, developed in the face of the skepticism of Boston Scientific and the SCS industry, has been the key to Nevro’s ability to break into a market that has been dominated for decades by three of the largest medical device companies in the world.  Nevro’s marketing strategy has been built around educating physicians, health care providers and consumers about the superior performance of its Senza® system and paresthesia-free high frequency SCS, in comparison with traditional paresthesia-based low frequency SCS therapy.  If Boston Scientific is permitted to sell an infringing paresthesia-free device, Nevro will lose its key distinguishing feature, and other companies will feel free to launch their own competing, infringing devices.

51.     Nevro will accordingly seek an order from this Court preliminarily and permanently enjoining Boston Scientific from infringing Nevro’s patents.

# FIRST CAUSE OF ACTION

(Infringement of U.S. Patent No. 8,712,533)

52.     Nevro incorporates by reference the allegations contained in paragraphs 1-51 above.

53.     Nevro is the owner of all right, title, and interest in and to U.S. Patent No. 8,712,533 (the '533 patent).  The '533 patent issued on April 29, 2014 and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '533 patent is attached as Exhibit A.

54.     The claims of the '533 patent cover implantable SCS systems and devices capable of providing high frequency SCS therapy without creating paresthesia.  For example, claim 1 of the '533 patent is directed to an SCS system that has a signal generator capable of generating high frequency therapy signals in a range from 1.5 kHz to 100 kHz without creating paresthesia, and an implantable signal delivery device electrically coupleable to the signal generator and capable of delivering the therapy signal to the patient's spinal cord region.

55.     Boston Scientific has infringed and continues to infringe the '533 patent by manufacturing, and/or selling or offering to sell in the United States SCS systems that have a signal generator capable of generating high frequency therapy signals in a range from 1.5 kHz to 100 kHz without creating paresthesia, and an implantable signal delivery device electrically coupleable to the signal generator and capable of delivering the therapy signal to the patient's spinal cord region.  Boston Scientific's manufacture and/or sale of these systems infringes one or more claims of the '533 patent, including at least claim 1, literally or under the doctrine of equivalents, and violate 35 U.S.C. § 271.

56.     Boston Scientific's infringement is without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '533 patent.

57.     Boston Scientific has actual and constructive notice of the '533 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

58.     Nevro has been damaged by Boston Scientific's acts in an amount as yet unknown. Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's continued acts of infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from further infringement of the '533 patent.

**SECOND CAUSE OF ACTION**

(Declaratory Judgment of Infringement of U.S. Patent No. 8,712,533)

59.     Nevro incorporates by reference the allegations contained in paragraphs 1-58 above.

60.     Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that have a signal generator capable of generating high frequency therapy signals in a range from 1.5 kHz to 100 kHz without creating paresthesia, and an implantable signal delivery device electrically coupleable to the signal generator and capable of delivering the therapy signal to the patient's spinal cord, as claimed in at least claim 1 of the '533 patent.  Thus the foregoing actions by Boston Scientific will constitute direct infringement of one or more claims of the '533 patent, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

61.     Boston Scientific has engaged in substantial preparation and taken concrete steps with the intent to conduct these infringing activities.  As discussed in more detail above, Boston Scientific is already manufacturing SCS systems designed to perform at frequencies of up to 10,000 Hz in the United States for commercial use and sale in Europe.   Nevro believes that FDA approval and full-scale commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS systems in the United States is imminent, and it appears that Boston Scientific is already manufacturing devices for sale in the United States that are designed to perform at frequencies of up to 10,000 Hz.

62.     In addition to directly infringing, Nevro further believes that, upon FDA approval and commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS

1   systems, Boston Scientific will induce infringement of the '533 patent by inducing others to

2   directly infringe the '533 patent, literally or under the doctrine of equivalents.

3        63.     Boston Scientific knows of or is willfully blind to the existence of the '533 patent.

4   Nevro believes that Boston Scientific has intentionally made substantial preparation to and will

5   instruct others, including doctors and health care providers, to use its high frequency SCS in a

6   manner that infringes the '533 patent.  In the SCS industry, the clinical engineers and/or sales

7   representatives of the device manufacturer normally are present in the operating room and will

8   program the SCS device for the operation, including by setting the parameters for the frequency,

9   amplitude and pulse width of the electronic signal to be delivered by the device.  Boston

10  Scientific knows or is willfully blind to the fact that such actions will induce infringement.  The

11  foregoing actions by Boston Scientific will constitute induced infringement of one or more claims

12  of the '533 patent in violation of 35 U.S.C. § 271(b) and (f)(1).

13       64.     An actual and justiciable controversy exists between Nevro and Boston Scientific

14  regarding infringement of the '533 patent.  The '533 patent is the parent of the '102 patent.

15  Boston Scientific has already unsuccessfully challenged the validity of sixteen claims of Nevro's

16  '102 patent covering Nevro's high frequency paresthesia-free SCS system by filing two IPR

17  petitions with the PTO.  Although both petitions were denied by the PTO, Boston Scientific

18  publicly announced at the December 2015 Piper Jaffray Health Conference that it intended to

19  press forward nonetheless, and has continued with the ACCELERATE study and with

20  manufacturing and/or selling infringing 10,000 Hz-capable devices.  Boston Scientific is also

21  formally opposing Nevro's European patents in Europe.

22       65.     Boston Scientific's imminent infringement will be without the consent or other

23  authority of Nevro.  Boston Scientific is not licensed under the '533 patent.

24       66.     Nevro is entitled to a declaratory judgment that Boston Scientific's future

25  commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS

26  systems does and will infringe the '533 patent, directly and indirectly.

27

28

67.     Boston Scientific has actual and constructive notice of the '533 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

68.     Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet unknown.  Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's imminent infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of the '533 patent.

**THIRD CAUSE OF ACTION**

(Infringement of U.S. Patent No. 9,327,125)

69.     Nevro incorporates by reference the allegations contained in paragraphs 1-68 above.

70.     Nevro is the owner of all right, title, and interest in and to U.S. Patent No. 9,327,125 (the '125 patent).  The '125 patent issued on May 3, 2016, and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '125 patent is attached as Exhibit B.

71.     The claims of the '125 patent cover implantable SCS systems that include means for providing high frequency SCS therapy without creating paresthesia.  For example, claim 12 of the '125 patent is directed to an SCS system that includes means of generating a paresthesia-free therapy signal in a range from 1.5 kHz to 100 kHz and implantable means of delivering the therapy signal to the patient's spinal cord.

72.     Boston Scientific has infringed and continues to infringe the '125 patent by manufacturing, selling and/or offering to sell in the United States SCS systems that include means of generating a paresthesia-free therapy signal in a range from 1.5 kHz to 100 kHz and implantable means of delivering the therapy signal to the patient's spinal cord.  Boston Scientific's manufacture and/or sale of these systems infringes one or more claims of the '125 patent, including at least claim 12, literally or under the doctrine of equivalents, and violate 35 U.S.C. § 271.

73.     Boston Scientific's infringement is without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '125 patent.

74.     Boston Scientific has actual and constructive notice of the '125 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

75.     Nevro has been damaged by Boston Scientific's acts in an amount as yet unknown. Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's continued acts of infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from further infringement of the '125 patent.

**FOURTH CAUSE OF ACTION**

(Declaratory Judgment of Infringement of U.S. Patent No. 9,327,125)

76.     Nevro incorporates by reference the allegations contained in paragraphs 1-75 above.

77.     Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that include means of generating a paresthesia-free therapy signal in a range from 1.5 kHz to 100 kHz and implantable means of delivering the therapy signal to the patient's spinal cord, as called for in at least claim 12 of the '125 patent.  Thus, the foregoing actions by Boston Scientific will constitute direct infringement of one or more claims of the '125 patent, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

78.     Boston Scientific has engaged in substantial preparation and taken concrete steps with the intent to conduct these infringing activities.  As discussed in more detail above, Boston Scientific is already manufacturing SCS systems designed to perform at frequencies of up to 10,000 Hz in the United States for commercial sale in Europe.  Nevro believes that FDA approval and commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS systems in the United States is imminent, and it appears that Boston Scientific is already

1  manufacturing devices for sale in the United States that are designed to perform at frequencies of

2  up to 10,000 Hz.

3      79.    In addition to directly infringing, Nevro believes that, upon FDA approval and

4  commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS

5  systems, Boston Scientific will induce infringement of the '125 patent by inducing others to

6  directly infringe the '125 patent, literally or under the doctrine of equivalents.

7      80.    Boston Scientific knows of or is willfully blind to the existence of the '125 patent.

8  Nevro believes that Boston Scientific has intentionally made substantial preparation to and will

9  instruct others, including doctors and health care providers, to use its high frequency SCS in a

10  manner that infringes the '125 patent.  In the SCS industry, the clinical engineers and/or sales

11  representatives of the device manufacturer normally are present in the operating room and will

12  program the SCS device for the operation, including by setting the parameters for the frequency,

13  amplitude and pulse width of the electronic signal to be delivered by the device.  Boston

14  Scientific knows or is willfully blind to the fact that such actions will induce infringement.  The

15  foregoing actions by Boston Scientific will constitute induced infringement of one or more claims

16  of the '125 patent in violation of 35 U.S.C. § 271(b) and (f)(1).

17      81.    An actual and justiciable controversy exists between Nevro and Boston Scientific

18  regarding infringement of the '125 patent.  The '125 patent is in the same patent family as the

19  '102 patent.  Boston Scientific has already unsuccessfully challenged the validity of sixteen

20  claims of Nevro's '102 patent covering Nevro's paresthesia-free high frequency SCS system by

21  filing two IPR petitions with the Patent and Trademark Office.  Although both petitions were

22  denied by the PTO, Boston Scientific announced at the December 2015 Piper Jaffray Health

23  Conference that it intended to press forward nonetheless, and has continued with the

24  ACCELERATE study and with manufacturing and/or selling infringing 10,000 Hz-capable

25  devices.  Boston Scientific is also formally opposing Nevro's European patents in Europe.

26      82.    Boston Scientific's imminent infringement will be without the consent or other

27  authority of Nevro.  Boston Scientific is not licensed under the '125 patent.

28

83.     Nevro is entitled to a declaratory judgment that Boston Scientific's future commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS systems does and will infringe the '125 patent, directly and indirectly.

84.     Boston Scientific has actual and constructive notice of the '125 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

85.     Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet unknown.  Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's imminent infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of the '125 patent.

## FIFTH CAUSE OF ACTION

(Declaratory Judgment of Infringement of U.S. Patent No. 8,359,102)

86.     Nevro incorporates by reference the allegations contained in paragraphs 1-85 above.

87.     Nevro is the owner of all right, title, and interest in and to the '102 patent.  The '102 patent issued on January 22, 2013, and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '102 patent is attached as Exhibit C.

88.     The claims of the '102 patent cover methods of treating patients with high frequency SCS without creating paresthesia.  For example, claim 1 of the '102 patent is directed to a method for treating a patient with an implantable electrode and high frequency electrical signals (from about 1,500 Hz to about 50,000 Hz) without creating paresthesia in the patient.

89.     Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that have an implantable electrode and are capable of delivering high frequency electrical signals above 1,500 Hz and up to at least 10,000 Hz without creating paresthesia in the patient.  Boston Scientific's use of such systems to provide high frequency SCS without creating paresthesia will constitute direct infringement of

1   one or more claims of the '102 patent, literally or under the doctrine of equivalents, in violation of

2   35 U.S.C. § 271.

3        90.     Boston Scientific has engaged in substantial preparation and taken concrete steps

4   with the intent to conduct these infringing activities.  As discussed in more detail above, Boston

5   Scientific is already manufacturing SCS systems designed to perform at frequencies of up to

6   10,000 Hz in the United States for commercial sale in Europe.  Nevro believes that FDA approval

7   and commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS

8   systems in the United States is imminent, and it appears that Boston Scientific is already

9   manufacturing devices for sale in the United States that are designed to perform at frequencies of

10   up to 10,000 Hz.  As such, Nevro believes that Boston Scientific will immediately begin directly

11   infringing the '102 patent upon receiving FDA approval.

12        91.     In addition to directly infringing, Nevro believes that upon FDA approval and

13   commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS

14   systems, Boston Scientific will induce infringement of the '102 patent by inducing others to

15   directly infringe the '102 patent, literally or under the doctrine of equivalents.

16        92.     Boston Scientific knows of the existence of the '102 patent.  Nevro believes that

17   Boston Scientific has intentionally made substantial preparation to and will instruct others,

18   including doctors and health care providers, to use its high frequency SCS in a manner that

19   infringes the '102 patent.  In the SCS industry, the clinical engineers and/or sales representatives

20   of the device manufacturer normally are present in the operating room and will program the SCS

21   device for the operation, including by setting the parameters for the frequency, amplitude and

22   pulse width of the electronic signal to be delivered by the device.  Boston Scientific knows or is

23   willfully blind to the fact that such actions will induce infringement.  The foregoing actions by

24   Boston Scientific will constitute induced infringement of one or more claims of the '102 patent in

25   violation of 35 U.S.C. § 271(b) and (f)(1).  Nevro expects that, after a reasonable opportunity to

26   take discovery, the allegations of this paragraph will have additional evidentiary support.

27        93.     An actual and justiciable controversy exists between Nevro and Boston Scientific

28   regarding infringement of the '102 patent.  Boston Scientific has already unsuccessfully

challenged the validity of sixteen claims of Nevro's '102 patent covering Nevro's high frequency paresthesia-free SCS system by filing two IPR petitions with the Patent and Trademark Office. Although both petitions were denied by the PTO, Boston Scientific announced at the December 2015 Piper Jaffray Health conference that it intended to press forward nonetheless, and has continued with the ACCELERATE study and with manufacturing and/or selling infringing 10,000 Hz-capable devices nonetheless.  Boston Scientific is also formally opposing Nevro's European patents in Europe.

94.     Boston Scientific's imminent infringement will be without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '102 patent.

95.     Nevro is entitled to a declaratory judgment that Boston Scientific's future commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS systems does and will infringe the '102 patent, directly and indirectly.

96.     Boston Scientific has actual notice of the '102 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet unknown.  Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's imminent infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of the '102 patent.

## SIXTH CAUSE OF ACTION

### (Infringement of U.S. Patent No. 9,480,842)

97.     Nevro incorporates by reference the allegations contained in paragraphs 1-96 above.

98.     Nevro is the owner of all right, title, and interest in and to U.S. Patent No. 9,480,842 (the '842 patent).  The '842 patent issued on November 1, 2016 and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '842 patent is attached as Exhibit D.

99.     The claims of the '842 patent cover implantable SCS systems and devices capable of providing high frequency SCS therapy with certain ranges of amplitudes and pulse widths.  For example, claim 1 of the '842 patent is directed to an SCS system that has a signal generator capable of generating therapy signals with a frequency of 10 kHz, an amplitude up to 6 mA, and pulses with a pulse width between 30 and 35 microseconds, and an implantable signal delivery device electrically coupleable to the signal generator and capable of being implanted within a patient's epidural space to deliver the therapy signal to the patient's spinal cord.

100.    Boston Scientific has infringed and continues to infringe the '842 patent by manufacturing, and/or selling or offering to sell in the United States SCS systems that have a signal generator capable of generating therapy signals with a frequency of 10 kHz, an amplitude up to 6 mA, and pulses with a pulse width between 30 and 35 microseconds, and an implantable signal delivery device electrically coupleable to the signal generator and capable of being implanted within a patient's epidural space to deliver the therapy signal to the patient's spinal cord.  Boston Scientific's manufacture and/or sale of these systems infringes one or more claims of the '842 patent, including at least claim 1, literally or under the doctrine of equivalents, and violate 35 U.S.C. § 271.

101.    Boston Scientific's infringement is without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '842 patent.

102.    Boston Scientific has actual and constructive notice of the '842 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

103.    Nevro has been damaged by Boston Scientific's acts in an amount as yet unknown. Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's continued acts of infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from further infringement of the '842 patent.

**SEVENTH CAUSE OF ACTION**

(Declaratory Judgment of Infringement of U.S. Patent No. 9,480,842)

104.    Nevro incorporates by reference the allegations contained in paragraphs 1-103 above.

105.    Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that have a signal generator capable of generating therapy signals with a frequency of 10 kHz, an amplitude up to 6 mA, and pulses with a pulse width between 30 and 35 microseconds, and an implantable signal delivery device electrically coupleable to the signal generator and capable of being implanted within a patient's epidural space to deliver the therapy signal to the patient's spinal cord, as claimed in at least claim 1 of the '842 patent.  Thus the foregoing actions by Boston Scientific will constitute direct infringement of one or more claims of the '842 patent, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

106.    Boston Scientific has engaged in substantial preparation and taken concrete steps with the intent to conduct these infringing activities.  As discussed in more detail above, Boston Scientific is already manufacturing SCS systems designed to perform at frequencies of up to 10,000 Hz in the United States for commercial use and sale in Europe.  Nevro believes that FDA approval and full-scale commercial launch of Boston Scientific's infringing high frequency SCS systems in the United States is imminent, and it appears that Boston Scientific is already manufacturing devices for sale in the United States that are designed to perform at frequencies of up to 10,000 Hz.

107.    In addition to directly infringing, Nevro further believes that, upon FDA approval and commercial launch of Boston Scientific's infringing high frequency SCS systems, Boston Scientific will induce infringement of the '842 patent by inducing others to directly infringe the '842 patent, literally or under the doctrine of equivalents.

108.    Boston Scientific knows of or is willfully blind to the existence of the '842 patent. Nevro believes that Boston Scientific has intentionally made substantial preparation to and will instruct others, including doctors and health care providers, to use its high frequency SCS in a

manner that infringes the '842 patent. In the SCS industry, the clinical engineers and/or sales representatives of the device manufacturer normally are present in the operating room and will program the SCS device for the operation, including by setting the parameters for the frequency, amplitude and pulse width of the electronic signal to be delivered by the device. Boston Scientific knows or is willfully blind to the fact that such actions will induce infringement. The foregoing actions by Boston Scientific will constitute induced infringement of one or more claims of the '842 patent in violation of 35 U.S.C. § 271(b) and (f)(1).

109.   An actual and justiciable controversy exists between Nevro and Boston Scientific regarding infringement of the '842 patent. The '842 patent is in the same patent family as the '102 patent. Boston Scientific has already unsuccessfully challenged the validity of sixteen claims of Nevro's '102 patent covering Nevro's high frequency paresthesia-free SCS system by filing two IPR petitions with the PTO. Although both petitions were denied by the PTO, Boston Scientific publicly announced at the December 2015 Piper Jaffray Health Conference that it intended to press forward nonetheless, and has continued with the ACCELERATE study and with manufacturing and/or selling infringing 10,000 Hz-capable devices. Boston Scientific is also formally opposing Nevro's European patents in Europe.

110.   Boston Scientific's imminent infringement will be without the consent or other authority of Nevro. Boston Scientific is not licensed under the '842 patent.

111.   Nevro is entitled to a declaratory judgment that Boston Scientific's future commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS systems does and will infringe the '842 patent, directly and indirectly.

112.   Boston Scientific has actual and constructive notice of the '842 patent. Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

113.   Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet unknown. Nevro has no adequate legal remedy. Unless enjoined by this Court, Boston Scientific's imminent infringement will cause Nevro substantial and irreparable harm. Under 35

U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of the '842 patent.

**EIGHTH CAUSE OF ACTION**

(Infringement of U.S. Patent No. 9,333,357)

114.   Nevro incorporates by reference the allegations contained in paragraphs 1-113 above.

115.   Nevro is the owner of all right, title, and interest in and to U.S. Patent No. 9,333,357 (the '357 patent).  The '357 patent issued on May 10, 2016 and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '357 patent is attached as Exhibit E.

116.   The claims of the '357 patent cover implantable SCS systems and devices capable of providing SCS therapy within certain ranges of pulse widths and amplitudes without generating paresthesia.  For example, claim 1 of the '357 patent is directed to an SCS system that has a signal generator that can be programmed to generate and deliver electrical therapy signals to a patient's spinal cord from an epidural location via a coupleable implantable signal delivery device, wherein the signal has a plurality of sequential bi-phasic pulses with a pulse width between 10 and 333 microseconds and an amplitude between 0.5 mA and 10 mA, and at least partially reduces the patient's sensation of pain without generating paresthesia.

117.   Boston Scientific has infringed and continues to infringe the '357 patent by manufacturing, and/or selling or offering to sell in the United States SCS systems that have a signal generator that can be programmed to generate and deliver electrical therapy signals to a patient's spinal cord from an epidural location via a coupleable implantable signal delivery device, wherein the signal has a plurality of sequential bi-phasic pulses with a pulse width between 10 and 333 microseconds and an amplitude between 0.5 mA and 10 mA, and at least partially reduces the patient's sensation of pain without generating paresthesia.  Boston Scientific's manufacture and/or sale of these systems infringes one or more claims of the '357 patent, including at least claim 1, literally or under the doctrine of equivalents, and violate 35 U.S.C. § 271.

118.     Boston Scientific's infringement is without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '357 patent.

119.     Boston Scientific has actual and constructive notice of the '357 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

120.     Nevro has been damaged by Boston Scientific's acts in an amount as yet unknown. Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's continued acts of infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from further infringement of the '357 patent.

## NINTH CAUSE OF ACTION

(Declaratory Judgment of Infringement of U.S. Patent No. 9,333,357)

121.     Nevro incorporates by reference the allegations contained in paragraphs 1-120 above.

122.     Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that have a signal generator that can be programmed to generate and deliver electrical therapy signals to a patient's spinal cord from an epidural location via a coupleable implantable signal delivery device, wherein the signal has a plurality of sequential bi-phasic pulses with a pulse width between 10 and 333 microseconds and an amplitude between 0.5 mA and 10 mA, and at least partially reduces the patient's sensation of pain without generating paresthesia, as claimed in at least claim 1 of the '357 patent.  Thus the foregoing actions by Boston Scientific will constitute direct infringement of one or more claims of the '357 patent, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

123.     Boston Scientific has engaged in substantial preparation and taken concrete steps with the intent to conduct these infringing activities.  As discussed in more detail above, Boston Scientific is already manufacturing SCS systems designed to perform at amplitudes and pulse widths within the claimed ranges in the United States for commercial use and sale in Europe. Nevro believes that FDA approval and full-scale commercial launch of Boston Scientific's

1    infringing paresthesia-free SCS systems in the United States is imminent, and it appears that

2    Boston Scientific is already manufacturing devices for sale in the United States that are designed

3    to perform at amplitudes and pulse widths within the claimed ranges without generating

4    paresthesia.

5         124.    In addition to directly infringing, Nevro further believes that, upon FDA approval

6    and commercial launch of Boston Scientific's infringing paresthesia-free SCS systems, Boston

7    Scientific will induce infringement of the '357 patent by inducing others to directly infringe the

8    '357 patent, literally or under the doctrine of equivalents.

9         125.    Boston Scientific knows of or is willfully blind to the existence of the '357 patent.

10   Nevro believes that Boston Scientific has intentionally made substantial preparation to and will

11   instruct others, including doctors and health care providers, to use its high frequency SCS in a

12   manner that infringes the '357 patent.  In the SCS industry, the clinical engineers and/or sales

13   representatives of the device manufacturer normally are present in the operating room and will

14   program the SCS device for the operation, including by setting the parameters for the frequency,

15   amplitude and pulse width of the electronic signal to be delivered by the device.  Boston

16   Scientific knows or is willfully blind to the fact that such actions will induce infringement.  The

17   foregoing actions by Boston Scientific will constitute induced infringement of one or more claims

18   of the '357 patent in violation of 35 U.S.C. § 271(b) and (f)(1).

19        126.    An actual and justiciable controversy exists between Nevro and Boston Scientific

20   regarding infringement of the '357 patent.  The '357 patent is in the same patent family as the

21   '102 patent.  Boston Scientific has already unsuccessfully challenged the validity of sixteen

22   claims of Nevro's '102 patent covering Nevro's high frequency paresthesia-free SCS system by

23   filing two IPR petitions with the PTO.  Although both petitions were denied by the PTO, Boston

24   Scientific publicly announced at the December 2015 Piper Jaffray Health Conference that it

25   intended to press forward nonetheless, and has continued with the ACCELERATE study and with

26   manufacturing and/or selling infringing paresthesia-free devices.  Boston Scientific is also

27   formally opposing Nevro's European patents in Europe.

28

127.    Boston Scientific's imminent infringement will be without the consent or other authority of Nevro.  Boston Scientific is not licensed under the '357 patent.

128.    Nevro is entitled to a declaratory judgment that Boston Scientific's future commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS systems does and will infringe the '357 patent, directly and indirectly.

129.    Boston Scientific has actual and constructive notice of the '357 patent.  Boston Scientific's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

130.    Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet unknown.  Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston Scientific's imminent infringement will cause Nevro substantial and irreparable harm.  Under 35 U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of the '357 patent.

## TENTH CAUSE OF ACTION

(Declaratory Judgment of Infringement of U.S. Patent No. 8,792,988)

131.    Nevro incorporates by reference the allegations contained in paragraphs 1-130 above.

132.    Nevro is the owner of all right, title, and interest in and to U.S. Patent No. 8,792,988 (the '988 patent).  The '988 patent issued on July 29, 2014, and is entitled "Selective High Frequency Spinal Cord Modulation for Inhibiting Pain with Reduced Side Effects, and Associated Systems and Methods."  A copy of the '988 patent is attached as Exhibit F.

133.    The claims of the '988 patent cover methods for programming devices to treat patients with SCS without creating paresthesia.  For example, claim 23 of the '988 patent is directed to a method for programming a signal generator to generate and deliver therapy signals at a frequency between 1.5 kHz and 100 kHz and at an amplitude that at least partially reduces the patient's sensation of pain without inducing paresthesia in the patient.

134.    Boston Scientific does engage, and will engage, in the commercial manufacture, use, offer for sale, sale, and/or importation of SCS systems that have a signal generator that can

be programmed to generate and deliver therapy signals at a frequency between 1.5 kHz and 100 kHz and at an amplitude that at least partially reduces the patient's sensation of pain without inducing paresthesia in the patient.  In the SCS industry, the clinical engineers and/or sales representatives of the device manufacturer normally are present in the operating room and will program the SCS device for the operation, including by setting the parameters for the frequency, amplitude and pulse width of the electronic signal to be delivered by the device.  The foregoing actions by Boston Scientific will constitute direct infringement of one or more claims of the '988 patent, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271.

135.   Boston Scientific has engaged in substantial preparation and taken concrete steps with the intent to conduct these infringing activities.  As discussed in more detail above, Boston Scientific is already manufacturing SCS systems designed to perform at frequencies of up to 10,000 Hz in the United States for commercial sale in Europe.  Nevro believes that FDA approval and commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS systems in the United States is imminent, and it appears that Boston Scientific is already manufacturing devices for sale in the United States that are designed to perform at frequencies of up to 10,000 Hz.  As such, Nevro believes that Boston Scientific will immediately begin directly infringing the '988 patent upon receiving FDA approval.

136.   In addition to directly infringing, Nevro believes that upon FDA approval and commercial launch of Boston Scientific's infringing paresthesia-free high frequency SCS systems, Boston Scientific will induce infringement of the '988 patent by inducing others to directly infringe the '988 patent, literally or under the doctrine of equivalents.

137.   Boston Scientific knows of or is willfully blind to the existence of the '988 patent. Nevro believes that Boston Scientific has intentionally made substantial preparation to and will instruct others, including doctors and health care providers, to use its high frequency SCS in a manner that infringes the '988 patent.  In the SCS industry, the clinical engineers and/or sales representatives of the device manufacturer normally are present in the operating room and will program the SCS device for the operation, including by setting the parameters for the frequency, amplitude and pulse width of the electronic signal to be delivered by the device.  Boston

1    Scientific knows or is willfully blind to the fact that such actions will induce infringement.  The

2    foregoing actions by Boston Scientific will constitute induced infringement of one or more claims

3    of the '988 patent in violation of 35 U.S.C. § 271(b) and (f)(1).  Nevro expects that, after a

4    reasonable opportunity to take discovery, the allegations of this paragraph will have additional

5    evidentiary support.

6         138.    An actual and justiciable controversy exists between Nevro and Boston Scientific

7    regarding infringement of the '988 patent.  The '988 patent is in the same patent family as the

8    '102 patent.  Boston Scientific has already unsuccessfully challenged the validity of sixteen

9    claims of Nevro's '102 patent covering Nevro's high frequency paresthesia-free SCS system by

10   filing two IPR petitions with the Patent and Trademark Office.  Although both petitions were

11   denied by the PTO, Boston Scientific announced at the December 2015 Piper Jaffray Health

12   conference that it intended to press forward nonetheless, and has continued with the

13   ACCELERATE study and with manufacturing and/or selling infringing 10,000 Hz-capable

14   devices nonetheless.  Boston Scientific is also formally opposing Nevro's European patents in

15   Europe.

16        139.    Boston Scientific's imminent infringement will be without the consent or other

17   authority of Nevro.  Boston Scientific is not licensed under the '988 patent.

18        140.    Nevro is entitled to a declaratory judgment that Boston Scientific's future

19   commercial manufacture, use, offer for sale, sale, and/or importation of high frequency SCS

20   systems does and will infringe the '988 patent, directly and indirectly.

21        141.    Boston Scientific has actual notice of the '988 patent.  Boston Scientific's actions

22   are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

23        Nevro has been and will be damaged by Boston Scientific's acts in an amount as yet

24   unknown.  Nevro has no adequate legal remedy.  Unless enjoined by this Court, Boston

25   Scientific's imminent infringement will cause Nevro substantial and irreparable harm.  Under 35

26   U.S.C. § 283, Nevro is entitled to an injunction barring Boston Scientific from infringement of

27   the '988 patent.

28

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Nevro prays for relief as follows:

3      1.  A judgment that Boston Scientific has infringed one or more claims of the '533,

4      '125, '102, '842, '357, and '988 patents;

5      2.  A judgment and a declaration that making, using, selling, offering for sale, or

6      importing Boston Scientific's high frequency SCS systems and devices infringes

7      one or more claims of the '533, '125, '102, '842, '357, and '988 patents, directly

8      and indirectly;

9      3.  An order and judgment temporarily, preliminarily and permanently enjoining

10      Boston Scientific and its officers, directors, agents, servants, employees, and all

11      others acting in privity or in concert with them, and their parents, subsidiaries,

12      divisions, successors and assigns, from further acts of infringement of the '533,

13      '125, '102, '842, '357, and '988 patents;

14      4.  A judgment awarding Nevro all damages suffered by Nevro for Boston Scientific's

15      unlawful conduct, and in no event less than a reasonable royalty for Boston

16      Scientific's acts of infringement, including all pre-judgment and post-judgment

17      interest at the maximum rate permitted by law;

18      5.  A judgment trebling any damages pursuant to 35 U.S.C. § 284;

19      6.  Costs of suit and reasonable attorneys' fees; and

20      7.  Any other remedy to which Nevro may be entitled.

21

**DEMAND FOR JURY TRIAL**

22

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6, Nevro

23

demands a trial by jury on all issues so triable in this action.

24

25

26

27

28

1

Dated: November 28, 2016                    MORRISON & FOERSTER LLP

2

3                                           By:    /s/ Michael A. Jacobs
                                                  Michael A. Jacobs
4
                                            Attorneys for Plaintiff
5                                           NEVRO CORP.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28