UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVRO CORP,<br>　　　　　Plaintiff,<br>　　v.<br>BOSTON SCIENTIFIC CORPORATION, et al.,<br>　　　　　Defendants. | Case No. 16-cv-06830-VC (MEJ)<br>**DISCOVERY ORDER**<br>Re: Dkt. No. 91 |

## INTRODUCTION

Plaintiff Nevro Corp. ("Nevro") and Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (together, "BSC") filed a Joint Letter concerning Nevro's ability to disclose certain confidential information to its in house counsel and Nevro's request that BSC supplement certain records. Jt. Ltr., Dkt. No. 91. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

This patent infringement action concerns Nevro's spinal cord stimulation ("SCS") therapy, used to treat chronic pain. *See* Compl., Dkt. No. 1. "Traditional SCS therapy delivers 'low frequency' electrical pulse waveforms . . . to generate a sensation known as paresthesia." *Id.* ¶ 3. Paresthesia, which is experienced as a tingling, numbness, buzzing, or pins-and-needles sensation, masks the patient's pain. *Id.*

Nevro alleges it developed and patented the Senza system, "an SCS therapy that differs dramatically from traditional SCS therapy": by using a "high frequency" electrical waveform, Nevro's SCS therapy provides pain relief without generating paresthesia. *Id.* ¶ 5; *see id.* ¶ 19. On May 8, 2015, the U.S. Food and Drug Administration ("FDA") approved Nevro's Senza system

for sale in the United States. *Id.* ¶¶ 7, 22.

Nevro contends BSC "is now aggressively trying to mimic Nevro's SCS therapy" and initiated a clinical trial that uses SCS devices that operate at the same electrical frequency as Nevro's SCS system, and that BSC's devices infringe Nevro's patents. *Id.* ¶ 8; *see id.* ¶¶ 30-31. Nevro further alleges BSC manufactures and/or sells these infringing in the United States, the United Kingdom, and the Netherlands. *Id.* ¶¶ 40, 43. Nevro asserts six claims for patent infringement and six declaratory judgment claims for infringement of those patents. *Id.* ¶¶ 52-141.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting

2

disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

### A. Disclosures to In House Counsel

Courts may not deny access to confidential information solely on the basis of counsel's in-house or retained status. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984). "Denial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id.* at 1468. Rather, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *Id.* Denial of access may be appropriate in some instances; for example, "where in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed." *Id.*

Nevro seeks to disclose a "specific high level summary" of information that BSC designated as "Confidential – Attorneys' Eyes Only" to Peter Socarras, Nevro's Senior Director of Intellectual Property. Jt. Ltr. at 3. Socarras is presumably involved with Nevro's competitive decision-making. *See id.* at 3 ("Nevro has five in-house counsel. . . . It does not have counsel who can run this suit who is not involved in competitive decision-making."). Nevro argues Socarras needs this information so Nevro can make strategic decisions about this lawsuit. *Id.* at 1. BSC disputes the necessity of this disclosure and argues "Socarras is . . . the type of employee that these [protective order] protections seek to exclude from access." *Id.* at 4.

In *Brown Bag Software v. Symantec Corp.*, the Ninth Circuit reviewed a protective order that shielded the plaintiff's in-house counsel from viewing documents that contained the defendant's trade secrets, but allowed an independent consultant access to them to advise the plaintiff as to the documents' relevancy. 960 F.2d 1465, 1469-72 (9th Cir. 1992). The *Brown Bag* Court noted that "proper review of protective orders in cases such as this requires the district court

to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained." *Id.* at 1470. The Ninth Circuit found the district court did just that: it issued the protective order after conducting "a comprehensive evidentiary hearing." *Id.* at 1470. At the hearing, the district court heard testimony regarding both parties' interest in the confidential information. *Id.* at 1470-71. The district court also questioned the plaintiff's in-house counsel about his responsibilities. *Id.* at 1471. In house counsel testified that "he was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment." *Id.* The district court thus "reasonably concluded that [in-house] counsel's employment would necessarily entail advising his employer in areas relating to [the defendant's] trade secrets." *Id.* This "would place in-house counsel in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [the defendant's] trade secrets." *Id.* After weighing the hardship a protective order may have on the plaintiff's prosecutions of its claims, the district court issued a protective order that the Ninth Circuit held "str[uck] a reasonable balance between those interests by shielding [the plaintiff's] in-house counsel from personal knowledge of a competitor's trade secrets, but allowing access to information through an independent consultant." *Id.* "The order did not arbitrarily distinguish [between] outside and in-house counsel. Rather, in reaching its decision, the court considered the particular circumstances of [the plaintiff's] counsel then before it. The same considerations could have applied equally to outside counsel." *Id.*

At this point, the undersigned has little information about Socarras, other than his title and the fact that he "oversees this litigation." Jt. Ltr. at 2-3. Nevro does not describe Socarras' responsibilities or duties or indicate to what degree he is involved in competitive decision-making. Without such information, the undersigned cannot undertake the requisite factual inquiry to balance the risk of inadvertent disclosure of BSC's confidential information to competitors against Nevro's ability to make litigation decisions. *See Brown Bag*, 960 F.2d at 1470 ("[W]e must balance the risk [the defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [the plaintiff] that protection of [the defendant's] trade secrets impaired prosecution of [the

4

plaintiff's] claims."); *U.S. Steel*, 730 F.2d at 1468 ("Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained.").

As such, the Court **ORDERS** Nevro to file a declaration detailing Socarras' responsibilities as Nevro's in house counsel, including but not limited to, the extent of his involvement in the competitive decision-making process. Nevro shall file its declaration no later than **June 14, 2017**. BSC may respond to the declaration in no more than two pages by **June 21, 2017**.

**B.  Supplementation**

Nevro seeks an order requiring BSC to provide certain ongoing supplementation. Jt. Ltr. at 3. It is undisputed that BSC has agreed to do so, and BSC represents it has already complied. *Id.* at 3-4. Nevro nonetheless requests "an order that will state BSC's obligations precisely so that there will be no dispute." *Id.* at 3. BSC does not explain why it refuses to sign a stipulation. *See id.* at 3-5.

There is no indication Nevro is dissatisfied with BSC's supplementation thus far, nor does Nevro provide a reason to believe BSC will not continue to abide by its agreement. Because there appears to be no present controversy or dispute, the Court **DENIES** Nevro's request for an order regarding supplementation. If a dispute arises, the parties may raise it at that time and in accordance with the Court's Standing Order re: Discovery.

**IT IS SO ORDERED.**

Dated: May 31, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge