MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KENNETH A. KUWAYTI (CA SBN 145384)
KKuwayti@mofo.com
ERIC C. PAI (CA SBN 247604)
EPai@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0794

Attorneys for Plaintiff
NEVRO CORP.

KRISTA M. CARTER (SBN 225229)
krista.carter@apks.com
THOMAS T. CARMACK (SBN 229324)
tom.carmack@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700

MATTHEW M. WOLF (admitted pro hac vice)
matthew.wolf@apks.com
EDWARD HAN (admitted pro hac vice)
edward.han@apks.com
MARC A. COHN (admitted pro hac vice)
marc.cohn@apks.com
WILLIAM L. LOUDEN (admitted pro hac vice)
william.louden@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC
NEUROMODULATION CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEVRO CORP.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>Defendants. | Case No.   3:16-cv-06830-VC-MEJ<br><br>**COVER PAGE TO JOINT DISCOVERY DISPUTE LETTER REGARDING ESI ORDER** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Pursuant to Discovery Standing Order for Magistrate Judge Maria-Elena James (Dkt. No. 96-1), Plaintiff Nevro Corp. and Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation, hereby attest that they have met and conferred in person in a good faith manner in an attempt to resolve their dispute but reached an impasse in their negotiations over a stipulated e-discovery order that would limit the number of custodians and search terms to be applied to email discovery, prior to filing the attached joint letter.

Dated: June 16, 2017           MORRISON & FOERSTER LLP

                               By:  /s/ Kenneth A. Kuwayti
                                    Kenneth A. Kuwayti

                               Attorneys for Plaintiff
                               NEVRO CORP.

Dated: June 16, 2017           ARNOLD & PORTER KAYE SCHOLER LLP

                               By:  /s/ Krista M. Carter
                                    Krista M. Carter

                               Attorneys for Defendants

**FILING ATTESTATION**

I, Kenneth A. Kuwayti, am the ECF user whose user ID and password are being used to file this document.  Pursuant to Civil Local Rule 5-1(i)(3), I attest that the above signatories have concurred in the filing of this document.

                               MORRISON & FOERSTER LLP

                               By:  /s/ Kenneth A. Kuwayti
                                    Kenneth A. Kuwayti

                               Attorneys for Plaintiff
                               NEVRO CORP.

**MORRISON | FOERSTER**

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

June 16, 2017

**CONTAINS BSC AEO**

Writer's Direct Contact
+1 (650) 813.5688
KKuwayti@mofo.com

The Honorable Maria-Elena James, U.S. Magistrate Judge
San Francisco Courthouse, Courtroom B - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Nevro Corp. v. Boston Scientific Corp. et al.*, Case No. 3:16-cv-06830

Dear Judge James:

## I.   JOINT STATEMENT RE DISPUTE OVER ESI ORDER

Nevro and BSC met and conferred for months, and in person, and have reached an impasse over a stipulated ESI order governing the number of custodians and search terms for email discovery. Nevro proposes 13 custodians and 10 search terms per custodian, while BSC proposes 7 custodians and 7 search terms per custodian. The parties agree on the rest of the order's terms.

## II.   NEVRO'S POSITION

BSC's emails are critical in this case. Nevro's proposal of 13 custodians and 10 search terms per custodian (a compromise from 15 custodians/15 terms) is more than justified by this action's high stakes, the number and complexity of issues, the unique importance of BSC's email to those issues, BSC's exclusive access to its email, and BSC's vast size. Fed. R. Civ. P. 26(b)(1).

The ESI Guidelines state that Rule 26(b)(1)'s proportionality standard, and the above factors apply to ESI production. (ESI Guidelines ¶ 1.03.) BSC heavily relies on the Model Patent ESI Order's default limits, but the Model Order is voluntary. *Banas v. Volcano Corp.*, 2013 WL5513246, at *2, (N.D. Cal. Oct. 4, 2013) ("Model Order is not required, but it is instructive."). Even if the parties agree to it, "[t]he Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case." ( *Id.* at ¶ 10). ESI limits are not applied in a "mechanical" way, but must match the case's discovery needs. *Vasudevan Software, Inc. v. MicroStrategy Inc*., 2012 WL5637611, at *1 (N.D. Cal. Nov. 15, 2012) (allowing 10 custodians and 25 search terms). In, *DCG Sys. v. Checkpoint Techs, LLC*, the defendant *stipulated* to increase the default custodian and term limits. 2011 WL 5244356, at *1-2 (N.D. Cal. Nov. 2, 2011).

**High stakes of this litigation**. Nevro was founded in 2006 to develop a novel, high frequency spinal cord stimulation ("SCS") system for treating chronic pain. In 2015, the FDA approved Nevro's Senza® system with a rare "superiority" labeling— after a head-to-head study with BSC found it was nearly twice as effective as BSC's conventional therapy. After learning of Nevro's success, BSC began copying Nevro's technology and planning to launch a competing high frequency system. Nevro will be irreparably harmed if BSC is permitted to market an infringing device. Nevro's unique, patented technology has been the key to breaking into the SCS market, which for years was dominated by three of the world's largest medical device companies— including BSC. The Senza system is Nevro's only product. This action is critical to its business.

**This case involves many complex issues, and BSC's emails are highly relevant**. Last time Nevro moved to compel, BSC also disparaged Nevro's claims, claiming there was nothing to discover. (ECF No. 63). The Court granted the motion, revealing BSC concealed an infringing

June 16, 2017
Page Two

product and infringing conduct. (ECF No. 113-4 at 2-8.) Its defense here is similarly meritless.

***Actual and Anticipated Infringement.*** Nevro asserts direct and induced infringement of seven patents by multiple BSC devices, including Precision SCS System with MultiWave, Precision Montage, Precision Novi, and ██████████████████████ Spectra WaveWriter. ████████████████████████████████████████████████████████████████████████████████████████████████████ BSC's initial disclosures identify four additional individuals, and this list did not even include BSC's 30(b)(6) designee, Rafael Carbunaru, BSC's head of R&D for SCS or the multiple engineers he consulted to prepare for his deposition. Their emails may confirm a deliberate decision by BSC to allow its representatives to induce infringement by setting high frequency parameters. ██████████████████████████████████████████████████ (*Id*. at 32:14-33:14.)

Nevro's complaint asserts actual infringement and DJ claims based on the anticipated launch of BSC devices. BSC moved to dismiss the DJ claims arguing there is no immediate or real controversy. (ECF No. 52 at 2.) (BSC withdrew that motion (ECF No. 98), but states it plans to refile against Nevro's amended complaint.) Yet BSC sales representatives have been telling U.S. physicians that BSC will soon be releasing a high frequency SCS device. Nevro has identified *five* such custodians to BSC, and has since heard reports of *two* more. Any written communications from the representatives will be by email. Nevro needs e-mails to combat BSC's contention that the DJ claims are not ripe, to support its injunctive relief request, and to show that BSC made infringing offers for sale. Internal emails relating to product readiness and launch plans are also key. BSC documents show that ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ (*See* ECF No. 89-4 at 1). ██████████████████████████████ (*Id.* at 2). ████████████████████████████████████████ *Id.*).

***Copying.*** Copying is relevant to willfulness, inducement, and secondary considerations of nonobviousness. Conventional SCS therapy operates at 40-50 Hz. BSC copied Nevro by initiating clinical trials of a 10,000 Hz device—the same frequency as Senza. But BSC claims below that Nevro has no evidence of copying, and its VP of Clinical and Regulatory Affairs claimed not to recall if BSC had contemplated such a trial before learning of Nevro's device. (Ex. A at 204:17-209:11.) Emails are the documents most likely to confirm deliberate copying.

***Other Willfulness Issues.*** BSC's emails are relevant to other willfulness issues as well. BSC has yet to answer directly Nevro's interrogatory asking when BSC first became aware of the patents-in-suit. BSC admits that it learned about Nevro's patent *portfolio* by at least December 2013, but asserts privilege over the details. During meet and confer, BSC stated there were no non-email documents relating to this issue—and this is precisely why Nevro needs its e-mails on this issue.

Nevro further expects BSC's marketing personnel will have e-mails that confirm BSC's desire to thwart Nevro's success in the marketplace. ████████████████████████████████████████ ████████████████████ James Cassidy, BSC's VP of marketing and 30(b)(6) designee, ██████████ ██████████████████████████████, tried to discount the document. (Ex. B at 35:21-24; 161:16-166:10.) Nevro expects BSC's e-mails will more openly discuss these issues. To prepare for his deposition, Mr. Cassidy spoke to ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

June 16, 2017
Page Three

████████████ ( *Id*. at 17:25-28:1.) ████████████
████████████████████████████ (Ex. A at 26:20-27:8.) He identified ███████████████████████████████████████████████████
(Ex. B at 37:19-39:1.) The teams' e-mails on Nevro, the advantages of its high frequency therapy, and physician demand go directly to willfulness, damages and nonobviousness.

*Secondary Considerations.* BSC claims Nevro's patent claims are obvious. (ECF No. 32 at 12.) Nevro's technology fundamentally changed the nature of SCS treatment and was met with great industry skepticism, including by BSC. Secondary considerations of non-obviousness, including commercial success of the invention, a long-felt but unresolved need, failure of others, skepticism, praise or copying, and industry acceptance, are thus particularly relevant to this case. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc*., 229 F.3d 1120, 1129 (Fed. Cir. 2000). Nevro expects BSC's e-mails (including from Dr. Carbunaru and Mr. Cassidy) will show that skepticism and how it changed to a desire to copy after Nevro's success.

*Damages.* Nevro seeks lost profits, reasonable royalties, and injunctive relief. This requires an examination of the benefits of, and market demand for, the patented technology. BSC's email is expected to contain candid evidence of BSC's acknowledgement of the benefits of Nevro's technology and its reasons for copying, including market demand. These will include emails discussing Nevro's superior performance to BSC in the FDA study—where BSC representatives programmed the BSC devices—as well as emails discussing Nevro's commercial performance.

**BSC has exclusive control of its email**. Nevro has no other way to get this evidence.

**BSC is a large company with extensive resources**. BSC made over $8 billion in revenues last year and has over 27,000 employees, with ████████████████████████████████ It is a frequent and sophisticated litigant but only offers vague claims of burden. Even with 13 custodians, Nevro can obtain only a fraction of the relevant employees' emails.

BSC's proposed ESI limits would unfairly prejudice Nevro. In comparison, in the patent case BSC filed against Nevro in Delaware two weeks after this one, Nevro agreed to BSC's request for 10 custodians and 10 *additional* search terms per custodian beyond those proposed by the searching party, adopting Delaware's default limits. Nevro asks that the Court adopt its compromise, with the ability to seek additional custodians/terms based on a showing of need.

### III. BOSTON SCIENTIFIC'S POSITION

Nevro fails to justify any departure from the number of custodians and search terms contemplated by the Model Order. The Model Order was born out of a recognition that discovery of ESI "can be extremely expensive and burdensome." *Banas v. Volcano Corp.*, 2013 WL 5513246, at *2. By the Model Order's own terms, default ESI limits should only be modified upon a showing of "*distinct* need based on the size, complexity, and issues of th[e] specific case." Model Order ¶¶ 10-11 (emphasis added). Numerous cases from this District considering the application of similar ESI model orders have explained that the default rules are designed to balance the burden against its potential benefit. *See, e.g.*, *Northrop Grumman Corp. v. Factory Mutual Ins. Co.*, 2012 WL 12875772, at *2 (N.D. Cal. Aug. 29, 2012) (noting that the Federal Circuit's former Model Order Regarding E-Discovery in Patent Cases was "'designed to address the imbalance of benefit and burden resulting from email production'") (quoting *DCG Systems, Inc. v. Checkpoint Techs., LLC*, 2011 WL 5244356, at *2 (N.D. Cal. Nov. 2, 2011)).

Nevro's request for 13 custodians/10 terms would effectively expand the scope of ESI discovery *by more than a factor of five* over the default of 5 custodians/5 terms (5 x 5 = 25 vs. 13 x 10

June 16, 2017
Page Four

=130). In addition to the search itself, this would result in a huge—and undue—increase in burden in terms of BSC's review and production. Yet Nevro fails to explain how the information it believes exists cannot be obtained more easily through less burdensome discovery, or that this information is not merely duplicative of the discovery it is already receiving. BSC respectfully submits that this Court should not depart from the default limits set forth in the Model Order based on what amounts to pure speculation on Nevro's part.

**There is no record basis to suggest that the default standard is insufficient**. At this juncture, Nevro cannot demonstrate that the default provisions are likely to be insufficient. The Court should not rush to grant Nevro's premature request absent demonstrated need. *See Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *5 (declining to resolve a dispute over ESI search terms without having first tested the search terms to see what results they yielded). In its rush to ask for more email discovery, Nevro all but ignores the substantial non-email discovery it already has and that is in process. ESI discovery is only one means of obtaining discoverable information, and conventional discovery is highly likely to be sufficient to resolve the issues Nevro raises. Nevro's speculation does not establish a "***distinct*** need."

Infringement:  Nevro's claim to need emails to prove infringement strains credulity. It is well established that infringement requires comparing the accused products to the asserted patent claims. This is accomplished through examination of the product itself, and comparing related technical documentation to the asserted claim limitations. Email is highly unlikely to be relevant to answering this question.[1] Furthermore, as Nevro admits, BSC has already responded to direct queries regarding its plans to launch new products via verified interrogatory responses and non-email documents. Searching through the emails of BSC's sales team will shed no further light on the company's actual plans.[2] BSC disputes Nevro's claim that there is any suggestion of an "immediate or real controversy" with respect to products that have not even been launched yet.[3] In support of this claim Nevro relies on a cherry-picked selection of outdated internal plans from various points in time. Not only has BSC set forth its current launch plans via verified interrogatory responses, but its 30(b)(6) witnesses have already confirmed those responses.

Willfulness:  Nevro's willfulness claim centers on alleged copying and an alleged nebulous "desire to thwart Nevro's success in the marketplace." Nevro offers nothing that suggests BSC copied its patent technology, or any reason to believe email would shed light on this subject. The most Nevro can muster is that that BSC's VP of Clinical and Regulatory Affairs could not recall precisely when BSC's R&D department (of which she is not a member) first contemplated creating a high-frequency SCS product. Nevro's speculation is just that—speculation. Nevro's hope to find email about improper competitive practices is just as speculative. Nevro has failed to even suggest what kind of harm it has supposedly suffered by alleged improper practices. Its desire for emails relating to willfulness stems from the fact that it has found nothing so far, rather than any suggestion that emails would be particularly relevant.

---

[1] Assuming *arguendo* that emails could provide unique information relevant to infringement, Nevro fails to even assert that the individuals it identified would have non-duplicative information in their emails such that ESI discovery from just one of them would not suffice.

[2] Nevro argues that it has identified seven sales representatives who have allegedly told U.S. physicians that BSC plans to release a high-frequency SCS product. However, despite numerous requests from BSC, Nevro has been unable to provide any details or evidence in support.

[3] BSC also disputes the other unsupported allegations Nevro improperly asserts as facts, including its mischaracterization of prior discovery disputes and alleged infringement.

June 16, 2017
Page Five

Secondary considerations:  It is the patent holder that is likely to have evidence, if any, of secondary considerations.  Any evidence of commercial success is already within Nevro's possession.  Issues such as long-felt need and "industry skepticism" are focused on the industry at large, not BSC's employee email correspondence.  It is thus not surprising that Nevro cannot even identify a single BSC custodian who might have supposedly relevant emails on this topic.

Damages:  Email is rarely prominent in a damages expert report or trial testimony for the simple reason that damages center on financial data and documents regarding market demand and the *Panduit* and/or *Georgia-Pacific* factors.  Nevro fails to explain how information it speculates might exist in email could not be more easily obtained through other, less burdensome discovery.

Mere speculation by Nevro that some categories of documents are more likely to exist in employee email than non-email sources does not establish a "distinct need" or otherwise justify departing from the Model Order's default ESI limits for the number or custodians or search terms.  Moreover, Nevro's ability to identify more than 5 potential custodians is meaningless by itself.  It is conceivable in any patent case that a significant portion of a company's employees may have relevant information, yet the default is 5 custodians.

**This is not an unusually complicated case**.  Nevro argues that this is a particularly complicated case and that it therefore has a higher-than-usual need for ESI discovery.  Not so.[4]  There are no counterclaims and no non-patent clams at issue.  The Model Order is designed *for patent cases*, and the issues identified by Nevro—such as willfulness, secondary considerations, and damages—are issues in nearly every single patent litigation and do not warrant a departure from the Model Order.  *See DCG Systems, Inc. v. Checkpoint Techs., LLC*, 2011 WL 5244356, at *2 (explaining that willfulness and copying were routine issues in patent litigation).

**Nevro offers no authority to support departure from the Model Order**.  Nevro cites only one case involving this Court's Model Order, *Banas v. Volcano Corp.*, which did not address an *ex ante* dispute over the appropriate number of ESI custodians or search terms at all and thus provides no support for Nevro's request.  In the only other authority Nevro cites, *Vasudevan Software, Inc. v. Microstrategy Inc.*, the court was not applying the Model Order at all, but instead the Federal Circuit's former Model Order Regarding E-Discovery in Patent Cases.  In that case, the court's case management scheduling order provided that the Federal Circuit's default standard would be modified to increase the limits on ESI discovery, but the order offers no explanation for that departure.  2012 WL 5637611, at *1.

**BSC has consistently asked for the default ESI standard**.  Contrary to Nevro's assertion, BSC's position on ESI discovery is consistent between this litigation and the Delaware litigation.  In both cases, BSC believes that there is no present need to depart from the Court's default standard on the scope of ESI discovery.  That the default scope of ESI discovery in the Northern District of California is narrower than it is in the District of Delaware is something Nevro and its sophisticated counsel surely appreciated when they chose to file Nevro's claims in this forum.

While BSC does not believe a departure from the Model Order is warranted, BSC offers as a compromise to increase the default scope of ESI discovery to 7 custodians and 7 search terms, effectively doubling the scope of ESI discovery.

---

[4] Nor is this a David v. Goliath story.  Nevro's market cap is over $2 billion.  In any event, the relative resources of the parties are irrelevant since Nevro's request is not justified.  Moreover, the Court should reject Nevro's attempt to shift the burden to BSC to prove undue burden before Nevro has established the requisite distinct need for ESI discovery beyond the default limits.

la-1352215

June 16, 2017
Page Six

Respectfully submitted,

| MORRISON & FOERSTER LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
|---|---|
| /s/ Kenneth A. Kuwayti | /s/ Krista M. Carter |
| Kenneth A. Kuwayti | Krista M. Carter |
| Attorneys For Plaintiff Nevro Corp. | Attorneys for Defendants |

## ECF ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated:  June 16, 2017

      /s/ Kenneth A. Kuwayti
      Kenneth A. Kuwayti

la-1352215