UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVRO CORP,<br>    Plaintiff,<br>v.<br>BOSTON SCIENTIFIC CORPORATION, et al.,<br>    Defendants. | Case No. 16-cv-06830-VC (MEJ)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 134 |

## INTRODUCTION

This patent action concerns Plaintiff Nevro Corp.'s ("Nevro") Senza system, a spinal cord stimulation ("SCS") system for treating chronic pain. Nevro and Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (together, "BSC") have filed a Joint Letter regarding their dispute over a stipulated e-discovery order. Jt. Ltr., Dkt. No. 134. Nevro also seeks to file under seal portions of the Joint Letter and exhibits attached thereto. Mot., Dkt. No. 132. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## MOTION TO FILE UNDER SEAL

**A. Legal Standard**

There is a "strong presumption in favor of access" by the public to judicial records and documents accompanying dispositive motions. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). To overcome this presumption, a "party must articulate compelling reasons supported by specific fact[s]." *Id.* at 1178 (internal quotation and citation omitted); *see also Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013) (finding sealing

appropriate where companies "filed declarations from employees" that "explained the measures the two companies take to keep their product-specific financial information confidential" and "the harm they would suffer if their product-specific financial information were made public").

However, Rule 26(c)'s lesser "good cause" standard applies to documents submitted in connection with non-dispositive motions, including "private materials unearthed during discovery, as such documents are not part of the judicial record." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (internal quotation marks omitted); *see In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) ("[A] particularized showing of 'good cause' under Federal Rule of Civil Procedure 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions.").

**B.     Discussion**

Nevro seeks to seal portions of the Joint Letter and the Adair and Cassidy depositions that refer to material BSC designated as "Confidential" and "Highly Confidential – Attorneys' Eyes Only." Mot. at 1; Hwang Decl. ¶¶ 2-4; Dkt. No. 132-1; *see* Jt. Ltr.; *id.*, Ex A (Adair Dep.) & Ex. B (Cassidy Dep.). In support, BSC submits the Declarations of Rafael Carbunaru and Thomas Carmack. Carbunaru Decl., Dkt. No. 138; Carmack Decl., Dkt. No. 138-1.

Carbunaru, Vice President of Research and Development for Defendant Boston Scientific Neuromodulation Corporation, declares that the documents contain "extremely sensitive information" including "research and development plans and activities that may or may not result in a commercial product, or . . . a product commercially manufactured and sold in the U.S." which BSC consider to be trade secrets. Carbunaru Decl. ¶ 3; *see* Carmack Decl. ¶ 9. Carbunaru contends that if this information were to be made public, among other things, it could place "BSC . . . at a significant competitive disadvantage with respect to Nevro and other competitors because it would divulge the timing of certain planned commercial activities that could unfairly allow the competitor to alter their own regulatory and commercial plans in advance in order to unfairly compete with BSC in the marketplace"; "could improperly inform its competitors' research and development plans (months or years before potential commercialization) as well as their patent prosecution strategy"; and could allow competitors to "design products to compete with these

2

future products by copying their specifications or designing improvements on [BSC's product] specifications." Carbunaru Decl. ¶¶ 4-5.

In addition, Carmack, counsel for BSC, declares that "information relating to the levels of staffing and resources that BSC has . . . could be used by competitors in their strategic planning and resource allocation to unfairly compete with BSC." Carmack Decl. ¶ 11.

BSC argues the following portions of the Joint Letter and the Adair and Cassidy Depositions are sealable and identifies the particular types of confidential information to which they relate as follows:

| | **Material** | **BSC's Reasoning** |
|---|---|---|
| **Joint Letter** | • Page 2, starting after "Precision Novi, and" to before "Spectra WaveWriter"<br>• Page 2, starting after "documents show that" to before "(*See* ECF No. 89-4 at 1)"<br>• Page 2, starting after "(*See* ECF No. 89-4 at 1)." to before "(*Id.* at 2)"<br>• Page 2, starting after "(*Id.* at 2)" to before "(*Id.*)"<br>• Page 2, starting after "marketplace." to before "James" | This information concerns the "[n]umber of products BSC has in development; technical capabilities of BSC's products in development; commercial launch plans." Carbunaru Decl. at 3. |
| | • Page 2, starting after "Spectra WaveWriter" to "BSC's initial disclosures"<br>• Page 2, starting after "frequency parameters" to "(*Id.* at 32:14-33:14.)"<br>• Page 2, starting after "designee" to before "tried"<br>• Page 2, starting after "spoke to" to page 3, before "(*Id.* at 17:25-28:1.)"<br>• Page 3, starting after "(*Id.* at 17:25-28:1.)" to before "(Ex. A at 26:20-27:8.)"<br>• Page 3, starting after "identified" to before "(Ex. B at 37:19-39:1.)"<br>• Page 3, starting after "employees, with" to before "It is a" | The information concerns "BSC's resources and staffing levels for products in development." Carbunaru Decl. at 4. |
| **Adair Deposition** | 32:1-25<br>204:1-7<br>205:1-6<br>206:19<br>207:7-11<br>207:17-208:8 | This information concerns the "[n]umber of products BSC has in development; technical capabilities of BSC's products in development; commercial launch plans." Carbunaru Decl. at 3. |

3

|  | 209:19-25 |  |
|---|---|---|
|  | 26:1-28:25<br>29:9-30:15<br>33:1-25<br>206:19. | The information concerns "BSC's resources and staffing levels for products in development." Carbunaru Decl. at 4. |
| **Cassidy Deposition** | 161:1-166:10<br>166:20-25 | This information concerns the "[n]umber of products BSC has in development; technical capabilities of BSC's products in development; commercial launch plans." Carbunaru Decl. at 3. |
|  | 18:2-21:19<br>22:3-4<br>22:9-16<br>25:21-23<br>26:9-28:25<br>35:1-25<br>37:1-39:25 | The information concerns "BSC's resources and staffing levels for products in development." Carbunaru Decl. at 4. |

The Court finds there is good cause to seal the aforementioned portions to the Joint Letter and the Adair and Cassidy depositions, as disclosure could harm BSC's competitive standing. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013). In addition, the request in narrowly tailored to cover only sealable material. *See* Civ. L.R. 79-5(b). Accordingly, the Court GRANTS the Motion to Seal.

## DISCOVERY DISPUTE

### A. Legal Standard

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors

bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

**B.     Discussion**

The parties' dispute concerns the number of custodians and search terms for email discovery. *See* Jt. Ltr. Nevro proposes 13 custodians and 10 search terms per custodian, whereas BSC proposes 7 custodians and 7 search terms per custodian. *Id.*

Paragraph 10 of the Northern District of California's Model Stipulation and Order Re: Discovery of Electronically Stored Information ("ESI") for Patent Litigation ("Model ESI Order") provides that

> Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

The Model ESI Order further provides that "[e]ach requesting party shall limit its email production requests to a total of five search terms per custodian per party" though "[t]he parties may jointly agree to modify this limit without the Court's leave." *Id.* ¶ 11.

BSC argues Nevro fails to show a need to deviate from the Model ESI Order. Jt. Ltr. at 3. Nevro argues emails are "highly relevant" to Nevro's infringement claims, allegations of copying and other willfulness issues, secondary considerations of non-obviousness, and damages. *Id.* at 2-3. Nevro further contends that "BSC's proposed ESI limits would unfairly prejudice Nevro." *Id.* at 3. But as Nevro does not explain why this is so, it has not shown "a distinct need based on the size, complexity, and issues" in this case. Model ESI Order ¶ 10.

At this point, the Court thus will not adopt Nevro's proposition of 13 custodians and 10 search terms per custodian. The Court finds BSC's compromise of 7 custodians and 7 search

5

terms per custodian is appropriate. Although Nevro refers to a number of individuals whose emails may be relevant to its claims,[1] it does not explain how information from additional custodians would not be duplicative, and more importantly, how it would be proportionate to the needs of this case.

Paragraph 11 of the Model ESI Order "encourages the parties to confer on a process to test the efficacy of the search terms." If, after reviewing emails produced by these seven custodians Nevro believes it still lacks relevant information, or discovers information that will allow Nevro to establish the additional information is proportional to the needs of the case, the parties may meet and confer to discuss increasing the number of custodians and/or search terms, the proportionality of the request to the needs of the case, and which "party shall bear all reasonable costs caused by such additional discovery." *See* Model ESI Order ¶ 11.

**IT IS SO ORDERED.**

Dated: June 22, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[1] Nevro identifies or refers to 13 individuals whose "emails may confirm a deliberate decision by BSC to allow its representatives to induce infringement by setting high frequency parameters"; 7 BSC sales representatives who Nevro contend "have been telling U.S. physicians that BSC will soon be releasing a high frequency SCS device"; 2 BSC employees whose emails will show secondary considerations of non-obviousness, including skepticism and "a desire to copy after Nevro's success." Jt. Ltr. at 2-3. Nevro further contends "BSC's marketing personnel will have e-mails that confirm BSC's desire to thwart Nevro's success in the marketplace" that "go directly to willfulness, damages and nonobviousness." *Id.* at 2-3.

6