UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVRO CORP,<br>　　　　Plaintiff,<br>　　v.<br>BOSTON SCIENTIFIC CORPORATION, et al.,<br>　　　　Defendants. | Case No. 16-cv-06830-VC (MEJ)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 91, 142 |

## INTRODUCTION

Plaintiff Nevro Corp. ("Nevro") seeks to disclose to its in house counsel, Peter Socarras, a specific high level summary that concerns information Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (together, "BSC") designated as "Highly Confidential – Attorneys' Eyes Only." *See* Jt. Ltr. at 3, Dkt. No. 91. BSC opposes this disclosure. *Id.* at 3-5. Finding it lacked sufficient information about Socarras, the Court ordered Nevro to file a declaration describing, among other things, Socarras' responsibilities and duties. Disc. Order at 5, Dkt. No. 109. Nevro timely filed the Socarras Declaration. *See* Socarras Decl., Dkt. No. 121. BSC filed a Response to the Socarras Declaration, portions of which it seeks to file under seal. BSC Resp., Dkt. No. 141; Mot. to Seal, Dkt. No. 142. Having considered the parties' positions, the record in this case, and the relevant legal authority, the Court issues the following order.

## MOTION TO FILE UNDER SEAL

**A.　Legal Standard**

There is a "strong presumption in favor of access" by the public to judicial records and documents accompanying dispositive motions. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135

1  (9th Cir. 2003)). To overcome this presumption, a "party must articulate compelling reasons supported by specific fact[s]." *Id.* at 1178 (internal quotation and citation omitted); *see also Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013) (finding sealing appropriate where companies "filed declarations from employees" that "explained the measures the two companies take to keep their product-specific financial information confidential" and "the harm they would suffer if their product-specific financial information were made public").

However, Rule 26(c)'s lesser "good cause" standard applies to documents submitted in connection with non-dispositive motions, including "private materials unearthed during discovery, as such documents are not part of the judicial record." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (internal quotation marks omitted); *see In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) ("[A] particularized showing of 'good cause' under Federal Rule of Civil Procedure 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions.").

## B. Discussion

As BSC seeks to redact portions of a document filed in connection with a discovery letter, the good cause standard applies. BSC seeks to seal the following portions of its Response: (1) page 1, lines 16-25; and (2) page 2, lines 8-16. Mot. at 3. Thomas Carmack, counsel for BSC, declares that this information "contains BSC's trade secrets and confidential information related to the development of new spinal cord stimulation ('SCS') products and services." Carmack Decl. ¶ 2, Dkt. No. 142-2. The undersigned, as well as the Presiding Judge in this matter, previously allowed the parties to seal information concerning the same subject matter. *See* Dkt. Nos. 85, 101. Having reviewed the aforementioned portions of BSC's Response, the undersigned finds good cause exists to seal them, as they are protectable as trade secrets. *See* Civ. L.R. 79-5(a). In addition, the proposed redactions are narrowly tailored to redact only sealable material. *See* Civ. L.R. 79-5(b). The undersigned accordingly GRANTS the Motion to Seal.

## DISCOVERY DISPUTE

## A. Legal Standard

Courts may not deny access to confidential information solely on the basis of counsel's in-

house or retained status. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984). "Denial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id.* at 1468. Rather, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *Id.*; *see In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010) ("It is . . . important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis."). Denial of access may be appropriate in some instances; for example, "where in-house counsel are involved in competitive decisionmaking, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed." *U.S. Steel*, 730 F.2d at 1468.

**B.      Discussion**

This litigation concerns BSC's alleged infringement of Nevro's patented high frequency SCS therapy system. *See* Compl., Dkt. No. 1. Nevro contends it needs to disclose the high level summary in light of BSC's alleged misrepresentations to the Court. Jt. Ltr. at 1.

The Federal Circuit defines "competitive decisionmaking" as "'[s]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).

The degree to which an attorney is involved in patent prosecution may vary. *See Deutsche Bank*, 605 F.3d at 1379. For instance, there may be little risk of inadvertent disclosure where an attorney "ha[s] patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements" or if he or she is "involved in high-altitude oversight of patent prosecution . . . but ha[s] no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios." *Id.* at 1379-80. But other

3

> attorneys involved in litigation are more substantially engaged with prosecution. Such involvement may include obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution.

*Deutsche Bank*, 605 F.3d at 1379. In the latter instance, "competitive decisionmaking may be a regular part of [the attorney's] representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys." *Id.*

Socarras, Nevro's Senior Director of Intellectual Property, admits he is involved in competitive decisionmaking. *See* Socarras Decl. ¶ 1 ("I am involved in competitive decision-making at Nevro[.]"); *see also* Jt. Ltr. at 3 (Nevro "does not have counsel who can run this suit who is not involved in competitive decision-making."). Socarras provides services related to the prosecution of Nevro's patents; is involved in patent enforcement; advises Nevro's executive team about IP portfolio management; and manages Nevro's IP litigation-related matters, which includes evaluating discovery, pleadings, and motions. *Id.* ¶¶ 4-5, 10-11. Moreover, Socarras "evaluat[es] new third party technologies or therapies, and advis[es] Nevro's executive team on business development opportunities." *Id.* ¶ 6; *see Brown Bag*, 960 F.2d at 1470 ("A crucial factor . . . was whether in-house counsel was involved in 'competitive decisionmaking'; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor." (internal quotation marks omitted)).

Based on his Declaration, it appears Socarras' duties at Nevro place him a high risk for the inadvertent disclosure of BSC's confidential information. *See Deutsche Bank*, 605 F.3d at 1380 (where "competitive decisionmaking may be a regular part of [an attorney's] representation, . . . the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys.").

4

1  Socarras' involvement in Nevro's patent litigation is more substantial than dealing with ancillary
2  paperwork or conducting high-level oversight. *See* Socarras Decl. ¶ 10 ("I am primarily
3  responsible for managing IP litigation-related matters at Nevro, including . . . evaluating
4  discovery, pleadings, and motions[.]"); *id.* ¶ 11 ("I am the principal attorney at Nevro who
5  oversees Nevro's two patent litgation actions with Boston Scientific, and in that capacity, I am
6  engaged in all of the activities described in paragraph 4 [of the Socarras Declaration]. I am not
7  assisted by any other attorney at Nevro in performing these tasks, other than Nevro's General
8  Counsel, who has general oversight of all legal matters."). Socarras also "provide[s] services
9  related to the prosecution of Nevro's patents, including overseeing the drafting and filing of
10 various provisional and utility applications[.]" *Id.* ¶ 4. As such, access to BSC's Highly
11 Confidential information would place Socarras "in the 'untenable position' of having to refuse his
12 employer legal advice on a host of contract, employment, and competitive marketing decisions lest
13 he improperly or indirectly reveal [BSC]'s trade secrets." *Brown Bag*, 960 F.2d at 1471.

14 Socarras "feels strongly that Nevro is prejudiced in its decision-making in this litigation if
15 it cannot receive certain basic, high-level information that the company needs to make informed
16 decisions about litigation strategy and to properly evaluate the case." Socarras Decl. ¶ 15.
17 Despite Socarras' strong feelings, Nevro fails to show how it will be prejudiced if Socarras cannot
18 access the summary; in particular, Nevro fails to show any such prejudice outweighs BSC's need
19 for confidentiality and the risk of disclosure. *See Brown Bag*, 960 F.2d at 1471 (weighing risk of
20 disclosure against potential impairment of the plaintiff's case); *Intel Corp. v. VIA Techs., Inc.*, 198
21 F.R.D. 525, 529 (N.D. Cal. 2000) ("The party seeking access must demonstrate that its ability to
22 litigate will be prejudiced, not merely its ability to manage outside litigation counsel."). For
23 instance, Nevro does not argue that an independent consultant cannot review the summary and
24 adequately advise Nevro about litigation decisions. *See Brown Bag*, 960 F.2d at 1470-71 (finding
25 protective "order requiring [plaintiff] to retain an 'independent consultant' to view [defendant's]
26 trade secrets" "str[uck] a reasonable balance between [the parties'] interests by shielding
27 [plaintiff's] in-house counsel from personal knowledge of a competitor's trade secrets, but
28 allowing access to information through an independent consultant"). Discovery closes on

5

September 1, 2017. Scheduling Order, Dkt. No. 49. This provides ample time for an independent consultant to review the summary and other evidence and advise Nevro accordingly.

For these reasons, the Court DENIES Nevro's request to disclose the summary to Socarras.

**IT IS SO ORDERED.**

Dated: June 27, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge