1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZALEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  KENNETH A. KUWAYTI (CA SBN 145384)
   KKuwayti@mofo.com
7  ERIC C. PAI (CA SBN 247604)
   EPai@mofo.com
8  MORRISON & FOERSTER LLP
   755 Page Mill Road
9  Palo Alto, California 94304-1018
   Telephone: 650.813.5600
10 Facsimile: 650.494.0794

11 Attorneys for Plaintiff
   NEVRO CORP.

12

13                 UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16

17 | NEVRO CORP.,                              | Case No.   3:16-cv-06830-VC-MEJ

18 |                          Plaintiff,       | **NEVRO CORP.'S OPPOSITION TO BSC'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS**

19 |        v.                                 |

20 | BOSTON SCIENTIFIC CORPORATION and         | Date:    December 21, 2017
   | BOSTON SCIENTIFIC NEUROMODULATION         | Time:    10:00 a.m.
21 | CORPORATION,                              | Ctrm:    4, 17th Floor

22 |                          Defendants.      | Judge:   Hon. Vince Chhabria

23

24

25          <u>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**</u>

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND AND PROCEDURAL HISTORY ......................................... 1

    A.   Nevro Filed this Case to Protect its Pioneering Technology. .................. 1

    B.   This Case is On Track for Trial in October 2018 .................................... 3

    C.   Nevro Promptly and Voluntarily Alerted BSC To Mr. Thacker's Documents ........ 3

III. LEGAL STANDARD .......................................................................................... 6

IV.  BSC'S MOTION TO AMEND MUST BE DENIED. ......................................... 7

    A.   There Is No Supplemental Jurisdiction Because BSC's Proposed Counterclaims are Unrelated to the Claims in this Litigation. ......................................... 7

    B.   Granting BSC's Motion Would Prejudice Nevro. ................................. 10

    C.   BSC's Amendment is Futile ................................................................. 13

        1.   BSC Fails to Plead Facts Sufficient for a Misappropriation Claim. .......... 13

        2.   BSC Fails to Plead Facts Sufficient for a Tortious Interference Claim. .... 15

V.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariba, Inc. v. Coupa Software Inc.*,
　2014 U.S. Dist. LEXIS 53214 (N.D. Cal. Apr. 15, 2014) ................................................ *passim*

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................13

*Avago Tech. U.S. Inc. v. IPtronics Inc.*,
　2014 WL 12650655 (N.D. Cal. Dec. 10, 2014) ........................................................10

*Bell At. Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................15

*Block v. First Blood Assocs.*,
　988 F.2d 344 (2d Cir. 1993) ......................................................................................6

*Boston Sci. Corp. v. Lee*,
　2014 U.S. Dist. LEXIS 107584 (N.D. Cal. Aug. 4, 2014) ........................................12

*Carrico v. City & Cty. of San Francisco*,
　656 F.3d 1002 (9th Cir. 2011) ...................................................................................6

*Coleman v. Quaker Oats Co.*,
　232 F.3d 1271 (9th Cir. 2000) .................................................................................11

*Collaboration Props., Inc. v. Tandberg ASA*,
　2006 WL 2398762 (N.D. Cal. Mar. 28, 2006) ...........................................................6

*Cypress Semiconductor Corp. v. Super. Ct.*,
　163 Cal. App. 4th 575 (2008) ..................................................................................13

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*,
　160 Cal. App. 4th 288 (2008) ..................................................................................13

*Dong Ah Tire & Rubber Co. v. Glasforms Inc.*,
　2009 U.S. Dist. LEXIS 24089 (N.D. Cal. Mar. 10, 2009) ........................................10

*Eminence Capital, LLC v. Aspeon, Inc.*,
　316 F.3d 1048 (9th Cir. 2003) ...................................................................................6

*In re Gilead Scis. Sec. Litig.*,
　536 F.3d 1049 (9th Cir. 2008) .................................................................................15

*Hofstetter v. Chase Home Fin., LLC*,
　751 F. Supp. 2d 1116 (N.D. Cal. 2010) ..................................................................13

*Johnson v. Buckley*,
    356 F.3d (9th Cir. 2004)................................................................................6

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015) .............................11

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999)......................................................................10

*Loop AI Labs, Inc. v. Gatti*,
    2015 U.S. Dist. LEXIS 170349 (N.D. Cal. Dec. 21, 2015) .......................11

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
    2014 U.S. Dist. LEXIS 194604 (N.D. Cal. Sept. 3, 2014) .........................12

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
    2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ..............................................4

*Mediostream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) .....................................................14

*Microstrategy Inc. v. Business Objects, S.A.*,
    331 F. Supp. 2d 396 (E.D. Va. 2004).........................................................14

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990)...............................................................6, 10

*Patent Category Corp. v. Time to Play Corp., Hong Kong*,
    2008 WL 11338801 (C.D. Cal. Mar. 5, 2008) ..............................................7

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,
    2006 U.S. Dist. LEXIS 9003 (N.D. Cal. Feb. 22, 2006)............................7, 8

*Sanofi-Aventis v. Apotex Inc.*,
    659 F.3d 1171 (Fed. Cir. 2011)..................................................................13

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998).....................................................................10

*Taiwan Semiconductor Mfg. Co. v. Semiconductor Mfg. Int'l Co.*,
    2004 U.S. Dist. LEXIS 29717 (N.D. Cal. Apr. 21, 2004) ........................7, 9

*Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*,
    106 Cal. App. 4th 1219 (Mar. 12, 2003)....................................................15

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    2013 WL 1767960 (N.D. Cal. Apr. 15, 2013) ..............................................4

*United Rentals (N. Am.), Inc. v. Keizer*,
    355 F.3d 399 (6th Cir. 2004).......................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

28 U.S.C.
  § 1367 ...................................................................................................................6, 7
  § 1367(a) ...................................................................................................................7
  § 1367(c)(2) ...................................................................................................................9

Cal. Civ. Code
  § 3426.1(b)(1) .................................................................................................................13
  § 3426.1(b)(2)(B) ...........................................................................................................13

Cal. Code Civ. P.
  § 2019.210 ...................................................................................................................11

**Other Authority**

Fed. R. Civ. P.
  13(b) ...................................................................................................................7
  15(a) ...................................................................................................................6
  16(b) ...................................................................................................................6

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Plaintiff Nevro Corp. | Nevro or Plaintiff |
| Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation | collectively, BSC, Boston Scientific, or Defendant |
| BSC's Motion for Leave to Amend Answer and Counterclaims (ECF No. 193) | Motion to Amend, Motion, or Mot. |
| spinal cord stimulation | SCS |
| U.S. Patent No. 8,768,472 | the '472 patent |
| ECF No. 1, Exs. A-F and ECF No. 156, Ex. G | collectively, patents-in-suit |
| Declaration of Amy DeWitt in Support of Boston Scientific's Motion for Leave to Amend Answer and Counterclaims (ECF No. 193-1) | DeWitt Decl. |
| DeWitt Decl., Ex. 2 | FAA |
| Declaration of Kenneth A. Kuwayti in Support of Nevro Corp.'s Opposition to Boston Scientific's Motion for Leave to Amend Answer and Counterclaims | Kuwayti Decl.[1] |
| Plaintiff's Answering Brief in Opposition to Defendant's Motion for Leave to Amend Its Answer to Assert Counterclaims for Patent Infringement, *Boston Scientific Corp. et al v. Nevro Corp.*, Case No. 16-cv-1163-GMS (D. Del. Oct. 27, 2017) | BSC's D. Del. Opp. |
| 28 U.S.C. § 1367 | Section 1367 |
| California Uniform Trade Secret Act | CUTSA |

---

[1] Unless otherwise noted, "Ex. __" refers to exhibits attached to the Kuwayti Decl. submitted herewith.

## I.      INTRODUCTION

Just two weeks before the close of fact discovery and over three months after the deadline to amend pleadings, BSC filed this Motion, seeking to add meritless state law counterclaims of trade secret misappropriation and tortious interference with contract.  Both claims are unrelated to Nevro's claims of patent infringement, which the parties have been litigating for the past year.

BSC cannot meet the standard required to justify amendment at this stage of the case because its counterclaims lack jurisdiction, would cause prejudice, and are futile.  First, BSC's motion must be denied because the Court lacks supplemental jurisdiction over the proposed state law causes of action, which do not derive from the same transaction as the pending patent claims. Second, adding BSC's proposed counterclaims—which are unrelated to the technology at issue— would complicate this case and disrupt the case schedule, prejudicing Nevro by delaying the resolution of its patent claims.  Finally, BSC's counterclaims are futile because BSC is unable to allege facts that Nevro knowingly acquired or used BSC's trade secrets or that Nevro urged Mr. James Thacker to breach his contract with BSC.  Mr. Thacker did not even become an employee of Nevro until two years after he left BSC with the documents in question.  BSC's Motion is a thinly-veiled and improper attempt to inject new issues into this litigation that will extend discovery, derail the schedule, and postpone trial. In contrast, BSC will suffer no prejudice by denial and can bring its state law claims in state court where they belong.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.      Nevro Filed this Case to Protect its Pioneering Technology.

From the outset of this case, Nevro has emphasized the importance of getting to trial without delay to secure injunctive relief before BSC can engage in a full scale U.S. commercial launch of an infringing product.  (*See, e.g.*, ECF Nos. 1, 44, 164.)  Nevro filed this action to prevent BSC from infringing patents that protect Nevro's pioneering spinal cord stimulation ("SCS") technology for treating chronic pain.  (ECF No. 156 ¶¶ 1-2.)  Traditional low-frequency SCS therapy has many drawbacks and depends on generating paresthesia to try to mask pain.  (*Id.* ¶ 3.)  Prior to Nevro entering the market, every commercial SCS system operated in this way.  (*Id.* ¶ 19.)  Nevro's mission was to provide a chronic pain solution without the drawbacks of

1  traditional low-frequency SCS therapy.  After years of research and development, Nevro brought

2  to market an SCS therapy that differs dramatically from traditional SCS technology in that it uses

3  high-frequency waveforms—operating at 10,000 Hz (pulses per second) as opposed to the

4  traditional 40-50 Hz— to generate paresthesia-free pain relief.  (*Id.* ¶ 5.)

5       BSC, with its long history of providing paresthesia-based low-frequency therapy, was

6  skeptical that Nevro's SCS therapy would provide effective pain relief.  (*Id.* ¶ 6.)  To BSC and

7  the industry's surprise, an FDA-monitored clinical study proved Nevro's novel high-frequency,

8  paresthesia-free SCS therapy was nearly twice as effective as BSC's traditional therapy, leading

9  the FDA to award Nevro's SCS therapy a rare "superiority" label.  (*Id.* ¶¶ 5, 7, 21.)

10      BSC's initial skepticism turned to copying.  In 2014, BSC initiated a clinical trial in the

11  United States to test paresthesia-free therapy utilizing infringing SCS devices that operate at the

12  same 10,000 Hz frequency as Nevro's commercial embodiment, the Senza® system.  (*Id.* ¶ 8.)  It

13  also started manufacturing 10,000 Hz devices in the U.S. that it sells in Europe.  (*Id.*)  The

14  copying is obvious, but BSC has denied it.  When Nevro sought email discovery on the basis that

15  "[e]mails are the documents most likely to confirm deliberate copying," BSC scoffed, arguing

16  that "Nevro offers nothing that suggests BSC copied its patent technology, or any reason to

17  believe email would shed light on this subject." (ECF No. 134 at 2, 4.)  BSC successfully limited

18  email discovery (*see* ECF No. 144 at 5-6), but the emails it has produced show blatant copying,

19  just as Nevro predicted.  For example, an April 2012 email chain lamenting BSC's loss of

20  business to Nevro shows BSC beginning work on a "high rate stimulator."  (Ex. A at BSC-

21  NVRO_00310714.)  BSC's VP of Research and Development, Rafael Carbanaru, writes, "We

22  should also ask Marketing to get as much information as possible on what Nevro's use model and

23  programming is so that we can make something that addresses the need and not something that

24  gets close to it only." (*Id.* at BSC-NVRO_00310713; *see also* Ex. B at BSC-NVRO_00180974

25  ("That is why we will need to copy or acquire approaches developed by others (Nevro Spinal,

26  Modulation, Neurosigma etc).")); Ex. C at BSC-NVRO_00181014 ("Since we are now proposing

27  a change to the IPG SEEPROM that enables Nevro rates . . . . ").)

28      BSC also opposed Nevro's efforts to gain email discovery on its awareness of Nevro's

1   patents, arguing Nevro's "desire for emails relating to willfulness stems from the fact that it has

2   found nothing so far, rather than any suggestion that emails would be particularly relevant."

3   (ECF No. 134 at 4.)  But numerous emails have now established that BSC was actively

4   monitoring Nevro's patents almost three years earlier than its interrogatory response initially

5   acknowledged.  (*See, e.g.*, Ex. S; Ex. D at BSC-NVRO_00307080 (May 2012 presentation stating

6   "BSN reviewed all Nevro patents and patent applications.").)  BSC's infringement is willful.

7        **B.**     **This Case is On Track for Trial in October 2018.**

8        Nevro filed its complaint on November 28, 2016, asserting patents from its extensive

9   portfolio against BSC's copycat devices.  (*See* ECF No. 1.)  Nevro initially asserted six patents

10  (*Id.*, Exs. A-F) and later amended its complaint to assert a seventh earlier patent, the '472 patent,

11  which claims priority to a provisional application dated November 2007 (ECF No. 156, Ex. G).

12  On January 26, 2017, the Court set the deadline to amend pleadings on July 20, 2017, and trial on

13  July 9, 2018.  (ECF No. 49 at 2-3.)  At BSC's request, the Court extended discovery deadlines

14  and moved the trial date to October 29, 2018.  (ECF No. 170.)  Fact discovery closes tomorrow,

15  November 17, 2017.[2]  (*Id.*)  Nevro is eager and ready to proceed to trial in October 2018.  (*Id.*)

16       **C.**     **Nevro Promptly and Voluntarily Alerted BSC To Mr. Thacker's Documents.**

17       BSC's counterclaims are based on documents that Mr. Thacker retained in his personal

18  possession from when he was employed at BSC and its predecessor company Advanced Bionics

19  from 2000 through 2006  (Mot. at 2.)  At BSC, Mr. Thacker "led BSC's field clinical engineering

20  group, which helped to develop, administer, and analyze clinical studies."  (FAA ¶ 11.)

21       Mr. Thacker did not come directly to Nevro from BSC.  He worked at EnteroMedics for

22  over two years before joining Nevro in January of 2009.  (DeWitt Decl. Ex. 6.)  At the time Mr.

23  Thacker joined Nevro, the provisional application for the '472 patent—a document that BSC

24  contends anticipates nearly every claim of the later six asserted patents—was already on file for

25  over a year.  (ECF No. 156, Ex. G; Ex. T at 13, 15, 22; Ex. W.)  When Mr. Thacker joined Nevro,

26  Nevro required him to sign its Proprietary Information and Inventions Agreement, pledging not to

27  _____

28      [2] The parties are filing a stipulation to allow a limited number of specifically identified depositions to proceed after the discovery cutoff date.  (Kuwayti Decl. ¶ 3.)

1    improperly use or disclose confidential information belonging to his former employers and not to

2    bring any such information to Nevro.  (Ex. E.)  Nevro was unaware Mr. Thacker had retained

3    BSC documents.

4         On August 18, 2017, Nevro's counsel promptly and voluntarily notified BSC's counsel

5    that it had learned that Mr. Thacker was in personal possession, at his home, of documents from

6    the time of his employment at BSC.[3]  (DeWitt Decl. Exs. 3, 6.)  Neither Nevro nor Nevro's

7    counsel took possession of the documents.  (*Id.*)  Nevro instructed Mr. Thacker to retain separate

8    counsel to represent him regarding the documents, and Mr. Thacker's counsel engaged a vendor

9    to sequester the documents and forensically image them.  (*Id.*)  On August 29, Nevro confirmed

10   to BSC that it would voluntarily cooperate in investigating whether any of BSC's confidential

11   documents were distributed to other Nevro personnel, including taking actions outside the normal

12   discovery process.  (Ex. E.)[4]  Nevro also proposed the parties agree to a protocol to "voluntarily

13   disclose to each other when they learn than an employee has come into possession of the other

14   parties' confidential information, and to a set of procedures . . . to be followed should that occur."

15   (*Id.*)  BSC has not agreed to the mutual voluntary disclosure despite Nevro's repeated proposal.

16        Independent of discovery in this case, Nevro offered to conduct a search to determine

17   whether BSC documents had been distributed to Nevro personnel and produce any located

18   documents pursuant to a protocol to which BSC agreed.  (*Id.*)  Nevro also agreed to forensically

19   determine whether Mr. Thacker's thumb drive containing BSC documents was ever inserted into

20   his Nevro laptop.  (Ex. G; DeWitt Decl. Ex. 8.)  Using a list of filenames that BSC chose to

21   prioritize, Nevro then searched the image of Mr. Thacker's company laptop, his emails dating

22

23        [3] Nevro was not required to produce these documents in discovery.  Documents in an
     employee's personal possession are not in the employer's "possession, custody, or control,"  *See*
24   *Matthew Enter., Inc. v. Chrysler Grp. LLC*,  2015 WL 8482256, at *3-4 (N.D. Cal. Dec. 10,
     2015) (quoting Fed. R. Civ. P. 34(a)(1)); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,  2013
25   WL 1767960 (N.D. Cal. Apr. 15, 2013).

26        [4] Through its voluntary investigation, Nevro learned that other current and former Nevro
     employees retained BSC documents in their personal possession when they left BSC.  On October
27   30, Nevro's counsel voluntarily disclosed this information to BSC and agreed to conduct similar
     forensic inquiries.  (Ex. F.)  BSC's proposed pleading identifies other Nevro employees, but its
28   proposed counterclaims are limited to Mr. Thacker.  (FAA.)

1   back to the start of his employment at Nevro, and his personal folder on Nevro's shared network

2   drive, and further employed a forensic software tool to search Nevro's entire shared network

3   drive. (*See id*. Exs. H-I.)  None of BSC's priority file names were present on Nevro's systems,

4   and there was no evidence that any confidential BSC information from any of those files was

5   distributed to anyone at Nevro. (*See id*. Ex. I.)  BSC demanded that Nevro conduct another

6   search for over 6,700 additional filenames, many of which are facially public or Mr. Thacker's

7   personal documents. (*See id*. Exs. J-L.)  Nevro has done so.  Thus, BSC already has the results

8   from Nevro's voluntary and extensive forensic searching to determine whether these documents

9   were shared within Nevro.

10      BSC alleges that it identified two instances where a confidential document that was not on

11   its priority lists that Nevro used for searching was transmitted from Mr. Thacker to a Nevro

12   employee. (*Id.*)  In both cases, the Nevro recipient was a former BSC employee. (*See* Ex. M.)

13   The contents of one of the two documents—a confirmatory plan for a clinical study dated 2003—

14   became public at least in 2007 when the results of the clinical study were published. (Exs. M, U;

15   FAA ¶¶ 19-20, 32, 43-51.)  This was two years prior to Mr. Thacker emailing the document.

16   (ECF No. 156 ¶ 20.)  Mr. Thacker sent the other document to another former BSC employee as

17   "an example of a requirements spec" with a note not to transmit to anyone at Nevro. (*See* Ex. N,

18   ("Since you and I worked at AB we can have this but we cannot share this with anyone else.").)

19      BSC's search requests are over inclusive of BSC confidential documents, burdening

20   Nevro with unnecessary voluminous searches for public and personal documents and taking

21   advantage of Nevro's voluntary cooperation.  Notably, of the 153 documents in BSC's initial

22   search request, only a single document was found as a result of the search.  The image of Mr.

23   Thacker's Nevro laptop contained a non-confidential Advanced Bionics calendar from 2001

24   showing pay dates, company holidays, and accounting periods that Mr. Thacker forwarded to his

25   wife in late 2000—and not to anyone at Nevro. (DeWitt Decl. Ex. 7.)  Similarly, of the 83

26   documents in BSC's second search request, only two were located in the search—each on Mr.

27   Thacker's laptop—one in a folder titled "Personal," emailing files *outside* Nevro from his

28   personal account, and the other a public document. (Ex. I.)  Finally, searching for the over 6,700

1   filenames in BSC's third demand resulted in locating scores of publicly available articles and

2   documents that "relate to Mr. Thacker's and his wife's personal finances and business ventures

3   that have nothing whatsoever to do with BSC." (Ex. Q.)  And since the filing of its Motion, BSC

4   sent Nevro another letter demanding Nevro search the files of 33 other former BSC employees.

5   (Ex. O.)  BSC's refusal to focus on confidential documents underscores its intent to flood this

6   litigation with discovery unrelated to Nevro's claims or legitimate confidentiality concerns.

7   **III.   LEGAL STANDARD**

8          A party seeking to amend its pleading after the deadline for amendment has passed must

9   show "good cause."  Fed. R. Civ. P. 16(b).  If "good cause" is first shown, leave to amend is

10   "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a).  Despite this liberal policy,

11   the court may deny leave where there is "any apparent or declared reason" for doing so and

12   considers factors including futility of amendment, bad faith, undue delay, and prejudice.

13   *Collaboration Props., Inc. v. Tandberg ASA*, 2006 WL 2398762, at *2 (N.D. Cal. Mar. 28, 2006).

14          Courts deny motions to amend where they lack jurisdiction over the proposed claims.  *See*

15   *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (denying motion to

16   amend for lack of jurisdiction).  "[T]o exercise supplemental jurisdiction under Section 1367, the

17   state law claims must be 'so related' to the patent claims 'that they form part of the same case or

18   controversy.'"  *Ariba, Inc. v. Coupa Software Inc.*, 2014 U.S. Dist. LEXIS 53214, at *9 (N.D.

19   Cal. Apr. 15, 2014) (quoting 28 U.S.C. § 1367(a)).

20          Prejudice is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest

21   weight."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation

22   omitted).   Considerations for prejudice include whether the amendment would "require the

23   opponent to expend significant additional resources to conduct discovery and prepare for trial"

24   and whether the new claims greatly alter the nature of the litigation.  *Block v. First Blood Assocs.*,

25   988 F.2d 344, 350 (2d Cir. 1993); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

26   1079 (9th Cir. 1990).  In addition, futility alone is sufficient to deny a motion to amend.  *Johnson*

27   *v. Buckley*, 356 F.3d at 1067, 1077 (9th Cir. 2004).

28

1    **IV.     BSC'S MOTION TO AMEND MUST BE DENIED.**

2        **A.     There Is No Supplemental Jurisdiction Because BSC's Proposed
                  Counterclaims are Unrelated to the Claims in this Litigation.**

3

4        BSC seeks to add state law counterclaims of trade secret misappropriation and tortious

5    interference to this action pursuant to the Court's supplemental jurisdiction under Section 1367.

6    (FAA ¶ 4.)  But there is no basis for supplemental jurisdiction, and BSC's counterclaims would

7    be subject to dismissal for lack of jurisdiction.  As a matter of law, BSC's Motion must be denied.

8        Section 1367 allows a court to exercise supplemental jurisdiction "over all claims that are

9    *so related* to claims in the action within [the court's] original jurisdiction *that they form part of*

10   *the same case or controversy* under Article III of the United States Constitution."  28 U.S.C.

11   §1367(a) (emphasis added).  "A state law claim is part of the same case or controversy when it

12   shares a 'common nucleus of operative fact' with the federal claims and the state and federal

13   claims would normally be tried together."  *Ariba*, 2014 U.S. Dist. LEXIS 53214, at *6 (quoting

14   *Bahrampour v. Lampert,* 356 F.3d 969, 978 (9th Cir. 2004)).  Permissive counterclaims—which,

15   by definition, do *not* arise out of the same transaction that is the subject matter of the original

16   claim—do not fall within Section 1367 because claims not arising out of the same transaction are

17   not "so related" and do not "form part of the same case or controversy."  Fed. R. Civ. P. 13(b); 28

18   U.S.C. § 1367(a); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, 2006 U.S. Dist.

19   LEXIS 9003, at *8-9 (N.D. Cal. Feb. 22, 2006).

20       Courts refuse to extend supplemental jurisdiction over state law trade secret and unfair

21   competition claims in a pending patent case, particularly where they are brought as counterclaims.

22   *See Taiwan Semiconductor Mfg. Co. v. Semiconductor Mfg. Int'l Co.*, 2004 U.S. Dist. LEXIS

23   29717, at *5 (N.D. Cal. Apr. 21, 2004) (no supplemental jurisdiction over state law trade secret

24   claim); *Regents of the Univ. of Cal.*, 2006 U.S. Dist. LEXIS 9003, at *8 (adding "counterclaims

25   of trade secret misappropriation and unfair trade practices would be futile for lack of

26   supplemental jurisdiction"); *Patent Category Corp. v. Time to Play Corp., Hong Kong*, 2008 WL

27   11338801, at *2-3 (C.D. Cal. Mar. 5, 2008) (declining jurisdiction "easily" over counterclaims

28   without "a common nucleus of facts," that "implicate a much broader factual universe," and

1    "open discovery and the trial . . . far too wide."). In *Ariba*, the court found there was no

2    supplemental jurisdiction over a misappropriation claim relating to former employees' retention

3    of confidential documents because the documents did not sufficiently relate to the infringement

4    accusation. 2014 U.S. Dist. LEXIS 53214, at *4-5, 9-10 ("[T]he confidential documents and the

5    proposed state law claims relate to various products, features, and intellectual property not at

6    issue in the patent case and require unrelated damage and liability theories. While there may be

7    minimal overlap between those issues and those necessary to litigate the patent case, it is

8    insufficient to bring the state law claims within the same case or controversy as the patent

9    claims."). So too here.

10        BSC lost a similar motion to amend in 2006. In *Regents of the Univ. of Cal.*, BSC sought

11   to assert trade secret and unfair trade practice counterclaims after it allegedly discovered that the

12   plaintiff possessed "numerous internal Boston Scientific files" taken "knowingly" by a former

13   employee. 2006 U.S. Dist. LEXIS 9003, at *10. Here, as in *Regents of the Univ. of Cal.*, "[t]he

14   alleged [patent infringement transactions] are not the same transactions that give rise to the claims

15   of trade secret misappropriation and unfair trade practices" and, therefore, are not "so related" to

16   form part of the same case or controversy. *Id.*

17        Here, BSC does not even allege that the two documents emailed by Mr. Thacker to others

18   at Nevro relate to the asserted patents. (*See generally* Mot.; DeWitt Decl. Ex. 2.) The claims of

19   the patents are all system and method claims directed Nevro's high frequency, paresthesia-free

20   therapy. (*See* ECF No. ¶ 1, Exs. A-F; 113-6, Ex. G.) In contrast, BSC's documents are a clinical

21   study plan and a "requirements spec" for a clinician programmer, which have nothing to do with

22   the patented technology. (*See* FAA ¶¶ 45, 47.) There also can be no dispute that the alleged trade

23   secrets pertain, at most, to BSC's traditional, low-frequency devices. (*See* Mot. at 8 (admitting

24   Mr. Thacker's documents pertain to the Precision$^{TM}$ SCS System, which was a "predecessor to

25   the BSC products Nevro is currently accusing of infringing its patents"); ECF No. 156 ¶ 21.) Mr.

26   Thacker left BSC in 2006—eight years before BSC sought FDA approval for a high frequency,

27   paresthesia-free device. (*See* ECF No. 156 ¶ 31.) BSC's claims do not even pertain to an

28   accused product, let alone the same technology and component of an accused product.

BSC argues that "the documents found in Mr. Thacker's possession are, at a minimum, relevant to BSC's inequitable conduct claims and a potential inventorship claim." (Mot. at 8.) But despite BSC's assertion that the relevance is "detailed in BSC's proposed amendment," (*id.*) the amendment contains no such detail. BSC offers no explanation as to how the documents in Mr. Thacker's possession relate to an inventorship claim. BSC has never pled inventorship as an affirmative defense and has not shown that any of the documents in Mr. Thacker's possession relate to the inventions at issue. If BSC had such a claim, it needed to raise it long ago. And BSC's argument that documents in Mr. Thacker's possession are relevant to BSC's inequitable conduct claims is nonsensical. BSC's inequitable conduct claim is based upon the "Yearwood Case Report" and the "Yearwood Poster," both of which are public documents published in 2006. (*See* FAA, Twelfth Defense.) They cannot be BSC trade secrets, and the fact that Mr. Thacker may have had information about a study that became public is irrelevant.[5]

But even if the documents were, as BSC says, "relevant to" certain defenses, that is insufficient to confer jurisdiction over BSC's counterclaims. In *Ariba* the court emphasized that the "confidential documents may very well be relevant to the patent claims" but "being relevant to a claim is not the same as forming being part of the same case or controversy as that claim." *Ariba*, 2014 U.S. Dist. LEXIS 53214, at *9-10, 12; *see also Taiwan Semiconductor*, 2004 U.S. Dist. LEXIS 29717, at *23-24 (declining to exercise jurisdiction even though patent and state law trade secret claims "are not completely unrelated"). In other words, BSC can try to use the documents to mount its inequitable conduct and undisclosed inventorship defenses, but that does not entitle BSC to trade secret and unfair competition counterclaims.[6]

---

[5] BSC's Yearwood inequitable conduct claim is specious. The poster and presentation, which report on a low frequency study of only three patients, found the three patients preferred therapy "with perceptible stimulation intensity" (i.e. paresthesia) —teaching away from Nevro's paresthesia-free claims. (Ex. R.) The Yearwood poster and presentation are so immaterial that BSC did not even list them among the 40 prior art references it has asserted in this case. (Ex. W.)

[6] Finally, even if BSC's state law claims were sufficiently related to give rise to supplemental jurisdiction, the Court should decline to exercise its discretion under Section 1367(c)(2) because the state law claims would "substantially predominate" over the patent claims in that "[t]he state law claims require substantial evidence on matters having nothing to do with the patent claims." *Ariba*, 2014 U.S. Dist. LEXIS 53214, at *17 (declining jurisdiction even if Section 1367(a) satisfied); *Taiwan Semiconductor*, 2004 U.S. Dist. LEXIS 29717, at *24 (same).

**B.      Granting BSC's Motion Would Prejudice Nevro.**

BSC's proposed counterclaims aim to introduce new issues of fact and law not implicated by Nevro's patent claims.  *See supra* Section IV.A.  Permitting amendment at this late stage of the litigation would disrupt the case schedule and "greatly alter[] the nature of the ligation," requiring Nevro to "undertake[], at a late hour, an entirely new course of defense."  *Morongo*, 893 F.2d at 1079 (affirming denial of amendment); *Avago Tech. U.S. Inc. v. IPtronics Inc.*, 2014 WL 12650655, at *7 (N.D. Cal. Dec. 10, 2014) (denying amendment because "inject[ing] new claims and defenses of this magnitude into this litigation just three months before close of fact discovery would unfairly prejudice Avago, who would be forced at this late hour to consider new lines of legal argument and seek discovery on entirely new subjects").

BSC's own case citations confirm that BSC's counterclaims, which add completely new theories, unrelated technologies, and business tort issues of law to pending patent claims, should not be allowed because of the prejudice and burden of adding such complexity to the case.  (Mot. at 8 (citing *Edwards Lifesciences LLC v. Cook, Inc.*, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (denying amendment requiring additional fact discovery on new legal theory) and *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1156 (N.D. Cal. 2008) (denying amendments that "require extensive additional discovery on entirely new case topics and the redeposition of witnesses, on top of the significant discovery that has occurred to date").) BSC cannot avoid these holdings, as BSC has similarly argued against amendment where the "counterclaim would inject an additional layer of complexity and delay into an already complex action."  BSC's D. Del. Opp. at 10 (citation omitted).

Courts also deny amendment that would require reopening discovery.  *See, e.g.*, *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (court properly exercised discretion in denying amendment that "would have required re-opening discovery, thus delaying the proceedings"); *Dong Ah Tire & Rubber Co. v. Glasforms Inc.*, 2009 U.S. Dist. LEXIS 24089, at *8-9 (N.D. Cal. Mar. 10, 2009) (denying amendment that would require further discovery, cause delay, and increase costs); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (district court

1   did not abuse discretion in denying amendment that would require reopening discovery).

2       Contrary to BSC's argument that "this case still remains early in the fact discovery period,"

3   (Mot. at 8), fact discovery closes tomorrow, over a month before the Court will hear this Motion.

4   (ECF No. 170.)  BSC also incorrectly states that "a trial date has not been set."  (Mot. at 9.)  Trial

5   is set for October 29, 2018.  (ECF No. 170.)  The disruption from amendment at this stage is clear.

6   If allowed, BSC's claims would inject a myriad of new and unrelated issues and disputes to the

7   case after the fact discovery cutoff and would inevitably result in a second extension of the trial

8   date.  BSC has already demonstrated that it intends to seek extensive discovery related to its

9   proposed claims, recently demanding that Nevro conduct broad searches on thirty-three former

10  BSC employees without regard to when they joined Nevro.  (Ex. O.)  One is a board member, and

11  most of the rest are sales employees who cannot reasonably be expected to have trade secrets

12  relevant to issues in a patent case.  (*See id.*)

13      The case schedule would be further upended because BSC has yet to identify the trade

14  secrets at issue with the "reasonable particularity" required before discovery can commence on

15  any trade secret issue.  Cal. Code Civ. P. § 2019.210; *Lilith Games (Shanghai) Co. v. uCool, Inc.*,

16  2015 U.S. Dist. LEXIS 89365, at *6 (N.D. Cal. July 9, 2015) ("Courts in the Northern District of

17  California, however, have generally found that section 2019.210 is applicable in federal cases.");

18  *Loop AI Labs, Inc. v. Gatti*, 2015 U.S. Dist. LEXIS 170349, at *7-8 (N.D. Cal. Dec. 21, 2015)

19  ("This court agrees with the reasoning of cases finding that a federal court may properly

20  apply section 2019.210 in federal suits alleging CUTSA claims.").

21      BSC's proposed amendment also alleges various irrelevant ancillary issues laced with

22  baseless implications of wrongdoing that foreshadow the complication and distraction the

23  amendment will cause.  For example, the amendment contains irrelevant and incorrect allegations

24  about an unrelated trade secret action BSC brought in December 2013 against its former

25  employee Dongchul Lee, who currently works at Nevro.  (FAA ¶¶ 21-22.)  BSC falsely states that

26  Nevro "resisted BSC's attempts to obtain discovery of any potential disclosure by Mr. Lee to

27  Nevro." (*Id.* ¶ 22.)  It did not.  Rather, just as it did here, Nevro acted immediately upon learning

28  that Dr. Lee retained BSC documents by: sequestering Dr. Lee's computers and providing

1    extensive forensic discovery to BSC.  That discovery is described in detail in an order by Judge

2    Grewal granting Nevro's motion to quash, which criticized BSC for acting like "Eddie Haskell"

3    and for "demand[ing] the sun, moon and stars," including unprecedented discovery that would

4    "disclose privileged communications" and "irrelevant trade secrets from a nonparty-competitor."

5    *Boston Sci. Corp. v. Lee*, 2014 U.S. Dist. LEXIS 107584, at *1, 19 (N.D. Cal. Aug. 4, 2014).

6           BSC released its claims against Dr. Lee for his retention of documents for nothing based

7    upon "Dr. Lee's sworn affirmation that he has neither used nor disclosed any non-public Boston

8    Scientific Proprietary Information."  (Ex. V.)  BSC never had any basis for—and never did—file

9    a case against Nevro.  But even if BSC could, it would have nothing to do with this patent case.

10   Dr. Lee joined Nevro in November 2013—years after the applications for the patents-in-suit were

11   filed and after Nevro's device was already being sold in Europe and Australia.  *Lee*, 2014 U.S.

12   Dist. LEXIS 107584 at *2.  He could not have misappropriated BSC trade secrets into Nevro's

13   patents or device.  BSC also misrepresents the facts with respect to Kerry Bradley, who is not a

14   "named inventor[] on the patents."  (See FAA ¶ 9; ECF No. 1 Exs. A-F, 156 Ex. G.)  Similar to

15   Dr. Lee, Mr. Bradley joined Nevro long after the applications were filed and Nevro's device was

16   released. (*See* https://www.linkedin.com/in/kerry-bradley-9305168/.)

17          BSC could have attempted to add these claims to its Delaware offensive action without

18   prejudice to Nevro's claims here as the deadline to amend pleadings had not yet passed when

19   BSC filed its Motion and discovery does not close until February.  Order, *Boston Sci. Corp. v.*

20   *Nevro Corp.*, No. 1:16-cv-01163-GMS (D. Del. Apr. 26, 2017).  In contrast to the prejudice

21   Nevro will suffer from delay and complication of its legitimate patent claims if BSC's

22   amendment is allowed here, BSC will not be prejudiced if its request to add counterclaims is

23   denied.  BSC can still file its state law claims in a separate state court action.  This presents the

24   most reasonable and efficient solution for all parties.  *See Marble Bridge Funding Grp., Inc. v.*

25   *Euler Hermes Am. Credit Indem. Co.*, 2014 U.S. Dist. LEXIS 194604, at *4 (N.D. Cal. Sept. 3,

26   2014) (holding it "entirely unnecessary" to transform "sufficiently-complex" action into

27   "something entirely different" where separate action possible).

28

## C.      BSC's Amendment is Futile.

A court may deny a motion to amend where amendment would be futile. *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1182 (Fed. Cir. 2011). "Whether an amendment is 'futile' is measured by the same standards that govern a motion to dismiss." *Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116, 1123 (N.D. Cal. 2010). A claim is only plausible, and therefore not futile, if it "pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1.      BSC Fails to Plead Facts Sufficient for a Misappropriation Claim.

BSC advances a thin and conclusory misappropriation claim against Nevro that lacks facts to support the elements of a trade secret cause of action.[7] Under the CUTSA, a trade secret claim "requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008) (citation omitted). The plain language of the statute makes clear that a claim for misappropriation requires proof that the defendant knew or had reason to know that the information was a trade secret and that the trade secret was improperly acquired. Cal. Civ. Code § 3426.1(b)(1) (requiring showing of "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"); *id.* § 3426.1(b)(2)(B). *See also Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 585 (2008) ("A person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information.") But BSC has not alleged facts to infer that Nevro knew about the alleged proprietary information let alone that Nevro knowingly acquired, used, or disclosed it.

First, BSC's allegation that Nevro acquired BSC's proprietary information is inadequate as a matter of law. Throughout its Motion and counterclaims, BSC conflates allegations of misappropriation by Mr. Thacker with misappropriation by Nevro. Indeed, BSC relies

---

[7] At least one of the two documents that form the basis of BSC's counterclaim may not even be a trade secret because the substance of the 2003 document was disclosed in a 2007 article reporting on the results of the clinical study. (*Compare* Ex. U *with* Ex. M.)

1  exclusively on Mr. Thacker's retention of documents for its allegation that Nevro improperly

2  acquired its trade secrets.  (*See* FAA ¶ 29 ("Mr. Thacker (and thereby Nevro) acquired BSC's

3  trade secrets by improper means").)  But an actionable claim requires a showing that the accused

4  misappropriator knew of the trade secret and the improper acquisition.  *See Mediostream, Inc. v.*

5  *Microsoft Corp.*, 869 F. Supp. 2d 1095, (N.D. Cal. 2012) (denying amendment where it "fail[ed]

6  to include facts demonstrating that [defendant] knew or had reason to know that any information

7  it allegedly acquired from Sonic was improperly acquired or disclosed").

8      There is no allegation of fact that Nevro knew that Mr. Thacker possessed BSC

9  documents.  To the contrary, the facts show otherwise.  Mr. Thacker did not even become an

10  employee of Nevro for over two years after he left BSC.  (DeWitt Decl. Ex. 6.)  Upon joining

11  Nevro, Mr. Thacker was required to attest that he would not bring any former employer's

12  confidential information with him to Nevro, and Nevro's conduct and voluntary disclosure of the

13  retained documents demonstrate Nevro's good faith.  Courts have rejected misappropriation

14  claims in similar situations where the current employer had no knowledge of its employee's

15  retention of documents.  *See, e.g.*, *United Rentals, (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 413 (6th

16  Cir. 2004) (no misappropriation where employee brought plaintiff's customer list to defendant

17  company without company's knowledge); *Microstrategy Inc. v. Business Objects, S.A.*, 331 F.

18  Supp. 2d 396 (E.D. Va. 2004) (no liability for employer where employee possessed old

19  employer's trade secrets without new employer's knowledge).

20      BSC also concludes without support that Nevro had "possession" of two allegedly

21  confidential documents that Mr. Thacker emailed to single Nevro employees.  (*See* FAA ¶¶ 46,

22  51.)  But even taking the allegations as true, "[a] showing of something more than mere

23  possession is necessary for a trade secret misappropriation claim."  *Applied Materials, Inc. v.*

24  *Advanced Micro-Fabrication Equip. (Shanghai) Co., LTD*, No. 07-cv-05248 JW (N.D. Cal. Nov.

25  30, 2009) (granting summary judgment of no misappropriation based upon employee's retention

26  of confidential documents that were loaded onto new employer's computer). (Ex. P.)

27      Second, BSC's counterclaim has no factual support to show Nevro used BSC's alleged

28  proprietary information.  BSC alleges only the insufficient and naked ultimate conclusion that

1  "[u]pon information and belief, Nevro has used the information provided by Mr. Thacker."  (FAA

2  ¶ 30.)  This cannot support a misappropriation claim.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 555

3  (2007).  Finally, BSC does not even allege that Nevro disclosed its trade secrets.  Nor could it.

4  **2.      BSC Fails to Plead Facts Sufficient for a Tortious Interference Claim.**

5  To properly plead its claim, BSC must allege facts sufficient to show, among other things,

6  Nevro's "intentional acts designed to induce a breach or disruption of the contractual

7  relationship" between BSC and Mr. Thacker.  *Tuchscher Dev. Enters., Inc. v. San Diego Unified*

8  *Port Dist.*, 106 Cal. App. 4th 1219, 1239, (Mar. 12, 2003).  BSC cannot do so.  BSC alleges no

9  facts to plausibly show that Nevro's actions were wrongful.  Instead, BSC offers only a single,

10  insufficient legal conclusion that "Nevro intentionally, and in violation of applicable law,

11  interfered with the contract between Mr. Thacker and BSC."  (FAA ¶ 40.)  *See Twombly*, 550

12  U.S. at 555.  There is no evidence that Nevro intentionally acted to cause Mr. Thacker to breach

13  his contract with BSC.  To the contrary, Nevro required Mr. Thacker to agree that he would not

14  improperly use or disclose confidential information belonging to his former employers and would

15  not bring any such information to Nevro.  (Ex. E.)  BSC's allegation is further undercut by Nevro

16  voluntarily bringing this issue to BSC's attention and conducting extensive forensic searches.

17  (*See* Exs. E-F; DeWitt Decl. Ex. 3.)  The court should disregard BSC's unsupported conclusion

18  that Nevro encouraged Mr. Thacker to breach his contract with BSC.  *In re Gilead Scis. Sec.*

19  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (court not required "to accept as true allegations that

20  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

21  **V.      CONCLUSION**

22  Nevro wants no part of BSC's confidential documents.  Nevro has voluntarily cooperated

23  in BSC's investigation into the retention of documents by its former employees.  Nevro will

24  continue to do so irrespective of the fate of BSC's counterclaims.  But BSC's unrelated state law

25  claims have no business in this lawsuit.  The counterclaims BSC seeks to raise against Nevro are

26  not related to Nevro's patent infringement claims.  Adding those counterclaims to this litigation

27  would be futile and would complicate the litigation and delay Nevro's ability to secure an

28  injunction to protect its differentiating technology.

1

2
Dated: November 16, 2017

3
MORRISON & FOERSTER LLP

4
By:    /s/ Michael A. Jacobs

5
Michael A. Jacobs

6
Attorneys for Plaintiff
NEVRO CORP.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28