Krista M. Carter (State Bar No. 225229)
Email address:  krista.carter@apks.com
Thomas T. Carmack (State Bar No. 229324)
Email address:  tom.carmack@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California  94306
Telephone:      (650) 319-4500
Facsimile:      (650) 319-4700

Matthew M. Wolf (admitted *pro hac vice*)
Email address:  matthew.wolf@apks.com
Edward Han (admitted *pro hac vice*)
Email address:  edward.han@apks.com
Marc A. Cohn (admitted *pro hac vice*)
Email address:  marc.cohn@apks.com
Amy L. DeWitt (admitted *pro hac vice*)
Email address:  amy.dewitt@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:      (202) 942-5000
Facsimile:      (202) 942-5999

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC NEUROMODULATION
CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| NEVRO CORP., | Case No. 3:16-cv-06830-VC |
| Plaintiff, | **BOSTON SCIENTIFIC'S OPPOSITION TO NEVRO'S MOTION TO STRIKE INVALIDITY POSITIONS (DKT. NO. 281)** |
| v. | |
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC NEUROMODULATION CORPORATION, | |
| Defendants. | |

ARNOLD & PORTER KAYE SCHOLER

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 2

      A.      Evidence Of Frequency Harmonics And Dr. Mihran's Related Opinions
      Should Not Be Stricken ....................................................................................... 2

           1.      BSC Has Not Taken Inconsistent Positions About The Precision
             System ..................................................................................................... 2

           2.      BSC Did Not Violate The Patent Local Rules, Because It Has Not
             Presented A New Theory ...................................................................... 3

      B.      BSC Should Not Be Barred From Relying On The Precision SCS Device ........... 5

           1.      BSC Produced a Sample Precision System to Nevro Months Ago. ........... 5

           2.      Nevro Put the Precision Device at Issue. ................................................ 8

      C.      The Court Should Not Strike Dr. Mihran's Reliance On Certain Prior Art To
      Show Knowledge Of A Person Of Ordinary Skill In The Art. ............................. 9

           1.      Kishawi '875 Should Not Be Stricken. ...................................................... 9

           2.      Kilgore 2004 Should Not Be Stricken. .................................................... 11

           3.      The Yearwood Presentation Should Not Be Stricken. ............................. 11

           4.      Lead Placement References Should Not Be Stricken. .............................. 12

           5.      ANS EON Device Should Not Be Stricken. ............................................. 12

           6.      Erickson '908 Should Not Be Stricken. .................................................... 13

           7.      References Used To Support Dr. Mihran's Opinions On Motivation
             To Combine Should Not Be Stricken. ..................................................... 14

III.    CONCLUSION ..................................................................................................... 15

ARNOLD & PORTER
KAYE SCHOLER

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ASUS Comput. Int'l v. Round Rock Research, LLC*,
   No. 12-cv-02099 JST (NC), 2014 U.S. Dist. LEXIS 50728 (N.D. Cal. Apr. 11,
   2014) ................................................................................................................... 10, 11

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) .......................................................................... 15

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 68128 (N.D. Cal. May 24,
   2016) ............................................................................................................. 1, 6, 7, 8

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413 (N.D. Cal. Feb. 20,
   2015)
   .............................................................................................................. 1, 5, 14, 15

*Genentech, Inc. v. Trs. of the Univ. of Pa.*,
   No. C 10-2037 LHK (PSG), 2012 U.S. Dist. LEXIS 16959 (N.D. Cal. Feb. 9,
   2012) ................................................................................................................... 10, 14

*Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*,
   838 F.3d 1236 (Fed. Cir. 2016)........................................................................... 13, 14

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)............................................................................................. 14

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
   No. C 12-00852 WHA, 2012 U.S. Dist. LEXIS 132478 (N.D. Cal. Sep. 17,
   2012) ................................................................................................................... 13

*Takeda Pharm. Co. v. TWi Pharm., Inc.*,
   No. 13-CV-02420-LHK, 2015 WL 1227817 (N.D. Cal. Mar. 17, 2015) .................... 5

*Transweb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)........................................................................... 12

**Rules**

Local Rule 3-4................................................................................................................ 1

ARNOLD &PORTER | KAYE SCHOLER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Nevro's three-part motion to strike should be denied.  *First*, Nevro moves to strike BSC's expert from testifying about fundamental laws of physics that describe the output signals from the prior art already disclosed in BSC's invalidity contentions.  Yet, the "specific articulation of [a] previously disclosed theory" of invalidity should not be stricken.  *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413 (N.D. Cal. Feb. 20, 2015).

*Second*, Nevro moves to strike BSC from relying on a sample of a prior art Precision SCS system that is itself only one piece of evidence among many pieces of evidence regarding to how that device operated before the priority date.  BSC identified the Precision SCS device in its invalidity contentions, along with 18 documents detailing its operation and capabilities.  BSC also provided charts showing where and how the device read on the asserted claims.  Moreover, BSC produced a prior art Precision system to Nevro in June 2017, which was ***identical*** in stimulation capability to the system Dr. Mihran examined.  The Court should follow the ruling in *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 68128 at *45-*46 (N.D. Cal. May 24, 2016), which denied a motion to strike four undisclosed prior art documents because they demonstrated how the already-disclosed anticipatory device functioned.  The same is true here; the sample Precision SCS system demonstrates how the already-disclosed device functions, as also evidenced by the documents identified in BSC's initial invalidity contentions.  Moreover, in parallel with its motion to strike, Nevro has put the capabilities of the Precision system at issue though a new theory in its expert reports on infringement.  Striking any reliance on the Precision system sample would prevent BSC from effectively rebutting this new theory.

*Finally,* the Court should deny Nevro's motion to strike the discussion of a dozen other references that relate to the state of the art and to motivation to combine references in combinations asserted to show obviousness.  The law is clear that prior art used to show the knowledge of a person of ordinary skill and the reasons a person of ordinary skill would modify prior art devices does not need to be charted in Patent Local Rule 3-4 contentions.  For these reasons, Nevro's motion to strike should be denied.

ARNOLD & PORTER
KAYE SCHOLER

1

## II.   ARGUMENT

### A.   Evidence Of Frequency Harmonics And Dr. Mihran's Related Opinions Should Not Be Stricken

#### 1.   BSC Has Not Taken Inconsistent Positions About The Precision System

Contrary to Nevro's assertion, BSC's statements to the Court are fully consistent with its expert's report.  BSC correctly told the Court that its Precision SCS system cannot stimulate "at frequencies" or "generate pulse frequencies" above 1.2kHz.  Lanham Declaration (ECF No. 283), Ex. 2, ¶ 11.  This means that the device cannot provide pulses more often than 1,200 times per second.  *Id*. ("Rate: '0 – 1200 pps'").  Nevro cites numerous BSC statements that support this position (Mot. at 3-5), and BSC stands by those statements.  But, Nevro is incorrect to suggest that there is anything inconsistent with those statements in Dr. Mihran's expert report.  That is because many of the asserted claims contain language covering something broader than mere pulse rate.

For example, rather than require a pulse rate of 1.5-100 kHz, independent claim 1 of the '533 patent (from which asserted claim 7 depends) claims a "therapy signal, wherein at least ***a portion*** of the therapy signal is at a frequency in a frequency range from 1.5 kHz to 100 kHz."  Declaration of Carson D. Anderson, filed herewith ("Anderson Decl."), Ex. 1 (emphasis added).  As Dr. Mihran has explained, from this language, in conjunction with the specification, a person of skill in the art would understand the claim to require a frequency ***component*** in the specified range.  Anderson Decl., Ex. 2, ¶¶405-413.  BSC timely proposed construing "the therapy signal has . . . a signal in a frequency range" to mean "the therapy signal has . . . a frequency component in a frequency range."  ECF No. 185, Ex. A at 9.  Nevro contends that this term requires no construction (*id*.), and yet it initially accused devices that could not be programmed above 1200 Hz of infringement.  Thus BSC must be allowed to present an alternative theory under its proposed construction, pending the Court's *Markman* decision.

BSC's statements regarding the maximum pulse rates of electrical signals outputted by its devices are in no way inconsistent with the fact that those signals also have higher frequency components.  As Dr. Mihran explains, due to fundamental laws of nature, a series of pulses at 1.2kHz necessarily includes higher frequency overtones above 1.5kHz.  Anderson Decl., Ex. 2, ¶¶

2

411, 415, 416, 418, 423; Declaration of Richard T. Mihran, filed herewith ("Mihran Decl."), ¶ 5. This is true of *any* device outputting square pulses at 1.2kHz. Mihran Decl., ¶ 5.

There is nothing inconsistent about presenting alternative invalidity and infringement theories. Indeed, BSC stated as much in its contentions:

> These Contentions are based at least in part on BSC's current understanding of the asserted claims and Nevro's apparent construction of those claims as reflected in its Disclosure Of Asserted Claims and Infringement Contentions served on January 31, 2017 ("Nevro's Infringement Contentions") and Nevro's Preliminary Claim Constructions, served on July 13, 2017. Accordingly, these Contentions may reflect alternative positions as to claim construction and scope. By including prior art that would anticipate and/or render obvious those claims based on Nevro's apparent claim construction or on any other particular claim construction, BSC is neither adopting Nevro's claim construction, nor admitting to the accuracy of any particular claim construction.

Lanham Decl., Ex. 14 at 1. Thus, BSC has asserted that its devices do not infringe because they cannot provide more than 1,200 stimulation pulses per second. However, if these systems are found to practice the asserted patents, then so too does the prior art, which has the same capability due to the presence of the higher frequency harmonics inherent in a stream of pulses that come at a lower frequency. Dr. Mihran explained this in his expert report (Anderson Decl., Ex. 2, ¶ 15):

> I have also reviewed Nevro's infringement contentions filed in conjunction with the present matter, and may rely on Nevro's contentions to demonstrate the manner in which certain claim terms or phrases are being interpreted by them for the purposes of asserting infringement. While I do not necessarily agree with such interpretations as reflected in these infringement contentions, it is my understanding that the scope of the claims as applied for both infringement and invalidity are the same, and thus I may at times in this report address or utilize the same interpretations and scope of the claims for my invalidity analysis that Nevro has applied in their infringement contentions. My consideration of Nevro's interpretation of claim scope as set forth in their infringement contentions for the purposes of performing my invalidity analysis as presented in this report should not, therefore, be construed as an endorsement by myself that such interpretations are necessarily correct or appropriate.

### 2.   BSC Did Not Violate The Patent Local Rules, Because It Has Not Presented A New Theory

As BSC noted it its invalidity contentions, Nevro appears to contend that any IPG that is capable of producing a signal greater than 1.5 kHz infringes the asserted claims. Lanham Decl., Ex. 7 at 4. As such, BSC disclosed the Precision system as an anticipatory reference that anticipates whether or not it has a software change: "To the extent Nevro contends that (i) any SCS system that, with a software change, is capable of producing high-frequency (≥ 1.5 kHz)

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

therapy signals meets this limitation and/or (ii) any IPG that is capable of producing high-frequency (≥ 1.5 kHz) therapy signals meets this limitation, ***the Precision SCS System expressly and/or inherently discloses this limitation***." *Id.* (emphasis added); *see also* Lanham Decl., Ex. 14 at 14-16 (identifying Precision system as anticipatory reference). This was included in the detailed charts that cited to Dr. Carbunaru's declaration regarding the Precision SCS product, as well as product manuals describing the product. *Id.*, Ex. 7 at 4-5.

As noted above, the asserted '533 patent itself explains that "[t]he present technology is directed generally to spinal cord modulation and associated systems and methods for inhibiting pain ***via waveforms with high frequency elements or components***." Anderson Decl., Ex.1 at 2: 49-52 (emphasis added). Dr. Mihran's opinions are consistent with this disclosure, as well as BSC's invalidity contentions. That he explains the mathematical basis for the contention in more detail is of no moment; the purpose of expert discovery is to provide something beyond what attorneys can present in contentions—technical expertise.

Dr. Mihran's report explains what BSC alleged in its contentions: How—as BSC alleged in its invalidity contentions—the Precision system meets the frequency limitations under Nevro's theory that "any IPG that is capable of producing high-frequency (≥ 1.5 kHz) therapy signals meets this limitation." Lanham Decl., Ex. 7 at 4. He explains how IPGs can be capable of producing high frequency therapy over 1.5kHz even if the pulses come at less than 1.5kHz. Specifically, he opines that if the 1.2kHz pulses of the accused products are considered to be infringing – the romanette (ii) in BSC's contentions quoted above – then the same would be true of the prior art Precision SCS system. Anderson Decl., Ex. 2, ¶¶ 15 (discussing reliance on Nevro's apparent claim interpretations based on infringement contentions), 402 (discussing what "Precision was ***capable*** of generating") (emphasis added).

Dr. Mihran's discussion of the energy distribution of signals generated by the Precision SCS prior art device provides detail about the inherent characteristics of that device, which BSC disclosed in its contentions and asserted would meet the frequency-related claim elements under certain assumptions. His discussion also reflects basic principles applicable to any square wave

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

electrical signal and which have been known in the SCS field for decades.  These principles are neither unique to the prior art Precision SCS system, nor even spinal cord stimulation – it is a basic physical property of a series of square electrical pulses.  Thus, Dr. Mihran applies it to other pieces of prior art as well (under the same assumption regarding IPG capability).  *See, e.g.*, Anderson Decl., Ex. 2, ¶¶ 692-93, 937-38, 1167-68, 1625-26.  Moreover, Nevro's asserted patents discuss the concept of frequency harmonics, as noted in BSC's claim construction positions, which Nevro has known about since July 13, 2017.  *See, e.g.,* Anderson Decl., Ex. 1 at 2:49-56; Ex. 3 at App. A, pp. 7-8.  Dr. Mihran's description of the characteristics of the same device charted in BSC's contentions is not a new theory but an explanation of the detail of a theory already provided in BSC's contentions.  *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413 (N.D. Cal. Feb. 20, 2015) (denying motion to strike because the expert provided a "specific articulation of this previously disclosed theory"); *See also*, *Takeda Pharm. Co. v. TWi Pharm., Inc.*, No. 13-CV-02420-LHK, 2015 WL 1227817, at *8 (N.D. Cal. Mar. 17, 2015) (noting that "[defendant] was not required to include a complete expert analysis in its Invalidity Contentions.  'In patent litigation, expert reports are expected to provide more information than is contained in infringement contentions.'") (internal citations omitted).

## B.    BSC Should Not Be Barred From Relying On The Precision SCS Device.

### 1.    BSC Produced a Sample Precision System to Nevro Months Ago.

With its contentions, BSC provided charts regarding the prior art Precision SCS system and showing how that system satisfied the elements of the asserted claims.  BSC relied on the testimony of Dr. Carbunaru as well as 18 contemporaneous documents describing the structure and function of the device.  Lanham Decl., Ex. 2, Ex. 14 at 14-16.  BSC provided all of this evidence to Nevro at the time.  Accordingly, neither this theory of invalidity, nor this evidence, should be the subject of a motion to strike.

Moreover, BSC sent Nevro a complete Precision system in June of last year.  Nevro focuses on the fact that the IPG it received is labeled "Precision Plus," rather than simply "Precision."  However, the difference between these two IPGs is one of marketing, not substance—as Nevro

1    knew before filing its motion.  Nevro's claims that "BSC never produced a sample" and "Nevro

2    first heard that the system had been located on January 5, 2018," (Mot. at 6) are simply incorrect.

3            After providing a sample to Nevro, BSC searched for a sample to send Dr. Mihran.  The

4    IPG in his sample was older than what had been produced to Nevro, so BSC offered to allow

5    Nevro to inspect it to verify that it was the same.  BSC had already provided evidence that the prior

6    art Precision SCS's output capabilities were identical to the Precision Plus sample it had sent to

7    Nevro.  For example, Dr. Carbunaru testified in his March 2017 declaration that:

8            Additionally, in late 2004, FDA approval was granted for updates that were made to the
             Precision SCS System components, including pulse generator, external trial stimulator,
9            remote control and clinical programmer.  There were no changes in the available
             stimulation parameters or interfaces with stimulation leads.  Thus, the capabilities described
10           by the manuals cited below are correct for the Precision SCS System commercialized in
             2005 after the 2004 updates were implemented.

11   Lanham Decl., Ex. 2, ¶ 7.  Dr. Carbunaru testified that these updates became the Precision Plus;

12   thus, Nevro has known that Precision Plus and Precision had the same output capabilities.  Nevro

13   points to a passage of Dr. Carbunaru's deposition in which he testifies that the Precision Plus had

14   different "electronics and we changed the firmware" versus the original Precision (Mot. at 8), but

15   this is irrelevant because the output capabilities of the two devices are, as Dr. Carbunaru testified,

16   still the same.  Lanham Decl., Ex. 13 at 829-832.  Dr. Carbunaru explains this deposition testimony

17   in a declaration filed herewith, in which he affirms again that the Precision Plus and the original

18   Precision device had the same output capabilities.  2/22/18 Declaration of Rafael Carbunaru, filed

19   herewith ("2/22/18 Carbunaru Decl."), ¶¶ 2-8.  Indeed, Nevro has always known that Precision

20   Plus was functionally the same as 2004 Precision device sold by BSC.  Its internal documents show

21   that Nevro was aware of the Precision Plus release in 2004/2005:

22   | Precision Plus | FDA 2004, CE Mark 2005 PNS CE Mark (8/27/12) and Head-only MRI  CE Mark (8/28/12) |

23   Anderson Decl., Ex. 4 ("Precision Plus… FDA 2004").  There is no legitimate basis for striking

24   Dr. Mihran's reliance on a Precision device, because it is essentially identical to the Precision Plus

25   device produced to Nevro in June 2017.  *See, e.g., Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-

26   WHO, 2016 U.S. Dist. LEXIS 68128 at *45-*46 (N.D. Cal. May 24, 2016) (denying plaintiff's

27   motion to strike expert's reliance on a previously undisclosed "hash table" theory where it was

28

ARNOLD & PORTER
KAYE SCHOLER

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

undisputed that the "'hash table' functionality [was] contained in [another prior art file] which [defendant] cited in its invalidity contentions for the relevant claim limitation.")

The analysis that Dr. Mihran performed using the Precision device was based entirely on the electrical waveform produced, *i.e.*, the output of the device, which is the same vis-à-vis his sample and Nevro's. Dr. Mihran's analysis and results would be no different than if he had used any other SCS device providing the same output. Specifically, he analyzed a series of square waves at 1000 pulses per second with a pulse width of 30 microseconds. All of the BSC's Precision products from 2004 onward could provide this output (2/22/18 Carbunary Decl., ¶¶ 2-8), and Dr. Mihran's results would not have been any different if the output had been generated by another device, or even by a generic pulse generator. In other words, it did not matter how the electrical signal was generated; Dr. Mihran's analysis and results were based solely on the shape of the electrical signal. Mihran Decl., ¶¶ 3-8. Nevro cannot show, therefore, that it has been prejudiced by Dr. Mihran's analysis of the 2004 Precision SCS system.

Nevro was given an opportunity to inspect and test Dr. Mihran's sample, but it has declined to do so. Lanham Decl., Ex. 10. Indeed, Nevro had about the same amount of time to analyze the system as Dr. Mihran did, plus the month between opening and rebuttal reports. BSC located the working IPG (from 2004) in mid-December 2017, and immediately sent it to Dr. Mihran so he could include it in his report due just one month later on January 18, 2018. Nevro was allowed to inspect the device any time after January 5, 2018 and it had until February 14, 2018 before its rebuttal reports were due. It would not have taken long to confirm that that the device's output capabilities (which were, in any event, already documented in the materials Nevro had in March 2017 in Table B1 of BSC's initial invalidity contentions (*see* Lanham Decl., Ex. 14 at 14-16)) corresponded identically to its own sample of Precision. Nevro has not been prejudiced.

Again, *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 68128 (N.D. Cal. May 24, 2016) is on point. There, the defendant's expert relied on five different user manuals/reference guides pertaining to an anticipatory device. Only one of these five documents was disclosed in its invalidity contentions. *Id.* at *31. Plaintiff argued that the four undisclosed

1   documents should be stricken.  *Id.*  The court held that defendant may rely on documents

2   associated with the anticipatory device "to demonstrate and support how the [anticipatory device]

3   functioned.  So long as the documents are not presented to the jury as 'distinct references,' they are

4   not separate prior art references that must have been disclosed pursuant to the Patent Local Rules

5   or my Case Management Order."  *Id.* (internal citations omitted).  BSC already identified the

6   Precision SCS device as prior art, showed in charts where and how it disclosed the elements of the

7   asserted claims, and provided documentary and testimonial evidence in support of those

8   contentions.  Like the undisclosed documents in *Finjan*, the actual Precision SCS device that Dr.

9   Mihran analyzed is not a "separate prior art reference" but instead demonstrates and supports how

10   the device functioned.  For the same reasons, the Court should not strike BSC's reliance on the

11   actual Precision SCS device in Dr. Mihran's report.

12         BSC was diligent in looking for an SCS product, but locating a working device from 14

13   years ago was difficult.  Dr. Carbunaru explains that he initially asked his Quality Department to

14   locate one but they were unable to do so.  2/22/18 Carbunaru Decl., ¶ 9.  Dr. Carbunaru asked other

15   BSC employees in August 2017, but did not receive a working IPG.  At that point, BSC was

16   convinced it no longer had an operational device.  *Id.*  In November 2017, Mr. Kothandaraman was

17   again asked to look for one and this time he was able to find a working device.  Declaration of

18   Sridhar Kothandaraman, filed herewith, ¶ 2.

19                     **2.   Nevro Put the Precision Device at Issue.**

20         Although Nevro's motion is directed solely to Dr. Mihran's opening report, its request to

21   preclude his reliance on the Precision sample appears to be part of a calculated sword/shield

22   maneuver.  Nevro disclosed a new theory in its opening reports on infringement, where it argues

23   that BSC's commercial WaveWriter product infringes—even though it cannot be programmed with

24   pulse rates higher than 1200 Hz—because its software could be modified to allow higher rate

25   programming.  The problem for Nevro is that the same is true of the prior art Precision system that

26   BSC has presented since its preliminary invalidity contentions in March 2017, where Dr.

27   Carbunaru specifically declared:

28

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

1
2
3
4

The clinician programmer's software and the remote control firmware could have been changed to render the Precision SCS System programmable by a user to generate pulse frequencies much greater than 1,200 Hz, including up to approximately 7,000 Hz, with no changes to the IPG hardware or firmware. The IPG's firmware could have been changed (in addition to the programmer's software and remote control firmware) to render the Precision SCS System capable to generate pulse frequencies up to approximately 14,300 Hz, with no hardware changes to the IPG.

5

In an attempt to distinguish the accused WaveWriter system from the prior art Precision system,

6

Nevro's source code expert opined that "the previous version of Bionic Navigator [the programmer

7

software] for Precision SCS (version 1.2) does not have high rate capabilities." Anderson Decl.,

8

Ex 5, ¶ 54. This statement directly contradicts Dr. Carbunaru's declaration, and is simply wrong.

9

To rebut Nevro's new, contradictory theory, Dr. Mihran conducted additional testing of the

10

Precision device in his rebuttal report, served February 14, 2018, showing that the Precision device

11

can in fact be programmed up to 20 kHz with only a single change to windows registry files of the

12

Precision programmer software. Nevro has put the specific capabilities of the prior art Precision

13

system and the ease of making "changes" to its clinician programmer software at issue. This is yet

14

another reason it would be unfair and improper to strike reliance on the Precision device.

15

    **C.**    **The Court Should Not Strike Dr. Mihran's Reliance On Certain Prior Art To Show Knowledge Of A Person Of Ordinary Skill In The Art.**

16

        **1.**    **Kishawi '875 Should Not Be Stricken.**

17

BSC identified Kishawi '875 in its Invalidity Contentions, but it does not rely on Kishawi

18

as an anticipatory reference, nor does it rely on Kishawi as a secondary reference in any

19

obviousness combination. Instead, BSC relies on Kishawi to show what a person of ordinary

20

skill in the art would have known at the time. It is also relied upon to support Dr. Mihran's

21

opinions that the Precision SCS prior art system was capable of providing stimulation according

22

to the asserted claims. Dr. Mihran explains that a person of ordinary skill in the art at the time of

23

the invention would have known this capability, and then he corroborates this with reference to

24

Kishawi. Lanham Decl., Ex. 6, ¶¶ 194 (discussing Kishawi in section entitled "Overview of the

25

asserted patents with respect to the state of the art in SCS at the time of the alleged invention,"

26

i.e., what was known to persons of ordinary skill); 191 ("Kishawi ***supports the understanding of***

27

***those of ordinary skill in the art*** that it is the width of the applied pulses, more so than the

28

9

ARNOLD &amp; PORTER
KAYE SCHOLER

repetition rate of the applied pulses, that determines the distribution of frequencies in the therapy signal.") (emphasis added).  Notably, Dr. Mihran does not argue that the prior art Precision SCS system would need to be modified in any way according to Kishawi in order to meet the claim element.  Rather, he explains why the prior art Precision SCS system is already capable of providing the claimed stimulation parameters, and that this is buttressed by Kishawi.  The Kishawi reference is used to show what a person of ordinary skill in the art would have known about the capabilities of then-existing SCS systems.  This Court has permitted experts to rely on prior art as such, even if not disclosed in invalidity contentions.

In *Genentech, Inc. v. Trs. of the Univ. of Pa.*, No. C 10-2037 LHK (PSG), 2012 U.S. Dist. LEXIS 16959 (N.D. Cal. Feb. 9, 2012), the Court denied a motion to strike prior art references from an expert report.  Genentech cited 20 references in the expert report that were not previously disclosed in its invalidity contentions.  *Id.* at *10.  Genentech argued that these "references provide background or details on what the person of ordinary skill in the art would know about" the relevant technology and are not references that "anticipate or render the patent obvious." *Id.* The Court holds "the fact that a reference…was not disclosed in the invalidity contentions does not render it unusable for laying a historical foundation to research that was disclosed." *Id.* at *12-*13.  Kishawi is used for the same purpose in this case.  Moreover, the Court relied on Genentech's representation that it would not use these references as "direct evidence of obviousness" – BSC will likewise not rely on Kishawi for direct evidence of obviousness.

In *ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 U.S. Dist. LEXIS 50728 (N.D. Cal. Apr. 11, 2014), cited by Nevro, ASUS argued that an undisclosed reference should not be stricken from its report because it was "'evidence of the knowledge of one of skill in the art at the time of the invention' and 'evidence that [patented feature] techniques were well known in the art.'" *Id.* at *30.  The Court allowed the undisclosed reference to the extent it was not used for anticipation or obviousness, holding that "[expert] may use [reference] for other purposes, e.g., to show the knowledge of a PHOSITA." *Id.* at *30-*31.

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

ARNOLD & PORTER
KAYE SCHOLER

1

2        **2.      Kilgore 2004 Should Not Be Stricken.**

3        BSC disclosed Kilgore 2004 as relevant prior art in its Amended Invalidity Contentions

4    (Lanham Decl., Ex. 1 at 4), but did not rely on Kilgore 2004 as an anticipatory or obviousness

5    reference.  BSC relies on another Kilgore reference (the "Kilgore '145 patent") as the basis for

6    some of its 102/103 arguments, and it will not present evidence of obviousness based on a

7    combination of Kilgore 2004 with other prior art.  However, Kilgore 2004, and other references

8    cited by Dr. Mihran, show what a person of ordinary skill in the art would have known at the

9    time, *i.e.*, that it was already known that SCS therapy could be provided at higher frequencies of 5

10   kHz or more (Lanham Decl. Ex. 6, ¶¶ 748, 750, 983, 1447, 1638, 1847, 2044).  BSC should be

11   permitted to rely on Kilgore 2004 to show that these features were well known in the art by a

12   person of ordinary skill.  *See, e.g., Asus*, 2014 U.S. Dist. LEXIS 50728, at *30-*31.

13       **3.      The Yearwood Presentation Should Not Be Stricken.**

14       Contrary to Nevro's contention, the Yearwood Presentation was identified in BSC's

15   Amended Invalidity Contentions as relevant prior art.  Lanham Decl., Ex. 1 at 8.  As with the

16   other references discussed above, the Yearwood Presentation is not cited as anticipatory prior art,

17   nor is it combined with other art in an obviousness combination.  Dr. Mihran cites the Yearwood

18   Presentation, along with other art, as evidence that persons of skill in the art already knew about

19   delivering therapy using pulse widths within the claimed ranges of pulse widths.  This shows that

20   a person of ordinary skill would have known that the claimed ranges of pulse widths were not

21   new.  In addition, the Yearwood study was carried out using BSC's Precision system.  *See, e.g.*,

22   Anderson Decl., Ex. 6 at BSC-NVRO_00006055 ("Figure 1:  Photo of components of the

23   Precision™ Spinal Cord Stimulation System").  It is evidence of the functionality and capabilities

24   of that system.  Thus, BSC should be able to cite the reference as such in accordance with the

25   above-cited authorities.  *See Asus*, 2014 U.S. Dist. LEXIS 50728, at *30-*31.

26       Furthermore, BSC relies on Dr. Mihran's discussion of the Yearwood Presentation to

27   show materiality for its inequitable conduct defense.  Nevro appears to acknowledge this

28   testimony is appropriate but argues that BSC should not be able to use it in front of a jury.  BSC

     submits that it is premature to present a motion *in limine* to the Court regarding what should be

11

1    admissible at a jury trial.  The Court may decide that it wishes materiality to go to the jury on an

2    advisory basis to assist the Court in determining inequitable conduct.  *See, e.g., Transweb, LLC v.*

3    *3M Innovative Props. Co.*, 812 F.3d 1295, 1312 (Fed. Cir. 2016) (affirming a finding of

4    inequitable conduct where the district court utilized an advisory jury verdict on that issue).

5                    **4.      Lead Placement References Should Not Be Stricken.**

6          The Lead Placement References are not relied on for purposes of establishing invalidity,

7    but are instead in a section of Dr. Mihran's report that criticizes Nevro's "Senza-RCT" clinical

8    study, which was performed in 2014.  Indeed, the heading of that section makes this clear:  "The

9    Senza RCT does not compare HF-10 therapy to the full range of capabilities of prior art SCS

10   systems."  Nevro's motion ignores the context of the cited documents.  Because they are not

11   relied on by Dr. Mihran as anticipatory prior art or used in combination with other art for

12   purposes of showing obviousness, BSC did not have to provide the articles in its Contentions.

13         In any event, Dr. Mirhan does opine that it was well known to persons of ordinary skill,

14   before the priority date, that positioning the leads at the T9-T10 vertebral level was desirable and

15   known to do.  *See, e.g.*, Lanham Decl., Ex. 6, ¶¶ 534-37.  To support this opinion, he cites the

16   Oakley 2006 article, further showing the state of the art and the knowledge of a person of

17   ordinary skill.  He relies on Provenzano because that article cites earlier studies and summarizes

18   their conclusions, which support his opinions.  Nevro's criticism that Provenzano should be

19   stricken because it is dated in 2017 ignores the fact that the studies discussed in Provenzano were

20   all published between 1993 and 2008 and are prior art, as Dr. Mihran points out in his report.  *Id.*,

21   ¶ 536.[1]  These references should not be stricken because they are not used as anticipatory or

22   obviousness prior art, but only to show the state of the art at the time of the alleged invention.

23                   **5.      ANS EON Device Should Not Be Stricken.**

24         Nevro is mistaken when it asserts that BSC is relying on the ANS EON Device as

25   additional prior art.  BSC relies only on the DeRidder '488 patent in the paragraphs identified in

---

26

27   [1] The ANS Renew manual should also not be stricken for the reasons set forth in BSC's parallel
     motion to amend.  ECF No. 275.

28

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                    Case No. 3:16-cv-06830-VC

Nevro's motion, and not on any aspects of ANS EON that are not described in the DeRidder '488 patent. *See, e.g.*, Lanham Decl., Ex. 6, ¶ 604.  DeRidder '488 discusses the ANS EON system at length, and Dr. Mihran simply refers to this discussion and not to any prior art references outside of DeRidder '488.  In four instances cited by Nevro in which Dr. Mihran does not quote or refer to DeRidder '488 itself (¶¶ 1633, 1656, 1664 and 1679) he discusses properties of the ANS EON that were well-known based on his own experience as an expert, *i.e.*, already within the knowledge of a person of ordinary skill based on mere references to the ANS EON system.  *See* Lanham Decl., Ex. 6, ¶¶ 1633, 1656, 1664 and 1679 ("The ANS EON was a well-known primary-cell SCS IPG….").  This is different than in *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C 12-00852 WHA, 2012 U.S. Dist. LEXIS 132478, at *8 (N.D. Cal. Sep. 17, 2012), as Nevro cites, where the defendant relied on passages in a piece of undisclosed prior art merely because it was cited in an asserted patent.  Here, by contrast, BSC is relying information about the ANS EON that is set forth in DeRidder '488, which Nevro does not seek to strike, or the knowledge of Dr. Mihran as an expert in the field.  *See, e.g.*, Lanham Ex. 6, ¶ 604.  Because Nevro takes no issue with BSC's reliance on DeRidder '488, this aspect of Nevro's motion should be denied.

### 6.    Erickson '908 Should Not Be Stricken.

This aspect of Nevro's motion should be denied for the same reason.  DeRidder '488 expressly incorporates Erickson '908 by reference and is specific about which aspect of Erickson '908 is incorporated, *i.e.*, the high-frequency operation feature.  Anderson Decl., Ex. 7 at [0056] ("In another embodiment, the IPG can be optimized for high frequency operation as described in U.S. Published Application No. US20060259098 [Erickson '908], which is incorporated herein by reference.").  Paragraphs 1764 and 1765 of Dr. Mihran's report cite only to the portion of Erickson '908 that are relevant to this incorporation which is part of the DeRidder '488 prior art by virtue of the incorporation by reference.  *Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1248 (Fed. Cir. 2016) ("A prior art document may anticipate a claim if it describes every element of the claimed invention, either expressly or inherently.  Other material may be considered as part of that prior art document if it is incorporated by reference.")

BSC'S OPPOSITION TO NEVRO's MOTION TO STRIKE                               Case No. 3:16-cv-06830-VC

(internal citation omitted).  Because BSC properly relies on DeRidder '488 and Nevro takes no issue with that aspect of Dr. Mihran's opinions, this aspect of Nevro's motion should be denied.

### 7.    References Used To Support Dr. Mihran's Opinions On Motivation To Combine Should Not Be Stricken.

In showing why a combination of prior art renders a claim obvious, a defendant must articulate a reason or motivation why a person of ordinary skill would have combined the teachings of one reference with another.  *See, generally, KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). In this case, Nevro seeks to strike Dr. Mihran's discussion of three pieces of prior art – Erickson '270, Feler, and Bourgeois – that Dr. Mihran points to support his opinions about the motivation to combine other pieces of prior art.  Erickson '270 and Feler were cited as relevant art in BSC's invalidity contentions.  Lanham Decl, Ex. 1 at 11, 13.  These references are not used as anticipatory references or as part of an obviousness combination, but rather to corroborate Dr. Mihran's opinions that a person of ordinary skill would have been motivated to combine the prior art to yield the claimed invention.  Indeed, Dr. Mihran is clear that he relies on these only as corroborating evidence of his opinions about the state of the art at the time and what a person of ordinary skill would have known.  Lanham Decl., Ex. 6, ¶ 614 ("These references corroborate my opinion [already set forth earlier in the report] that the pulse generators used in SCS and operating in the claimed kHz ranges were well-known to those of ordinary skill in the art well prior to Nevro's claimed invention.").  Under *Genentech*, they may be used in this manner.

As to the third reference (Bourgeois), Dr. Mihran relies on it only to corroborate his opinion about the state of the art at the time of the alleged inventions.  He opinions that using bursts of pulses was well known and that Bourgeois is an example that supports his opinion.  He does not rely on Bourgeous as anticipatory or as a reference in an obviousness combination.  It goes only to the state of the art and motivation to combine, consistent with what was explained in BSC's invalidity contentions and earlier in Dr. Mihran's report.

In *Fujifilm*, the Court denied plaintiff's motion to strike previously undisclosed motivations to combine.  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 21413, at *102 (N.D. Cal. Feb. 20, 2015).  "That motivations to combine remain relevant to

14

ARNOLD & PORTER
KAYE SCHOLER

the obviousness inquiry is thus not dispositive to whether they must be struck from expert reports when not properly disclosed in invalidity contentions.  Rather, the relevant question is the usual one: 'whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether.'"  *Id.* at *102-*103.  "[Plaintiff] does not argue, much less show, that the undisclosed motivations to combine it seeks to strike constitute new invalidity theories, as opposed to more specific articulations of previously disclosed ones."  *Id.* at *102.  *See also Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1322 (Fed. Cir. 2005) ("It has long been the law that the motivation to combine need not be found in prior art references, but equally can be found 'in the knowledge generally available to one of ordinary skill in the art.'" . . .  Evidence that a person of ordinary skill in the art recognized the same problem to be solved as the inventor and suggested a solution is, at the least, probative of a person of ordinary skill in the art's willingness to search the prior art in the same field for a suggestion on how to solve that problem.") (internal citations omitted).  Rather than constitute new invalidity theories, Dr. Mihran's reliance on Erickson, Feler, and Bourgeois supports the motivations to combine already set forth in BSC's contentions and earlier in Dr. Mihran's report.

## III.    CONCLUSION

For the reasons set forth above, BSC respectfully requests that the Court deny Nevro's Motion to Strike Invalidity Theories.

Dated:  February 22, 2018

Respectfully Submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Thomas T. Carmack*

Thomas T. Carmack

Attorney for Defendants BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC NEUROMODULATION CORPORATION