MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KENNETH A. KUWAYTI (CA SBN 145384)
KKuwayti@mofo.com
ERIC C. PAI (CA SBN 247604)
EPai@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0794

Attorneys for Plaintiff
NEVRO CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEVRO CORP.,<br><br>               Plaintiff,<br><br>    v.<br><br>BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>               Defendants. | Case No.    3:16-cv-06830-VC-MEJ<br><br>**PLAINTIFF NEVRO CORP.'S OPPOSITION TO DEFENDANT BOSTON SCIENTIFIC'S MOTION FOR REVIEW OF THE CLERK'S TAXATION OF COSTS** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     THE CLERK CORRECTLY EXCLUDED CERTAIN CATEGORIES OF COSTS ........ 2

        A.      BSC's Requested Discovery Costs Lack Appropriate Support ............................ 3

                1.      The "Productions" Costs Are Unsupported and Unreasonable .................. 6

                2.      The "Data Processing" Costs Are Unsupported and Unreasonable ........... 9

                3.      The "TIFF Conversion" Costs Are Unsupported and Unreasonable ........ 10

        B.      Courier Fees for Chambers Copies Are Not Recoverable ................................... 13

        C.      BSC Includes Deposition Costs That Are Not Reasonable or Recoverable ......... 14

III.    CONCLUSION .............................................................................................................. 16

PLAINTIFF NEVRO CORP.'S OPP. TO BOSTON SCIENTIFIC'S MOTION FOR REV. OF CLERK'S TAXATION OF COSTS
Case No. 3:16-cv-06830-VC
sf-3970232

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846-LHK, 2014 WL 4745933 (N.D. Cal. Sept. 19, 2014)................................12

*Computer Cache Coherency Corp. v. Intel Corp.*,
   No. C-05-01766 RMW, 2009 WL 5114002 (N.D. Cal. Dec. 18, 2009)...................................9

*Cooper v. United Air Lines, Inc.*,
   No. 13-CV-02870-JSC, 2015 WL 3548572 (N.D. Cal. June 5, 2015) ....................................14

*Davis v. Eastfield Ming Quong, Inc.*,
   No. 08-00769, 2009 WL 225420 (N.D. Cal. Jan. 29, 2009) ...................................................14

*Dey, L.P. v. Sunovion Pharm., Inc.*,
   No. C 12-80078 CRB (LB), 2012 WL 1094341 (N.D. Cal. Mar. 29, 2012) ...........................15

*eBay Inc. v. Kelora Sys., LLC*,
   No. C 10-4947 CW (LB), 2013 WL 1402736 (N.D. Cal. Apr. 5, 2013) .....................3, 4, 5, 10

*Emblaze Ltd. v. Apple Inc.*,
   No. 5:11-cv-01079-PSG, 2015 WL 1304779 (N.D. Cal. Mar. 20, 2015)..................................9

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
   No. C 12-03762 SI, 2014 WL 1860298 (N.D. Cal. May 8, 2014).......................................9, 11

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
   76 F.3d 1178 (Fed. Cir. 1996)..................................................................................................2

*MEMC Elec. Materials v. Mitsubishi Materials*,
   No. C-01-4925 SBA (JCS), 2004 WL 5361246 (N.D. Cal. Oct. 22, 2004),
   *adopted as modified on other grounds,* 2004 WL 5363614 (N.D. Cal. Nov. 22,
   2004) .......................................................................................................................................15

*Phoenix Techs. Ltd. v. VMWare, Inc.*,
   No. 15-CV-01414-HSG, 2018 WL 4700347 (N.D. Cal. Sept. 30, 2018) ...............................16

*Plantronics, Inc. v. Aliph, Inc.*,
   No. C 09-01714 WHA (LB), 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012)........................3, 4

*In re Ricoh Co., Ltd. Patent Litig.*,
   661 F.3d 1361 (Fed. Cir. 2011)...................................................................................3, 5, 6, 11

*Romero v. City of Pomona*,
   883 F.2d 1418 (9th Cir. 1989).............................................................................................2, 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF NEVRO CORP.'S OPP. TO BOSTON SCIENTIFIC'S MOTION FOR REV. OF CLERK'S TAXATION OF COSTS
Case No. 3:16-cv-06830-VC-MEJ
sf-3970232

ii

*Ruiz v. A.B. Chance Co.*,
   234 F.3d 654 (Fed. Cir. 2000) ................................................................................2

*Shum v. Intel Corp.*,
   682 F. Supp. 2d 992 (N.D. Cal. 2009), *aff'd*, 629 F.3d 1360 (Fed. Cir. 2010) ..............2, 13, 15

*United Healthcare Servs., Inc. v. Meyer*,
   No. C 12-6197 JSW, 2013 WL 5346094 (N.D. Cal. Sept. 24, 2013) ......................................14

*Zuill v. Shanahan*,
   80 F.3d 1366 (9th Cir. 1996) ................................................................................4

**Statutes and Other Authorities**

28 U.S.C. Section 1920 ...................................................................................... *passim*

Fed. R. Civ. P.
   Rule 26 ................................................................................6, 11
   Rule 30(b)(1) ................................................................................15
   Rule 54(d) ................................................................................2, 3
   Rule 54(d)(1) ................................................................................2

1    Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation's

2    (collectively, "BSC") motion for review of the Clerk's taxation of costs reflects BSC's continued

3    efforts to obtain costs inflated beyond what it is properly entitled to under 28 U.S.C. Section

4    1920, Federal Rule of Civil Procedure 54, and Civil Local Rule 54.  BSC's overreach was

5    apparent to the Clerk.  The Clerk disallowed:

6    • $236.79 in service of process costs as unrecoverable under 28 U.S.C. § 1920;

7    • $8,318.80 in deposition costs; and

8    • $75,649.58 in discovery costs as outside the ambit of Civ. L.R. 54-3 and for lack of

9      supporting documentation.

10   (ECF No. 499.)  BSC does not challenge the first category of disallowed costs.  BSC's motion for

11   review challenges the latter two categories, but fails to adequately support its request for inflated

12   costs.  For the reasons discussed below, the Court should deny BSC's motion for review and deny

13   the additional costs requested by BSC.

14   **I.      INTRODUCTION**

15   This is BSC's fourth attempt at obtaining costs.  After the Court entered its Judgment in

16   this case on July 31, 2018, Nevro Corp. ("Nevro") immediately entered a notice of appeal.

17   (ECF Nos. 477-478.)  BSC then proceeded to file a series of deficient Bills of Cost.

18   BSC's original Bill of Costs was filed with a supporting declaration from KPMG LLP

19   ("KPMG") on August 14, 2018.  (ECF Nos. 482, 482-6.)  After Nevro pointed out that this

20   declaration included costs that were indisputably not recoverable, BSC filed a first Amended

21   Bill of Costs supported by an amended KPMG declaration on August 28, 2018.  (ECF Nos. 485,

22   485-6.)  After BSC refused to correct its Amended Bill of Costs, Nevro filed objections on

23   September 11, 2018, explaining that the costs BSC sought were again significantly inflated and

24   that the KPMG declaration appeared to inaccurately state the number of documents that BSC

25   had produced to Nevro by more than 35%.  (ECF No. 488 at 4.)  The next day, September 12,

26   2018, BSC filed a Second Amended Bill of Costs supported by a second amended KPMG

27   declaration.  (ECF Nos. 490, 490-6.)  BSC's Second Amended Bill of Costs was also over

28   inflated and the Second Amended KPMG declaration was riddled with errors.  (ECF No. 491 at

2-10.)  Nevro again objected to these improper and unsupported costs on September 26, 2018.  (ECF No. 491.)  The Clerk of the Court reviewed the Bill of Costs and on November 20, 2018, sustained each of Nevro's objections, granting BSC $93,104.40 in total costs.

BSC's motion for review stands on its Second Amended Bill of Costs, yet it fails to adequately address the issues raised in Nevro's objections and the Clerk's taxation of costs.  The consistent problem with each of BSC's requests for costs, as noted by the Clerk, has been that BSC has failed to meet its burden to include the "[a]ppropriate documentation to support each item claimed" as the Local Rules require.  *See* Civ. L.R. 54-1(a).  As explained below, the Court should deny BSC's fourth attempt to recover costs to which it is not entitled and deny BSC's motion for review.

## II.      THE CLERK CORRECTLY EXCLUDED CERTAIN CATEGORIES OF COSTS

District courts have broad discretion to deny costs under Rule 54(d).  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 670 (Fed. Cir. 2000) ("[a]n award of costs under Rule 54(d)(1) falls within the discretion of the trial court"); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) ("the district court judge retains broad discretion as to how much to award, if anything").  The Court "may reduce costs which are unreasonably large or which are not supported by adequate documentation" and retains "discretion to award partial costs or to require the parties to pay their own costs."  *Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 998 (N.D. Cal. 2009), *aff'd*, 629 F.3d 1360 (Fed. Cir. 2010) (citation omitted).

To be recoverable, a particular expense must fall into one of the categories of costs statutorily authorized under 28 U.S.C. § 1920.  *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989)("a district court may not rely on its 'equity power' to tax costs beyond those expressly authorized by section 1920"), *overruled on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1991).  Section 1920 authorizes the district court to tax as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923; and

1    (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees,

2    expenses, and costs of special interpretation services under section 1828.

3           BSC's motion for review tellingly ignores that it bears the burden of demonstrating that

4    its requested costs are properly recoverable.  Civ. L.R. 54-1(a) (requiring "[a]ppropriate

5    documentation to support each item claimed . . . .").  Nothing about Rule 54(d)'s presumption of

6    costs to a prevailing party "excuses a prevailing party from itemizing its costs with enough

7    detail to establish that each expense is taxable under section 1920." *Plantronics, Inc. v. Aliph,*

8    *Inc.*, No. C 09-01714 WHA (LB), 2012 WL 6761576, at *3 (N.D. Cal. Oct. 23, 2012) "[T]he

9    burden is on the prevailing [party] to establish the amount of compensable costs and expenses to

10   which they are entitled.  Prevailing parties necessarily assume the risks inherent in a failure to

11   meet that burden." *In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1367 (Fed. Cir. 2011)

12   (quoting *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001)).  BSC has

13   entirely failed to meet that burden for several of the items listed on its Bill of Costs.  Nevro, on

14   the other hand, has more than met its burden of demonstrating why the costs should not be

15   awarded. *Id.* at 1364.

16          **A.      BSC's Requested Discovery Costs Lack Appropriate Support.**

17           BSC seeks $69,604.58 in discovery costs under Civ. L.R. 54-3(d)(2).  (ECF No. 490 at

18   7, 10-11; ECF No. 490-6 ¶ 3; ECF No. 502 at 3.)  The Clerk properly disallowed that entire

19   amount as "outside the ambit of Civil Local Rule 54-3" and because the "[s]upporting

20   documentation does not support [the] amount claimed."  (ECF No. 499 at 1.)  BSC has failed to

21   satisfy its burden to establish that these costs are appropriate and recoverable.  (ECF No. 491 at

22   2-10.)

23          Specifically, BSC has repeatedly and consistently failed to "itemize its costs with

24   enough detail to establish that they are taxable under section 1920," such as failing to

25   demonstrate that its requested costs represent only the cost of reproducing documents that were

26   actually "prepared for or tendered" to Nevro in this case. *eBay Inc. v. Kelora Sys., LLC*, No. C

27

28

10-4947 CW (LB), 2013 WL 1402736, at *3, *7 (N.D. Cal. Apr. 5, 2013).[1]  BSC's sole support

for its discovery costs is a brief declaration by KPMG that categorizes the requested costs into

three broad categories of "Data Processing," "Production," and "TIFF Conversion."  (ECF No.

490-6 ¶¶ 5-8.)  BSC's motion for review simply restates its second amended KPMG declaration

in narrative form.  (*See* ECF No. 502 at 3-8.)  BSC includes no invoices or other documentation

that detail or support these costs.  BSC explains that it is unable to provide further

documentation because KPMG provides ESI services to BSC on multiple cases and "bills BSC

on a monthly basis for ESI services performed for multiple litigations."  (*Id.* at 4.)  BSC claims

that the KPMG declaration is sufficient documentation because it "provides the same

information as would an invoice."  (*Id.* at 6.)

BSC's arguments fundamentally misunderstand the documentation requirement of Civ.

L.R. 54-1(a), which states that "[a]ppropriate documentation to support each item claimed must

be attached to the bill of costs."  The requirement is not that invoices be provided, but that the

requesting party "itemize its costs with enough detail to establish that they are taxable under

section 1920." *eBay*, 2013 WL 1402736, at *3.  Invoices are one kind of document that might

provide this support.  While "[i]n a simple case with obvious costs, invoices may not be needed"

and a declaration may be sufficient, courts in this district have found that substantial

documentation is appropriate to tax high discovery costs "in a large case with ESI," like this

one, to allow the reviewing court to determine that the cost is appropriately taxable and

represents "a calculation that is reasonably accurate under the circumstances." *Id.* at *4 (citing

---

[1] BSC states that "Nevro did not object to any costs as unrecoverable 'intellectual effort' or that any of the costs fail to qualify as 'exemplification and the costs of making copies.'"  (ECF No. 502 at 4 n.1)  While BSC's supporting declaration claims that its costs "include only the amounts associated with the electronic preparation and duplication of discovery documents, and not the intellectual effort involved with production, such as searching for the documents," (ECF No. 490-1 ¶ 12), as Nevro's objections repeatedly state, BSC's supporting documentation is so thin that Nevro is unable to properly assess whether the requested amounts include inappropriate costs, such as assembling, collecting, or processing documents.  (ECF No. 491 at 4-5.)  *Plantronics*, 2012 WL 6761576, at *17 (costs for electronic .TIFF and .PDF conversion and OCR of documents produced in discovery were permissible exemplification costs, but pre-production document collection and processing costs were not); *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996) (finding only the cost of "the physical preparation and duplication of documents, not the intellectual effort involved in their production" properly taxable.)

1    *Meier v. U.S.*, No. C 05-04404 WHA, 2009 WL 982129, at *2 (N.D. Cal. Apr. 13, 2009), in

2    which $500 in copying costs were allowed without invoices based on costs identified in the

3    declaration attached to the bill of costs, as an example of a case where no invoices were

4    required).  Invoices themselves may be insufficient if they lack sufficient detail to indicate that

5    the requested costs are taxable.  *In re Ricoh*, 661 F.3d at 1367-68 (applying Ninth Circuit law

6    and denying disputed copying costs to a prevailing party where the invoices and itemized

7    spreadsheets "did not meet its burden under section 1920 to establish the amount of costs to

8    which it is entitled" and noting the inadequacy of "generic references such as 'transcripts,'

9    'publication,' and 'document production.'").  The issue is not that BSC failed to provide

10   invoices, but rather that it failed to provide any form of supporting documentation that

11   adequately meets BSC's burden to establish that its requested costs are taxable under section

12   1920.  *eBay*, 2013 WL 1402736, at *4 ("In sum, with ESI, vaguely-worded vendor invoices and

13   a declaration that such services were necessarily incurred may not satisfy the prevailing party's

14   burden to show that the ESI is the electronic equivalent of compensable exemplification and

15   copying.").

16           The only documentation that BSC has provided, the KPMG declaration, does not meet

17   this burden.  The declaration does not contain a detailed breakdown of costs and Nevro has

18   repeatedly pointed to a number of glaring deficiencies and inconsistencies in the declaration that

19   BSC has failed to address.  BSC filed an original Bill of Costs with a cursory one-and-a-half

20   page declaration from KPMG in support of its purported discovery costs on August 14, 2018.

21   (ECF Nos. 482, 482-6.)  After Nevro pointed out several issues inflating the discovery costs in

22   the original KPMG declaration during a meet and confer, BSC amended its Bill of Costs and

23   supporting KPMG declaration to reduce the claimed "Data Processing" costs, but made no

24   change to the "TIFF Conversion" or "Productions" costs.  (*Compare id. with* ECF Nos. 485,

25   485-6 at 2.)  Nevro again met and conferred with BSC and filed objections to BSC's amended

26   discovery costs, pointing out that, among other things, the KPMG declaration appeared to

27   include more pages than the amount that had actually been produced to Nevro.  (*See* ECF No.

28   488 at 4.)  The next day, BSC amended its Bill of Costs and the KPMG declaration yet again,

1   providing a chart of the size of its productions and reducing the number of pages for which it

2   passed on the "TIFF Conversion" cost to Nevro.  (*See* ECF Nos. 490, 490-6 ¶ 7.)  Nevro's

3   objections to BSC's Second Amended Bill of Costs and supporting KPMG declaration again

4   highlighted a number of inconsistencies in the KPMG declaration, including, among other

5   issues, charges that do not relate to documents actually produced to Nevro.  (ECF No. 491 at 7.)

6   BSC's motion for review fails to address these inconsistencies.

7         Nevro incurred substantial expense chasing down the inaccuracies in these serial

8   amendments because the KPMG declaration lacks supporting invoices or other supporting

9   documentation to establish that the requested discovery costs actually relate to "documents

10  [that] were produced by [BSC] pursuant to Rule 26 or other discovery rules and that the copies

11  were requested by, and supplied to, the opposing party."  *In re Ricoh*, 661 F.3d at 1367.  This

12  lack of support is particularly problematic given the repeated issues with KPMG's declarations

13  and KPMG's statement that it "provides ESI services to Defendants in relation to multiple cases

14  and bills Defendants electronically at contractual rates on a monthly basis for all cases

15  together." (ECF No. 490-6 ¶ 3.)  This suggests that there may well be issues with KPMG's

16  method for differentiating which discovery costs are attributable to copying documents actually

17  produced in this action versus another.  Absent appropriate supporting documentation that

18  would allow Nevro or the Court to independently assess the costs, it is unclear how pervasive

19  this potential problem may be.

20        BSC's motion for review provides no further explanation or documentation in support of

21  its costs.  Instead, it simply recites the same explanation found in the KPMG declaration.  (ECF

22  No. 502 at 3-8.)  A close review of the KPMG declaration reveals that there are systemic issues

23  and inconsistencies regarding each of the categories of the requested discovery costs.  These

24  issues relate both to the reliability and accuracy of the cost figures BSC has submitted and to

25  BSC's inclusion of categories of costs that are not recoverable.

26               **1.    The "Productions" Costs Are Unsupported and Unreasonable.**

27        BSC claims $25,190.00 in costs for a category titled "Productions" which it claims only

28  reflects costs that apply to "documents that were actually produced to Nevro."  (ECF No. 502 at

1    6.)  However, the amendment history of the KPMG declarations and a close review of the size

2    of the productions actually received by Nevro call this claim into question.

3         KPMG filed its initial page-and-a-half declaration in support of BSC's first Bill of Costs

4    on August 14, 2018, in which it stated that the "Productions" cost – described as "includ[ing]

5    bates stamping, slip sheets, load file creation" – was $25,190.00 (the same number BSC seeks

6    here).  (ECF No. 482-6 ¶ 2.)  In that same declaration, KPMG claimed that the "Data

7    Processing" and "TIFF Conversion" costs were $52,150 and $32,821.50, respectively.  (*Id.*)  On

8    August 28, 2018, after Nevro pointed out multiple errors,  BSC submitted an amended Bill of

9    Costs, supported by an amended KPMG declaration that significantly reduced the claimed "Data

10   Processing" costs but made no change to the claimed "Productions" cost or to the "TIFF

11   Conversion" costs.  (ECF No. 485-6 ¶ 3.)

12        Specifically, the first amended KPMG declaration acknowledged that it had significantly

13   overstated the number of documents that had been processed for production.  It stated that "[o]f

14   the 159 GB of native files which KPMG processed" and apparently included in its prior costs

15   declaration, only "65.84 GB was processed for production and produced."  (*Id.* ¶ 5.)  "Thus,

16   41.4% of the total data processed was actually produced to Nevro," and the requested Data

17   Processing cost was reduced from $52,150 to 21,475.25—a reduction of more than 50%.  (*Id.*)

18        Despite this reduction, the first amended KPMG declaration made no change to the

19   estimated costs incurred for Productions and TIFF Conversion.  KPMG alleged that the

20   "Productions" cost of "preparing [those] files that are going to be produced for production to

21   Nevro," which "were only performed on documents that were actually produced to Nevro,"

22   remained at $25,190.00.  (ECF No. 485-6 ¶ 6.)  The "TIFF Conversion" cost remained at

23   $32,821.50, which according to the amended KPMG declaration was incurred for the TIFF

24   conversion of 1,094,050 pages, which was "only performed on documents that were actually

25   produced to Nevro."  (*Id.* ¶ 2.)

26        After Nevro filed an objection to the first Amended Bill of Costs, pointing out that the

27   KPMG declaration continued to significantly overstate the amount of documents produced (ECF

28   No. 488 at 4-5), BSC and KPMG amended again.  On September 12, 2018, KPMG submitted a

PLAINTIFF NEVRO CORP.'S OPP. TO BOSTON SCIENTIFIC'S MOTION FOR REV. OF CLERK'S TAXATION OF COSTS
CASE NO. 3:16-cv-06830-VC-MEJ

7

1  second amended declaration conceding that "[o]f the 1,094,050 pages that were converted to

2  TIFF images by KPMG," only "764,611 pages were actually produced to Nevro."  (ECF

3  No. 490-6 ¶ 7.)  In other words, even in its amended declaration, KPMG continued to overstate

4  the production by more than 35%.  As a result, KPMG adjusted the total of the "TIFF

5  Conversion" amount to $22,938.33 in its second amended declaration.  (*Id.*)

6          Despite its admission that only two thirds of the documents that KPMG previously

7  claimed were "actually produced" were in fact produced, KPMG made no change to the

8  "Productions" size or cost in its second amended declaration.  KPMG's second amended

9  declaration again stated that "Productions" costs involved "preparing the files that are going to

10  be produced for production to Nevro" and "were only performed on documents that were

11  actually produced to Nevro" and claims the exact same amount as before, $25,190.  (*Id.* ¶ 6.)

12  Given the amendment history, it is unreasonable that an admitted 30% reduction in the number

13  of pages "actually produced to Nevro" in the Second Amended KPMG declaration would not

14  have a commensurate reduction in the "Productions" size and cost.  This is particularly true

15  given the lack of documentation or other corroboration of the figures in the KPMG declaration.

16  And tellingly, BSC offers no explanation for this inconsistency in its motion for review.  (*See*

17  ECF No. 502 at 6.)

18          A review of the size of the "Productions" revealed further issues.  The total "Volume

19  Processed" under the "Productions" category for NVROCA001 through NVROCA064 alone,

20  according to the KPMG declaration, is 239.5691767 GB.  (ECF No. 490-6 ¶¶ 6-8.)  This is 15

21  GB larger than the total size of NVROCA001 through NVROCA064 actually received by

22  Nevro, which amounts to 224.48 GB.  (*See* ECF No. 491-1 ¶ 12.)  BSC has failed to provide any

23  explanation for this discrepancy in its motion for review.  (*See* ECF No. 502 at 6.)

24          These problems were only compounded by KPMG's policy of rounding the total GB

25  produced each month "up to the nearest GB."  (ECF No. 490-6 ¶ 8.)  According to KPMG's

26  own admission, this rounding increased the GB bill by over 9 GB – from 242.9341416 GB to

27  252 GB – and raised the total "Productions" cost by $906.59.  (*Id.* at 3-7.)  This 9 GB does not

28  correspond to the production of any actual documents to Nevro.  The Ninth Circuit has

"interpreted 28 U.S.C. § 1920(4)'s language permitting recovery of 'the costs of making copies' as permitting recovery *only* for fees incurred in the 'physical preparation and duplication of documents.'" *Computer Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766 RMW, 2009 WL 5114002, at *4 (N.D. Cal. Dec. 18, 2009)(emphasis added)(citing *Romero*, 883 F.2d at 1428).  This district has made it exceedingly clear that "only costs incurred specifically to produce documents to the opposing party are recoverable." *Emblaze Ltd. v. Apple Inc*., No. 5:11-cv-01079-PSG, 2015 WL 1304779, at *7 (N.D. Cal. Mar. 20, 2015); *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,  No. C 12-03762 SI, 2014 WL 1860298, at *5 (N.D. Cal. May 8, 2014) (rejecting all e-discovery costs associated with unproduced documents).  These costs do not qualify.  BSC's sole argument in support of passing this cost on to Nevro is that it is simply "a consequence of KPMG's billing structure."  (ECF No. 502 at 6.)  Passing on costs that do not relate to any documents actually produced to Nevro and that are purely the result of BSC's choice of billing structure invites absurd results.   Indeed, such a cost is more properly akin to discovery costs that are merely for the convenience of counsel and therefore unrecoverable.  *Computer Cache Coherency*, 2009 WL 5114002, at *4 (holding that "add-on services" that are merely for the convenience of counsel are not recoverable).  For these reasons, the "Productions" costs in the KPMG declaration are unsupported and unreasonable, and should be disallowed.

> **2.      The "Data Processing" Costs Are Unsupported and Unreasonable.**

As for the "Data Processing" cost, BSC requests $21,476.25.  BSC claims this cost constitutes "processing native files received from BSC by removing duplicate items, capturing the associated metadata, and generating a reviewable output" and that 41.4% of the total data processed for production was actually produced by Nevro.  (ECF No. 502 at 5.)  This number has not changed from KPMG's prior first Amended Declaration despite KPMG's admission in the Second Amended Declaration that fully one third of the pages that it had claimed in the prior declaration were purportedly "actually produced" to Nevro were in fact not produced to Nevro.  (*Compare id. with* ECF No. 485-6 ¶ 5 *and* ECF No. 490-6 ¶ 5.)  Given the lack of appropriate invoices or other supporting documentation available, Nevro has no way of evaluating whether

1    the 41.4% "actually produced" estimation is reasonably accurate or if this "Data Processing"

2    cost is permissible under 28 U.S.C. § 1920 or the Local Rules.  Considering KPMG's admission

3    that the total number of pages "actually produced" is significantly less than it originally

4    contended, it is unreasonable that there was no commensurate reduction in this cost.

5         BSC has failed to provide any explanation for this discrepancy in its motion for review,

6    instead relying entirely on the deficient KPMG declaration.  (*See* ECF No. 502 at 5-6.)  As

7    explained above, given the size and complexity of the costs requested, the lack of detail and

8    numerous inconsistencies found in the only support provided by BSC, and BSC's failure to

9    attempt to address these inconsistencies, the KPMG declaration alone is insufficient to satisfy

10   BSC's burden.  *eBay*, 2013 WL 1402736, at *3 ("In sum, with ESI, vaguely-worded vendor

11   invoices and a declaration that such services were necessarily incurred may not satisfy the

12   prevailing party's burden.").  This cost should therefore be disallowed for lack of appropriate

13   support.

14            **3.      The "TIFF Conversion" Costs Are Unsupported and Unreasonable.**

15        The "TIFF Conversion" costs in KPMG's declaration are also unreasonable and

16   unsupported.  "TIFF Conversion" is described in KPMG's declaration as "the process of

17   converting the native files that have been identified for production into a static format."  (ECF

18   No. 490-6 ¶ 7.)  As explained above, KPMG has amended its declaration to state that "[o]f the

19   1,094,050 pages that were converted to TIFF images by KPMG," only "764,611 pages were

20   actually produced to Nevro."  (*Id.*)  In fact, however, the Bates numbers in BSC's production to

21   Nevro in this litigation ranged from BSC-NVRO_00000001 to BSC-NVRO_00736856,

22   indicating these productions were no more than 736,856 pages.  (*See* ECF No. 491-2 (BSC's

23   NVROCA064 production letter,[2] which notes that the produced Bates range goes up to BSC-

24   NVRO_00736856).)  These productions were made in a series, from NVROCA001 to

25   NVROCA064.

26

27        [2] Note that despite referring to the production as "NVROCA064" in the cover email, BSC
     mistakenly calls this production volume "NVROCA061" in the attached letter.

28

1    Much of this difference apparently arises from the fact that BSC is charging Nevro for

2    third party productions, which account for 25,917 pages.  (ECF No. 490-6 ¶ 8.)  Nevro objected

3    to taxing of the cost of productions produced by parties other than BSC, particularly the cost of

4    the Thacker production, which was the result of a production request by *BSC*, not Nevro.  (ECF

5    No. 491-8.)  BSC argues that these costs may be taxed under Civ. L.R. 54-3(d)(2), which allows

6    the taxation of the "cost of reproducing disclosure or formal discovery documents when used for

7    *any* purpose in the case." (ECF No. 502 at 7 (emphasis added in BSC's motion).)  However,

8    costs may not be taxed "beyond those expressly authorized by section 1920." *Romero*, 883 F.2d

9    at 1428.  "Section 1920 allows the recovery of costs for a prevailing party who establishes that

10    the copied documents were *produced by it* pursuant to Rule 26 or other discovery rules and that

11    the copies were *requested by*, and supplied to, *the opposing party*." *In re Ricoh*, 661 F.3d at

12    1367 (emphases added).  These costs do not fall within section 1920 and should be disallowed.

13    An additional part of the difference can be accounted for by BSC's attempts to

14    improperly charge Nevro for various "clawbacks, and declawbacks," in its production.  For

15    example, the second amended KPMG declaration shows that BSC includes in its discovery costs

16    963 pages and 0.377 GB of documents labeled "Clawback."  A review of the productions in

17    question shows that these include slipsheets or redacted versions of documents that BSC had

18    previously incorrectly produced and then clawed back from Nevro on the basis of privilege.  In

19    keeping with the protective order, Nevro destroyed the original copy of all clawback documents

20    as BSC demanded.  (ECF No. 491-7.)  The KPMG declaration also shows that BSC includes in

21    its costs an additional 23 pages that BSC had produced, clawed back, and then decided to "de-

22    clawback" and produce again to Nevro.  (ECF No. 490-6 at 5-7.)  BSC therefore seeks to tax

23    Nevro two or even three times for the production of the same document – or, in the case of

24    documents that were clawedback and never "declawed," documents that were effectively never

25    produced at all. *Kwan Software Eng'g, Inc.*, 2014 WL 1860298, at *5 (rejecting all e-discovery

26    costs associated with unproduced documents).)  These re-productions are entirely due to BSC's

27    own production mistakes.  There is no reasonable basis for taxing these costs to Nevro.  BSC's

28    sole argument for taxing these costs is the fact that the Federal Rules permit clawbacks.  (ECF

1    No. 502 at 7.)  However, the fact that clawbacks are permitted does not mean that the cost of

2    these repeated mistakes may reasonably or appropriately be taxed to Nevro.

3         But even after subtracting these third-party productions and clawbacks, the total page

4    count of the BSC productions to Nevro, titled "NVROCA001" to "NVROCA064" according to

5    KPMG's declaration, is 737,708 – nearly 1,000 pages more than BSC actually produced.  The

6    KPMG declaration makes no effort to explain this discrepancy, nor does BSC's motion for

7    review even acknowledge this issue.  (ECF No. 490-6 ¶ 8; ECF No. 502 at 7.)

8         Perhaps one reason that BSC's motion for review, and the KPMG declaration it entirely

9    relies upon, avoid explaining the discrepancy is that the difference may be due to BSC's

10   unreasonable inclusion of the cost of re-productions of previously produced documents.  (ECF

11   No. 490-6 ¶ 8; *see, e.g.*, ECF No. 491-3 (noting that produced along with NVROCA0022 were

12   "new images and load files for previously produced document BSC-NVRO_00053546 - BSC-

13   NVRO_00053628."); ECF No. 491-1 ¶¶ 13-14.)  For example, in at least one instance, BSC re-

14   produced documents to Nevro apparently because BSC originally incorrectly produced them

15   with the designation Highly Confidential – Source Code, and BSC corrected the designation to

16   be Highly Confidential – Attorneys' Eyes Only.  (ECF No. 490-6 at 5; ECF No. 491-6 (noting

17   that along with a little over a dozen new pages produced in NVROCA014, the production

18   included documents "originally produced with the designation High Confidential – Source

19   Code" that are "now designated as Highly Confidential – Attorneys' Eyes Only.").)  The

20   inclusion of the cost of such documents would be unreasonable as it would indicate that BSC is

21   again seeking to tax Nevro multiple times for the production of the same documents due to

22   BSC's own production mistakes.  BSC's motion for review does not attempt to address this

23   issue.  (ECF No. 502 at 7.)  For the above reasons, the "TIFF Conversion" costs in KPMG's

24   declaration are unreasonable and unsupported.

25        Because BSC has failed to meet its burden to provide "[a]ppropriate documentation" to

26   support its request for discovery costs, the Court should deny BSC's discovery costs in this

27   category entirely.  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL

28   4745933, at *9 (N.D. Cal. Sept. 19, 2014) ("Given the lack of appropriate documentation, the

1    Court denies Apple's request for copying costs in its entirety."); *see also Shum,* 682 F. Supp. 2d

2    at 998 ("A district court may reduce costs . . . which are not supported by adequate

3    documentation.").  In addition, it is apparent that there are errors in the calculation method that

4    BSC did provide and strong reasons to doubt its reliability.  Further, Nevro has already had to

5    spend significant time and expense investigating these issues because of the lack of appropriate

6    documentation.  Nevro therefore asks that BSC's motion for review be denied and BSC's

7    requested costs for this category, $69,604.58, be entirely excluded.

8              **B.     Courier Fees for Chambers Copies Are Not Recoverable.**

9              BSC's motion for review seeks to recover $6,045.00 in costs for copying and delivering

10   chambers copies to the Court, purportedly under Local Rule 54-3(d)(2), which states "[t]he cost

11   of reproducing disclosure or formal discovery documents when used for any purpose in the case

12   is allowable."  (ECF No. 502 at 8.)  Nevro originally objected to $3,966.90 in fees for courier

13   delivery of courtesy copies of filings to the San Francisco courthouse by WARP 9, First Legal

14   Network, LLC, and Dalmatian Courier.  (ECF No. 491 at 11.)  The Clerk disallowed the cost of

15   printing and delivery of chambers copies in its entirety.  (ECF No. 499.)  Nevro notes that

16   courtesy copies are not explicitly provided for under Civ. L.R. 54-3(d)(2) and the Court "may

17   reduce costs which are unreasonably large or which are not supported by adequate

18   documentation" and retains the "discretion to award partial costs or to require the parties to pay

19   their own costs."  *Shum*, 682 F. Supp. 2d at 998 (citation omitted).

20             Nevro objected to $3,966.90 in fees for courier delivery of courtesy copies of filings to the

21   San Francisco courthouse by WARP 9, First Legal Network, LLC, and Dalmatian Courier.  (ECF

22   No. 490-4, Exs. D4-D11, D13, D15, D17, D18, D20, D21, D30, D32, D34, D38-D40, D42, D44-

23   D49, D55.)  Some of these courier charges also include extra costs such as "special vehicle" fees,

24   "fuel chg" or "fuel surcharge," and courier "wait time."  (*See, e.g.*, *id.* at Exs. D38, D46, D48.)

25   BSC claims that because the Court's standing order required the delivery courtesy copies by noon

26   the day after electronic filing, it is entitled to the cost of courier service for the cost of delivering

27   these copies.  (ECF No. 502 at 8-9.)  However, that does not make this cost properly taxable

28   under section 1920.  In fact, this very argument has been expressly rejected by courts in this

1    district.  "Overnight delivery and 'courier' charges are 'not one of the enumerated categories of

2    recoverable costs in § 1920.'"  *Cooper v. United Air Lines, Inc.*, No. 13-CV-02870-JSC, 2015

3    WL 3548572, at *3 (N.D. Cal. June 5, 2015) (rejecting the argument that a party "is entitled to

4    these costs because it was required to deliver copies of pleadings to the Court under the local

5    rules and the Court's Standing Order" and striking the cost of providing chambers copies.); *Davis*

6    *v. Eastfield Ming Quong, Inc.*, No. 08-00769, 2009 WL 225420, at *2 (N.D. Cal. Jan. 29,

7    2009) (rejecting the argument that costs should be recoverable because the party was "was

8    required to provide for chambers a copy of the electronic filings by noon the following business

9    day," because "[c]osts allowable under section 1920 are enumerated in the statute and do not

10   include messenger fees."); *see also United Healthcare Servs., Inc. v. Meyer*, No. C 12-6197 JSW,

11   2013 WL 5346094, at *4 (N.D. Cal. Sept. 24, 2013) ("Courier delivery of a motion is not one of

12   the enumerated categories of recoverable costs in § 1920, and therefore the Court cannot award

13   this cost.").  And BSC provides no explanation why extra costs such as "special vehicle" fees,

14   "fuel chg" or "fuel surcharge," and courier "wait time" should reasonably be taxed.  Nevro

15   therefore asks that BSC's motion for review of the $3,966.90 be denied and that this cost not be

16   taxed to Nevro.

17          **C.**      **BSC Includes Deposition Costs That Are Not Reasonable or Recoverable.**

18          BSC seeks to tax $86,310.90 in deposition transcript and video recording fees under Civ.

19   L.R. 54-3(c)(1).  (ECF No. 499.)  Nevro originally objected to $236.25 of this cost, which

20   constituted a surcharge for a weekend deposition.  (ECF No. 491 at 10-11; ECF No. 490-3, Ex.

21   C12.)  The Clerk disallowed $8,318.80 in costs from this category, but did not explain the reason

22   for the disavowal.  (ECF No. 499.)  BSC's motion for review does not address why the surcharge

23   for the weekend deposition of Ms. Zimmer should be taxed to Nevro.  (ECF No. 502 at 9-10.)

24          Nevro noticed the deposition of Ms. Zimmer, a BSC employee, on October 30, 2017.

25   (ECF No. 491-4.)  BSC informed Nevro that Saturday, November 11, 2017, was the only day in

26   the fact discovery window that Ms. Zimmer was available for deposition.  (ECF No. 491-5 at 1.)

27   Nevro accommodated BSC's request, even though it meant higher costs to Nevro to schedule a

28   weekend deposition.  The deposition of Ms. Ashley Zimmer occurred on Saturday, November 11,

2017.  (ECF No. 490-3, Ex. C12.)  Fact discovery closed on November 17, 2017.  (ECF No. 170 at 3.)

Nevro's notice of Ms. Zimmer's deposition was well within the requirement of "reasonable notice" for depositions.  Fed. R. Civ. P. 30(b)(1); *Dey, L.P. v. Sunovion Pharm., Inc.*, No. C 12-80078 CRB (LB), 2012 WL 1094341, at \*3 (N.D. Cal. Mar. 29, 2012) (noting 10-days' notice is generally considered reasonable).  The fact that Ms. Zimmer was only available on a Saturday is not attributable to Nevro.  It is therefore unreasonable to require that Nevro pay the $236.25 surcharge for "Certified Transcript – Weekend Pages" on top of the cost of Ms. Zimmer's Certified Transcript and Videotaped deposition when this charge was entirely caused by BSC or its employees.  (ECF No. 490-3, Ex. C12.)  Nothing about this surcharge merits its inclusion as a cost under 28 U.S.C. § 1920.  Nevro therefore asks that the Court deny BSC's motion for review of this cost and that this $236.25 cost not be taxed to Nevro.

As for the remaining $8,082.55 disallowed, while the Clerk did not explain the reason for the disallowance, Nevro notes that the Court "may reduce costs which are unreasonably large or which are not supported by adequate documentation" and retains "discretion to award partial costs or to require the parties to pay their own costs."  *Shum*, 682 F. Supp. 2d at 998 (citation omitted).  Among BSC's deposition costs are $5,765 in reporter appearance fees and $19,864 in videographer appearance fees on top of the cost of the two copies of the transcript. (ECF No. 490-3, Exs. C4, C6-C7, C9-C10, C13-C14, C16, C19-21, C25-27, C30-31, C33, C36, C40-41, C43, C45, C48 (each noting a reporter and/or videographer "Appearance Fee" or noting the billed "unit" is an "App" or "App Fee.").)  While some courts in this district have permitted taxing "the cost of videotaping" such as "video technician fees," they have also held that section 1920 does not "authorize award of appearance fees."  *MEMC Elec. Materials v. Mitsubishi Materials*, No. C-01-4925 SBA (JCS), 2004 WL 5361246, at \*2 (N.D. Cal. Oct. 22, 2004), *adopted as modified on other grounds,* 2004 WL 5363614 (N.D. Cal. Nov. 22, 2004). Civ. L.R. 54-3(c)(5) states that "[t]he attendance fee of a reporter when a witness fails to appear is allowable if the claimant made use of available process to compel the attendance of the witness." In this case, each of the witnesses appeared and their depositions were recorded.  (*See* ECF No.

PLAINTIFF NEVRO CORP.'S OPP. TO BOSTON SCIENTIFIC'S MOTION FOR REV. OF CLERK'S TAXATION OF COSTS
CASE NO. 3:16-cv-06830-VC-MEJ

15

490-3, Exs. C4, C6-C7, C9-C10, C13-C14, C16, C19-21, C25-27, C30-31, C33, C36, C40-41, C43, C45, C48.)  In the time since Nevro filed its objections to the Bill of Costs, courts in this district have made clear that reporter appearance fees for witnesses who actually appear at their depositions are disallowed as "[i]t would make little sense for the rule to require claimants to '[make] use of available process to *compel the attendance* of the witness' in order to recover the reporter attendance fee if the fee were available regardless of whether the witness appeared.'" *Phoenix Techs. Ltd. v. VMWare, Inc.*, No. 15-CV-01414-HSG, 2018 WL 4700347, at *4 (N.D. Cal. Sept. 30, 2018) (denying challenge to Clerk's disallowance of reporter attendance fees and rejecting contrary reasoning in *IshidaCo., Ltd. v. Taylor*, Nos. C-02-1617-JF (PVT), C-02-05416-JF (PVT), 2004 WL 2713067, at *1 (N.D. Cal. Nov. 29, 2004) as illogical).  Nevro therefore asks that the Court disallow these excessive deposition costs as unrecoverable.

## III.    CONCLUSION

For the foregoing reasons, Nevro requests that the Court deny BSC's motion for review and deny the additional costs requested by BSC.

Dated: December 14, 2018                MORRISON & FOERSTER LLP


                                                 By:    /s/ *Kenneth A. Kuwayti*
                                                         Kenneth A. Kuwayti

                                                        Attorneys for Plaintiff
                                                        NEVRO CORP.