Krista M. Carter (State Bar No. 225229)
Email address: krista.carter@arnoldporter.com
Thomas T. Carmack (State Bar No. 229324)
Email address: tom.carmack@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, California 94306
Telephone:    (650) 319-4500
Facsimile:    (650) 319-4700

Matthew M. Wolf (admitted *pro hac vice*)
Email address: matthew.wolf@arnoldporter.com
Edward Han (admitted *pro hac vice*)
Email address: edward.han@arnoldporter.com
Marc A. Cohn (admitted *pro hac vice*)
Email address: marc.cohn@arnoldporter.com
Amy L. DeWitt (admitted *pro hac vice*)
Email address: amy.dewitt@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:    (202) 942-5000
Facsimile:    (202) 942-5999

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC NEUROMODULATION
CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NEVRO CORP.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>　　　　　Defendants. | Case No. 3:16-cv-06830-VC<br><br>**BOSTON SCIENTIFIC'S REPLY IN SUPPORT OF ITS MOTION FOR REVIEW OF THE CLERK'S TAXATION OF COSTS, ECF NO. 499**<br><br>Date:　　　January 10, 2019<br>Time:　　　10:00 am<br>Courtroom: 4, 17th Floor<br>Judge:　　　Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

**I.    INTRODUCTION** ..................................................................................................... 1

**II.   ARGUMENT** ............................................................................................................. 1

    A.    Reproduction and Exemplification Costs .............................................................. 1

        1.    ESI Costs ..................................................................................... 1

        2.    Delivery of Chamber's Copies of E-filed Documents ............................... 7

    B.    Deposition Transcripts and Video Recordings ....................................................... 8

**III.  CONCLUSION** ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2014 WL 4745933 (N.D. Cal. Sept. 19, 2014) .......................... 2

*Computer Cache Coherency Corp. v. Intel Corp.*,
    No. C-05-01766 RMW, 2009 WL 5114002 (N.D. Cal. Dec. 18, 2009) .......................... 5

*Cooper v. United Air Lines, Inc.*,
    No. 13-CV-02870-JSC, 2015 WL 3548572 (N.D. Cal. June 5, 2015) ............................ 7

*Davis v. Eastfield Ming Quong, Inc.*,
    No. C-08-00769RMW, 2009 WL 225420 (N.D. Cal. Jan. 29, 2009) .............................. 7

*eBay Inc. v. Kelora Sys., LLC*,
    No. C 10-4947 CW (LB), 2013 WL 1402736 (N.D. Cal. Apr. 5, 2013) ..................... 2, 4

*Emblaze Ltd. v. Apple Inc.*,
    No. 5:11-CV-01079-PSG, 2015 WL 1304779 (N.D. Cal. Mar. 20, 2015) ...................... 5

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2010 WL 5025663 (N.D. Cal. Dec. 3, 2010) ............................ 7

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. C 07-05923 WHA, 2011 WL 115481 (N.D. Cal. Jan. 13, 2011) .............................. 7

*In re Ricoh Co., Ltd. Patent Litig.*,
    661 F.3d 1361 (Fed. Cir. 2011) .................................................................................. 6, 8

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    No. C 12-03762 SI, 2014 WL 1860298 (N.D. Cal. May 8, 2014) ................................. 5

*MEMC Elec. Materials v. Mitsubishi Materials*,
    No. C-01-4925 SBA (JCS), 2004 WL 5361246 (N.D. Cal. Oct. 22, 2004) .................... 9

*Phoenix Techs. Ltd. v. VMWare, Inc.*,
    No. 15-CV-01414-HSG, 2018 WL 4700347 (N.D. Cal. Sept. 30, 2018) ........................ 8

*Plantronics, Inc. v. Aliph, Inc.*,
    No. C 09-01714 WHA LB, 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012) ..................... 9

*Saberi v. BFS Retail & Commercial Operations, LLC*,
    No. C 08-4232 JL, 2011 WL 13258236 (N.D. Cal. May 23, 2011) ............................... 4

*United Healthcare Servs., Inc. v. Meyer*,
    No. C 12-6197 JSW, 2013 WL 5346094 (N.D. Cal. Sept. 24, 2013) ............................. 7

*Vectren Commc'ns Servs. v. City of Alameda*,
    No. C 08-3137 SI, 2014 WL 3612754 (N.D. Cal. July 22, 2014) .................................. 8

**Statutes**

28 U.S.C. § 1919 ..................................................................................................................... 7

28 U.S.C. § 1920 ..................................................................................................................... 7

**Rules**

Civ. L.R. 54-2(b) ..................................................................................................................... 1

Civ. L.R. 54-3(d)(2) ................................................................................................................ 6

Federal Rule of Civil Procedure 26(b)(5)(B) ......................................................................... 7

## I. INTRODUCTION

In its Opposition, Nevro once again disparages the KPMG declaration, calling it "brief," "improper," and "riddled with errors," yet fails to identify any information that should have been included. Indeed, had Nevro provided this information during the parties' extensive meet and confer process, BSC would have gladly worked with KPMG to provide it. As it is, the KPMG declaration presents more detail than ESI invoices this District has found sufficient. For each relevant month, it lists volume of data processed and the processing cost per unit, pages produced, and file size to the ninth decimal place. The declaration is sufficient and complete.

Next, Nevro continues to contest BSC's claim for delivery fees of court-required courtesy copies. This is an expense that BSC incurred in complying with this Court's Standing Order, however, and one which Courts in this district have often taxed. Finally, Nevro now asserts new objections to BSC's claims for deposition expenses, reaching for an over-extension of the law while doing so. With one minor concession due to a recent intervening change in authority, BSC requests that Nevro's arguments be rejected, and that this Court award BSC costs, as the prevailing party, in the amount of $171,307.78.

## II. ARGUMENT

### A. Reproduction and Exemplification Costs

#### 1. ESI Costs

All of the costs BSC claims for the disclosure and reproduction of electronically stored information, $69,604.58, are properly taxable and supported by adequate documentation. (ECF No. 490 at 10-11.) In its Opposition, Nevro takes issue with BSC's supporting documentation for these costs, which comes in the form of a declaration from BSC's ESI vendor, KPMG. One of Nevro's chief objections to the KPMG declaration is that it was twice revised during the meet and confer process, implying that its history of revision calls into question its accuracy. (*See* ECF No. 503 at 1-2.) But Nevro cannot now complain that BSC revised its claimed costs as a result of the meet and confer process, as that is the very purpose of the mandatory meet and confer requirement—to "resolve disagreement about the taxable costs claimed." Civ. L.R. 54-2(b).

Nevro further alleges that the KPMG Declaration "does not contain a detailed breakdown of costs." (ECF No. 503 at 5.) This assertion is inexplicable. As explained above, the KPMG Declaration meticulously details the claimed costs for every relevant month, including breaking down the costs by showing volume of data processed and cost per unit, or number of pages processed and cost per page. (*See* ECF No. 490-6.) Moreover, it separately lists each production that BSC made to Nevro, specifying the number of pages and the volume of data produced, in many instances taking this measure to several decimal places. (*Id.* at 4-7.) Through this chart, the KPMG declaration accounts for each of the 764,611 pages that BSC produced to Nevro during this litigation. Indeed, it is difficult to fathom what additional information the KPMG declaration could include, and it is thus not surprising that Nevro cannot identify any.[1]

Courts in this district have taxed ESI expenses based on supporting documentation that was much less detailed than the KPMG declaration. As one example, in *eBay*, this Court awarded Newegg $14,360.50 in ESI expenses, among other awards, based on a one page invoice which contained 6 line items, multiplying the quantity of services performed by the rate per unit. *See eBay Inc. v. Kelora Sys., LLC*, No. C 10-4947 CW (LB), 2013 WL 1402736, at *13 (N.D. Cal. Apr. 5, 2013); Declaration of Carson D. Anderson ("Anderson Decl."), Ex. A (showing the relevant invoice relied upon by the Court). The *eBay* Court also awarded Amazon $16,745.10 in ESI expenses that were supported by similar invoices. *See eBay*, 2013 WL 1402736, at *14; Anderson Decl., Ex. B (showing the relevant invoices relied upon by the Court). As one more example from *eBay*, the Court also awarded $56,227.50 to HP for ESI expenses that were supported by similar invoices which presented less detail than the KPMG Declaration. *See eBay*,

---

[1] In footnote 1 of its Opposition, Nevro states that it is "unable to properly assess whether the requested amounts include" costs for intellectual effort, which are not taxable. (ECF No. 503 at n.1.) BSC's supporting Attorney Declaration, however, contains a sworn representation that costs for the "intellectual effort involved with production" are not claimed. (ECF No. 490-1, ¶ 12.) This is sufficient. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 4745933, at *12 (N.D. Cal. Sept. 19, 2014) (finding sufficient "a sworn declaration" from "***Morrison & Foerster attorney***" that "Apple seeks only the amounts associated with electronic preparation and duplication, not the intellectual effort involved in the production."). Indeed, it is self-evident that "bates stamping," "TIFF conversion," and the like do not require intellectual effort.

2013 WL 1402736, at *16-17; Anderson Decl., Ex. C (showing the relevant invoices relied upon by the Court). At a minimum, the KPMG Declaration offers as much detail as these invoices and, in many respects, more detail—in addition to providing a narrative explanation not generally found in any invoice.

Nevro also makes specific objections to each of the sections included in the KPMG declaration, each of which is addressed below.

### a.   Data Processing (Metadata Extraction)

BSC requests taxation of $21,476.25 for "Data Processing" expenses, which includes "processing native files," "removing duplicate items, capturing the associated metadata, and generating a reviewable output." (ECF No. 490-6, ¶ 5.) After filing its Original Bill of Costs (ECF No. 482), BSC met and conferred with Nevro and then filed an Amended Bill of Costs (ECF No. 485) which reduced the amount of costs claimed for "Data Processing." This reduction was made to account for the fact that of the "159 GB of native files which KPMG processed, 65.84 GB was processed for production and produced." (ECF No. 490-6, ¶ 5.) Having made the appropriate reduction to account for only the cost of those documents that were actually produced, this cost remained constant between BSC's Amended Bill of Costs and Second Amended Bill of Costs. (*Compare* ECF No. 485-6, ¶ 5 *with* ECF No. 490-6, ¶ 5.)

Nevro's suggests—without a specific reason—that these costs should have been further reduced between BSC's Amended Bill of Costs and Second Amended Bill of Costs (ECF No. 503 at 9-10), but this argument is illogical. While BSC's Second Amended Bill of Costs did include a reduction in claimed ESI costs, it was associated with the cost of "TIFF Conversion," and was not related to "Data Processing" costs, which had already been reduced.

Nevro also asserts that it has "no way of evaluating whether" BSC's reduction is "reasonably accurate," but doesn't specify what additional information it needs to make this evaluation, simply stating that "the KPMG declaration alone is insufficient." (*Id.*) This argument should also be rejected because it seeks to impose a burden beyond the requirements of Section 1920. If, as Nevro suggests, BSC had presented an invoice rather than a declaration, it would do nothing more to show that BSC's figures are "reasonably accurate." KPMG's sworn declaration,

containing as much detail as it does, is more than sufficient.  *See, e.g.*, *eBay*, 2013 WL 1402736, at *10-11 (awarding Cabela's $13,453 for ESI discovery costs where the expenses were supported by "[d]eclarations from the law firm's in-house litigation technology specialists"); *Saberi v. BFS Retail & Commercial Operations, LLC*, No. C 08-4232 JL, 2011 WL 13258236, at *7 (N.D. Cal. May 23, 2011) (taxing costs for exemplification and copies where the supporting documentation was declarations from counsel).  There is no "invoice requirement."

As such, Nevro's objections should be rejected, and BSC's claimed costs for "Data Processing" of $21,476.25, should be taxed.

### b.   Productions (Bates Stamping, Slip Sheets, Load File Creation)

BSC seeks taxation of $25,190.00 for "Productions" expenses, which includes "bates stamping TIFF images, creating slip-sheets for files to be produced in native format, and creating load files."  (ECF No. 490-6, ¶ 6.)

Nevro's primary objection to BSC's claimed costs for "Productions" is that "KPMG made no change to the 'Productions' size or cost" while amending the KPMG declaration.  (ECF No. 503 at 6-8.)  While Nevro devotes more than a page and a half of its Opposition to this argument, the explanation is straight forward—"these services were only performed on documents that were actually produced to Nevro"—so they were properly taxable and accurately stated in the first KPMG Declaration.  (ECF No. 490-6, ¶ 6.)  Because the amendments to the KPMG declaration were to account for expenses directed to documents that were not produced, the "Productions" category never needed to be amended.  There would have been no need "bates stamp," "slip-sheet," or "creat[e] load files" for documents that were not produced.  Thus, Nevro's argument should be rejected.

Nevro next takes issue with an alleged "discrepancy," in the KPMG declaration, stating that the total volume of data it received for the NVROCA001 to NVROCA064 productions was 224.48 GB, while the KPMG declaration states this volume to be 239.5691767 GB.  (ECF No. 503 at 8.)  In support of this proposition, Nevro cites an attorney declaration stating that this information was "provided by our eDiscovery manager and our discovery vendor," but provides no further information regarding how this number was calculated.  (*Id.* (citing ECF No. 491-1,

¶ 12.))  By contrast, the KPMG declaration specifically lists the uncompressed data size of each of those individual productions, summing the total.  (ECF No. 490-6, ¶ 8.)  Without more information regarding Nevro's calculation, BSC cannot be sure how Nevro arrived at its number.  One possible explanation for this "discrepancy" is that KPMG billed BSC for the "uncompressed size" of the productions, while BSC typically sent these productions to Nevro in a compressed format, which reduced their file sizes in order to reduce electronic file transfer times.  (*See* Declaration of Douglas Smith, filed herewith, ¶ 3.)

Finally, Nevro objects to $906.59 from this category which were incurred by BSC as a result of KPMG's billing structure, which rounds the total GB produced each month "up to the nearest GB."  (ECF No. 503 at 8-9.)  Nevro asserts that these costs "do not relate to any documents actually produced to Nevro."  *Id.*  To the contrary, these costs relate directly to the documents actually produced to Nevro because the entire "Productions" category only includes fees for documents that were produced.  (ECF No. 490-6, ¶ 6.)  As explained in BSC's Motion, this modest $900 addition is what BSC actually paid in making its productions to Nevro and is no different than if KPMG had been charging a slightly higher rate per gigabyte processed.[2]  Nevro's attempt to dictate the particular billing structures that are taxable should be rebuffed.

Accordingly, Nevro's objections should be rejected, and BSC's claimed costs for "Productions" of $25,190.00, should be taxed.

---

[2] Moreover, none of Nevro's cases are on point.  In *Computer Cache*, the Court taxed $24,955.11 for Bates-numbering and electronic scanning and stated that "some add-on services are taxable," but did not address the situation of slightly increased costs due to billing structure.  *Computer Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766 RMW, 2009 WL 5114002, at *4 (N.D. Cal. Dec. 18, 2009).  In *Emblaze*, the Court awarded e-discovery costs based on a calculation that "approximately eleven percent" of the costs were for documents produced, but did not analyze whether any rounding was included in those underlying costs.  *Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2015 WL 1304779, at *7–8 (N.D. Cal. Mar. 20, 2015).  Finally, in *Kwan*, the Court rejected e-discovery costs associated with *un-produced* documents, but, as explained, BSC's claimed $906.59 *is* associated with produced documents.  *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 1860298, at *5 (N.D. Cal. May 8, 2014).

5
BSC'S REPLY ISO MOT. FOR REV. OF THE CLERK'S TAXATION OF COSTS   Case No. 3:16-cv-06830 VC

### c.   **TIFF Conversion**

BSC requests the taxation of $22,938.33 in "TIFF Conversion" expenses, which includes "the process of converting the native files that have been identified for production into a static format." (ECF No. 490-6, ¶ 7.)

Nevro's only objection to BSC's claimed costs for "TIFF Conversion" is that BSC seeks the costs associated with every document that it produced to Nevro, 764,611 pages, while Nevro contends that BSC should only recover costs for 736,856 of these pages. (ECF No. 503 at 10.) Nevro thus challenges $832.65 in claimed costs (27,755 pages X $0.03 per page), and pontificates for nearly two and a half pages on this issue. (*Id.* at 10-12.)

First, without citing any authority, Nevro asserts that BSC is not entitled to claim costs for third party productions that were produced by BSC. (*Id.* at 11.) This argument should be rejected because while these documents may have originated from third parties, it was BSC who produced them to Nevro and BSC who incurred costs in doing so. As Nevro's Opposition states "Section 1920 allows the recovery of costs for a prevailing party who establishes the copied documents were *produced by it*." (*Id.* (citing *In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1367 (Fed. Cir. 2011).) Indeed, the KPMG Declaration establishes that these productions were produced by BSC and they are thus properly taxable.[3]

Nevro also asserts, again without citing any authority, that BSC is not entitled to recover costs associated with approximately 2,000 pages of documents, or $60.00 (2000 pages X $0.03 per page), for documents that were "clawedback," "declawedback," or "reproduced" by BSC because of privilege or a change in designation under the Protective Order. (ECF No. 503 at 11-12.) While Nevro states that the taxing of this approximately $60.00 "would be unreasonable," these are costs that BSC incurred "reproducing disclosure or formal discovery documents," and should be taxed. Civ. L.R. 54-3(d)(2). Moreover, such events are common in the natural course

---

[3] Nevro also challenges BSC's inclusion of $8.85 (295 pages X $0.03 per page) for the "Thacker Production," which it calls "the result of a production request by BSC." (ECF No. 503 at 11.) To the contrary, this production was also responsive to at least 4 of Nevro's RFPs. (*See, e.g.*, Anderson Decl., Ex. D, at 7 ("Request for Production No. 165: All communications between Boston Scientific and Mr. James Thacker related to…"); 8 (RFP Nos. 168-170).

of discovery and Federal Rule of Civil Procedure 26(b)(5)(B) specifically permits privilege clawbacks.

Accordingly, Nevro's objections should be rejected, and BSC's claimed costs for "TIFF Conversion" of $22,938.33, should be taxed.

### 2.     Delivery of Chamber's Copies of E-filed Documents

BSC requests the taxation of $6,045.00 for the delivery of chambers copies of e-filed documents. (ECF No. 490 at 7-10.) As BSC explained in its Motion, BSC incurred these costs because this Court's Standing Order during the pendency of this case explicitly required that "[c]ourtesy copies of all motions, oppositions, and replies (and supporting papers) must be delivered to the Clerk's Office no later than noon on the court day following the day that the document was electronically filed." (*See* ECF No. 502-2 (May 26, 2017 Standing Order for Civil Cases Before Judge Vince Chhabria, rev. d, 5-26-17, ¶ 19).) BSC's compliance with this Court's Standing Order necessitated BSC's use of courier services to ensure delivery by noon on the day following filing, and BSC maintains that these costs are properly taxable.

Nevro asserts that "this very argument has been expressly rejected by courts in this district," (ECF No. 503 at 13-14) but there appears to be, at best, a split in authority. Nevro cites *Cooper*, which states that "[o]vernight delivery and 'courier' charges are 'not one of the enumerated categories of recoverable costs in § 1920.'"[4] *Cooper v. United Air Lines, Inc.*, No. 13-CV-02870-JSC, 2015 WL 3548572, at *3 (N.D. Cal. June 5, 2015). But other courts in this district have come to the exact opposite conclusion. *See, e.g.*, *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2010 WL 5025663, at *1 (N.D. Cal. Dec. 3, 2010), amended, No. C 07-05923 WHA, 2011 WL 115481 (N.D. Cal. Jan. 13, 2011) ("The service of motion papers and

---

[4] Nevro's other cases are not on point. *Davis* was not directed to a bill of costs under 28 U.S.C. § 1920, but rather pertained to 28 U.S.C. § 1919 which entitles a defendant to "just costs" where an action is dismissed "for want of jurisdiction." *See Davis v. Eastfield Ming Quong, Inc.*, No. C-08-00769RMW, 2009 WL 225420, at *1-2 (N.D. Cal. Jan. 29, 2009). In *United Healthcare*, the Court denied a $15.00 charge for delivery of a motion to dismiss, but makes no reference to whether this charge was for compliance with the Court's Standing Order or even whether the delivery was for a courtesy copy. *See United Healthcare Servs., Inc. v. Meyer*, No. C 12-6197 JSW, 2013 WL 5346094, at *4 (N.D. Cal. Sept. 24, 2013).

the delivery of courtesy copies of filings are usual costs of litigation. These fees are allowable under 28 U.S.C.1920(1), and the claimed amount is not excessive."); *Vectren Commc'ns Servs. v. City of Alameda*, No. C 08-3137 SI, 2014 WL 3612754, at *5 (N.D. Cal. July 22, 2014) (holding that "Alameda is entitled to recover for copying charges for Court-required courtesy copies"). Given this split in authority, BSC respectfully requests that this Court side with those decisions which have permitted taxation of costs for the delivery of mandatory courtesy copies, and asks that the Court tax Nevro with the full amount of $6,045.00.[5]

### B. Deposition Transcripts and Video Recordings

BSC requested that the Clerk tax $86,310.90 in cost relating to deposition transcripts and video recordings incurred in this case (ECF No. 490 at 1), of which the clerk disallowed $8,318.80, without explanation. (*See* ECF No. 499 at 1.)

In its initial and second objections (ECF Nos. 488 and 491), **Nevro did not object** to the $8,318.80 that was disallowed by Clerk, instead only objecting to $236.25 for a weekend surcharge. This alone should require that $86,074.65 of these fees be taxed against Nevro. *See Saberi*, 2011 WL 13258236, at *5 ("Therefore, as a threshold matter, [defendants] should recover at minimum the undisputed amounts of costs sought").

In its Opposition, Nevro for the first time objects to "$5,765 in reporter appearance fees and $19,864 in videographer appearance fees." (ECF No. 503 at 15.) Nevro cites an intervening change in law, namely *Phoenix Tech*, which disallowed the recovery of appearance fees for stenographic reporters. *Phoenix Techs. Ltd. v. VMWare, Inc.*, No. 15-CV-01414-HSG, 2018 WL 4700347, at *4 (N.D. Cal. Sept. 30, 2018). This authority was not in place when BSC filed its Second Amended Bill of Costs, and BSC concedes that its requested costs for deposition expenses should now be reduced by $5,765, the amounts claimed for stenographic reporters appearance fees. *Phoenix Tech*, however, did not address fees for videographer's appearances and authority authorizing the recovery of such remains in place. *Compare id. with, e.g.*, *In re Ricoh Co., Ltd.*

---

[5] Nevro also objects to individual line items from these invoices, such as "fuel surcharge[s]." (ECF No. 503 at *13-14.) These are costs included in the "delivery of courtesy copies of filings" and "are allowable under 28 U.S.C.1920(1)." *Gutierrez*, 2010 WL 5025663, at *1.

*Patent Litig.*, No. C 03-02289 JW, 2010 WL 8961328, at *5 (N.D. Cal. Sept. 29, 2010) ("The cost of videotaping includes video technician fees and their attendant travel expenses."), *aff'd in relevant part*, *In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1370 (Fed. Cir. 2011); *MEMC Elec. Materials v. Mitsubishi Materials*, No. C-01-4925 SBA (JCS), 2004 WL 5361246, at *5-7 (N.D. Cal. Oct. 22, 2004) (repeatedly awarding costs for not only the "videotape copy," but also the "videotaping costs"), *report and recommendation adopted as modified sub nom. MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, No. C 01-4925, 2004 WL 5363614 (N.D. Cal. Nov. 22, 2004).

Nevro's also objects to a $236.25 surcharge for a deposition that occurred on a weekend. (ECF No. 503 at 14-15.) Citing no authority for its position, Nevro asserts that "it is unreasonable to require" Nevro to pay this surcharge. (*Id.*) The fact of the matter is that Nevro noticed this deposition with less than 3 weeks left in the fact discovery period. (*Id.* (explaining that Nevro noticed the deposition on October 30, 2017, with fact discovery set to close on November 17, 2017).) On short notice, the deposition proceeded on Saturday, November 11 because this was the only day during fact discovery that Ms. Zimmer was available. (*Id.*) Courts in this district routinely tax similar surcharges and BSC is entitled to recover such costs. *See Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA LB, 2012 WL 6761576, at *8 (N.D. Cal. Oct. 23, 2012) (allowing recovery of a $96 surcharge for a deposition that proceeded into the evening).

As such, Nevro's objections should be rejected, and BSC's taxed costs for deposition expenses should be increased to $80,545.90, the full amount requested, less those expenses directed to appearance fees for stenographic reporters.

//

### III. CONCLUSION

For the foregoing reasons, BSC respectfully requests that this Court review the Clerk's award and increase the taxation of costs to $171,307.78.

Dated: December 21, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/  Thomas T. Carmack*
Thomas T. Carmack

Attorney for Defendants
BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC NEUROMODULATION
CORPORATION